# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

---

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

           Plaintiffs,

v.

1400 NORTHSIDE DRIVE, INC. d/b/a
SWINGING RICHARDS, AND C. B.
JONES,

           Defendants.

Civil Action No.: 1:13-cv-3767-TWT

---

## SECOND AMENDED COLLECTIVE ACTION COMPLAINT

---

Plaintiffs Clinton Henderson and Andrew Olinde ("Plaintiffs"), by and through their attorneys, Mays & Kerr, LLP and Nichols Kaster, PLLP, on behalf of themselves and the Collective as defined below, bring this Collective Action Complaint against 1400 Northside Drive, Inc. d/b/a Swinging Richards ("Defendant 1400") and C.B. Jones ("Defendant Jones") (collectively "Defendants"). Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 because this action asserts claims arising under federal law, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

3.     Defendant 1400 is a domestic corporation with its principal place of business located at 1400 Northside Dr. NW, Atlanta, GA 30318.  Defendant 1400 operates clubs in Atlanta, Georgia and in Pompano Beach, Florida.  At times relevant to this action, Defendant 1400 qualifies as Plaintiffs' and the Collective's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), (g).

4.     Defendant Jones is the sole owner of Defendant 1400 and actively involved in the day-to-day operations of Defendant 1400, including decisions regarding Plaintiffs' compensation.

5.     Plaintiff Clinton Henderson is an adult resident of Fulton County, Georgia.   During relevant times, Henderson worked as an entertainer for

Defendants and qualified as an "employee" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

6.     Plaintiff Andrew Olinde is an adult resident of Harrison County, Mississippi.   During relevant times, Olinde worked as an entertainer for Defendants and qualified as an "employee" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

7.     Plaintiffs have consented in writing to assert claims for unpaid minimum wages under the FLSA, 29 U.S.C. § 216(b).   (See Ex. A.)   As of November 13, 2013, when this action was filed, thirteen opt-in Plaintiffs had also consented to bring claims against Defendants by filing a consent form with this Court.   (See Ex. B.)   There are currently 25 opt-in Plaintiffs in this action.   As this case proceeds, it is likely that other individuals will sign consent forms and join this action as opt-in Plaintiffs.

## FACTUAL ALLEGATIONS

8.     Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

9.     Plaintiffs and the Collective worked for Defendants as male exotic dancers ("entertainers") during the statutory period.

10.     Entertainers are integral to Defendants' business operations.

3

11.    On the "establishment type" section of its liquor license application, Defendant 1400 holds itself out as "adult entertainment."  (*See* Ex. E.)

12.    Defendant 1400 is a fully nude, adult entertainment club.

13.    Defendant 1400 advertises its entertainment, in part, on its website, blog, Facebook, Twitter, its newsletter, and in magazines ads.

14.    According to its website, Defendant 1400 boasts itself as "the destination of choice for gay men seeking the best in adult entertainment.  We are the only GAY managed and GAY operated male strip club in the Southeast." (*See* Ex. D.)

15.    Indeed, numerous customers from outside of Georgia routinely come to the club.

16.    Defendants offer their customers the opportunity to spend time with nude male entertainers in an environment with alcohol.  In fact, Defendants' website has an entire webpage devoted to the club's bar, listing some of the alcohol choices it offers, including liquor and beer imported from outside of Georgia. (*See* Ex. C.)  Defendants, in fact, sell imported liquor and beer at the club.  Defendants' homepage, under a section titled "All Male All Nude All Night" also lists the prices for well drinks and states "Our bartenders, shooter boys, and waiters only pour the best alcohol…." (*See* Ex. D.)  Customers are required to be 21 years old

to enter the club.  Defendants' VIP Lounge (a section in the club) also has a separate bar.

17.    Defendants handle all disputes between customers and entertainers. As explained on its website:  "Swinging Richards reserves the right to refuse entrance to anyone at any time. Anyone unable or unwilling to comply with the rules of the club will be escorted out of the club."

18.    In fact, Defendants control the entire club, including providing the stage, furniture, lighting, sanitation, music, and other amenities.  These items of furniture and décor together form the aesthetic Defendants desire to maintain, promote, and sell at the club, many likely being manufactured outside of Georgia and/or passing through interstate commerce at some point prior to arrival at Defendants' club.

19.    Defendants' customers pay an admission for entry (or "cover charge") and adhere to a drink minimum as set by Defendants.  In exchange, entertainers entertain customers at Defendants' direction and control.

20.    The cover charge for customers ranges from $5 to $10 per night per customer.  Defendants also charge customers a separate $10 entrance fee to enter the "VIP Lounge" at the club.  All cover charges and VIP entrance fees are paid to and retained by Defendants.   On average weeknights, approximately 100

customers enter and spend time at the club.  On average weekends, attendance typically exceeds 200 customers.

21.    At relevant times, as non-exclusive examples, Defendants directed and controlled entertainers in the following ways:

    a)    Before hiring them, requiring entertainers to remove their clothing so that Defendants can inspect their bodies and ensure that they meet its standards;

    b)    Directing entertainers to sign non-compete agreements, prohibiting them from working at other clubs, and/or telling the entertainers that they were prohibited from working at other clubs;

    c)    At its discretion, imposing scheduling requirements on entertainers;

    d)    Requiring entertainers to sign in at the beginning of their shifts and to sign out before they leave;

    e)    Setting entertainers' music, rotation, and disrobing sequence for stage dances;

    f)    Setting the minimum rates charged for certain services, such as VIP and private room usage;

    g)    Restricting entertainers' personal guests permitted to be on the premises while entertainers worked;

    h)    Requiring entertainers to stay at the club until close each night;

    i)    Breathalyzing entertainers at the end of the night; and

    j)    Forbidding entertainers from socializing at the club outside of work hours.

22.    Defendants communicate many of these and other restrictions to entertainers through meetings, direct communication by management, and its "Rules and Regulations" sign, which it posts in the dressing room.

23.    Defendants enjoy the discretion to create, implement, and enforce rules and restrictions for its entertainers as it sees fit.

24.    When entertainers violate rules, Defendants have the authority to fine, suspend, or terminate them.

25.    Entertainers work for Defendants as employees in fact.  Nevertheless, Defendants consider entertainers to be "independent contractors."

26.    Defendants misclassify entertainers in order to avoid paying them a minimum wage as required by law.

27.    Indeed, Defendants do not pay entertainers *any* wages or other compensation for the work it suffers or permits them to perform.

28.    Defendants instead require entertainers to pay the club as a precondition to working at the facility.  Defendants require entertainers pay, for example, nightly house fees.

29.    Defendants also impose fines.  At relevant times, Defendants have issued fines to entertainers for the following offenses:  arriving late to the club, being late to perform on stage, performing unauthorized gestures on stage, and

engaging in prohibited interactions with customers (for example, dancing for a woman).

30.     Further, even though Defendants do not pay the entertainers wages, Defendants require them to tip out other workers, such as the DJ, the doorman, and security, at the end of each night.

31.     Defendants cannot avail themselves of the federal tipped minimum wage rate because Defendants do not provide notice to its employees of its intention to take a tip credit and because Defendants forbid its entertainers from keeping all of their tip money. *See* 29 U.S.C. § 201.

32.     Because Defendants directly control entertainers, they are aware that entertainers work as employees in fact; yet, Defendants still fail to classify entertainers as employees under federal law.

33.     Defendants' failure to pay entertainers prescribed wages is willful and recklessness, in part, because (1) entertainers who worked under similar circumstances have been found to qualify as "employees" under the FLSA in a similar case in this district, see Clincy v. Galardi S. Enter., Inc., 808 F. Supp. 2d 1326 (N.D. Ga. 2011); and (2) Defendants were aware of Clincy.

## COLLECTIVE ACTION ALLEGATIONS

34.    Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

35.    Like Plaintiffs, there are members of this putative Collective who are or were legally employed by Defendants who have also been denied minimum wages. These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent. Defendants can readily identify these similarly situated entertainers through its business records.

36.    Plaintiffs therefore bring Count One of this Complaint pursuant to the FLSA, 29 U.S.C. § 216(b) as a putative Collective on behalf of themselves and other similarly situated entertainers.  Specifically, this putative Collective includes:

> all persons who work(ed) as entertainers for Defendants at its Atlanta, Georgia location at any time within three years of the filing of this Complaint.

### COUNT ONE
### MINIMUM WAGE VIOLATION
### Fair Labor Standards Act, 29 U.S.C. § 201, et. seq.

37.    Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

38.     The FLSA requires covered employers to pay employees no less than $7.25 for each hour worked in a workweek.  29 U.S.C. § 206.

39.     The minimum wage requirement must be satisfied "free and clear" of any deductions or "kickbacks."   29 C.F.R. § 531.35 ("For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.").

40.     Defendants, who operate and control the club as described above (*see supra* ¶¶ 16-29), is an "enterprise," as that term is defined by the FLSA, 29 U.S.C. § 203(r)(1).

41.     Defendant 1400 is also an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(b), (s)(1), because it has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person— specifically alcohol.  (*See supra* ¶¶ 10, 15, 18.)

42.    Additionally, Defendants routinely have out of state customers and provides amenities from and aesthetics likely derived from outside of Georgia. (*See supra* ¶¶ 14, 17.)

43.    Given Defendants' large customer base (*see supra* ¶¶ 17-18), Defendants' annual volume of sales made or business done is not less than $500,000.

44.    Defendants are "employers" of Plaintiffs and the Collective, who are "employees in fact," as defined by the FLSA, 29 U.S.C. § 203(d), (e)(1), (g).

45.    Defendants failed to pay Plaintiffs and the Collective *any* wages, much less free and clear minimum wages.

46.    In failing to provide wages at the minimum rate, Defendants violated the FLSA.

47.    Defendants did not and have not made a good-faith effort to comply with the FLSA as it relates to the compensation of Plaintiffs and the Collective.

48.    Defendants knew Plaintiffs and the Collective worked as employees in fact, and willfully failed and refused to pay Plaintiffs and the Collective the required minimum wages.

49.    Defendants' willful failure and refusal to pay Plaintiffs and the Collective minimum wages for time worked violates the FLSA. 29 U.S.C. § 206.

50.    As a result of these unlawful practices, Plaintiffs and the Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants as follows:

a.    A finding that Plaintiffs and the Collective are similarly situated;

b.    Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

c.    Authorization for the prompt issuance of notice to all those similarly situated employees, apprising them of the pendency of this action and providing them with the opportunity to assert timely FLSA claims by filing individual consent forms;

d.    Judgment that Plaintiffs and the Collective are non-exempt employees entitled to protection under the FLSA;

e.    Judgment against Defendants for violation of the minimum wage provisions of the FLSA;

f.    Judgment that Defendants acted willfully and without good faith in violating the FLSA;

g.    Judgment that Defendants are and/or were Plaintiffs' employers under the FLSA, and that Plaintiffs are and/or were Defendants' employees under the FLSA;

12

h.     Judgment that Defendants are jointly and severally liable for all damages awarded to Plaintiffs;

i.     An award to Plaintiffs and those similarly situated for the amount of unpaid minimum wages owed free and clear, and liquidated damages;

j.     An award of prejudgment interest to the extent liquidated damages are not awarded;

k.     An award of reasonable attorneys' fees and costs;

l.     Leave to add additional plaintiffs by the filing of written consent forms, or any other method approved by the Court; and

m.     For such other relief as the Court may deem just.


Dated: 7/16/14          **NICHOLS KASTER, PLLP**

 /s/ Timothy C. Selander
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Anna Prakash, MN Bar No. 0351362*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**
Jeff Kerr, GA Bar No. 634260
John Mays, GA Bar No. 986574
235 Peachtree St. NE #202

13

Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
jeff@maysandkerr.com
john@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND
THE COLLECTIVE**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

## CERTIFICATE OF SERVICE
*Henderson, et al. v. 1400 Northside Drive, Inc. d/b/a Swinging Richards*
**Court File No.: 1:13-cv-3767-TWT**

I hereby certify that on July 16, 2014, I caused **Plaintiffs' Second Amended**

**Collective Action Complaint** to be served by electronic mail with consent to the

following persons at the following addresses:

Herbert P. Schlanger
Ga. Bar Number 629330
hschlanger@bellsouth.net
herb@schlanger.com
Law Office of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, GA  30303
404-808-6659

WM Scott Schulten
Ga. Bar Number 630272
wss@swtlaw.com
Susan K. Murphey
Ga. Bar Number 408498
skm@swtlaw.com
Dean R Fuchs
Ga. Bar Number 279170
drf@swtlaw.com
Schulten Ward & Turner, LLP
260 Peachtree Street NW
Suite 2700
Atlanta, GA  30303
404-688-6800

Attorneys for 1400 Northside Drive, Inc. d/b/a Swinging Richards.

Dated:  July 16, 2014                    /s/ Timothy C. Selander
                                         Timothy C. Selander