IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLINTON HENDERSON, et al.,
    Plaintiffs

v.

Civil Action Number
1:13-cv-3767-TWT

1400 NORTHSIDE DRIVE, INC.,
  et al.,
    Defendants

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT
BASED ON THE EXEMPTION CONTAINED IN 29 U.S.C. §213(A)(1)**

Defendants – the operator of an adult entertainment nightclub and its owner – are entitled to summary judgment because the plaintiffs/entertainers (and all persons who have "opted-in") are exempt from FLSA coverage by virtue of what is known as the "creative professional" exemption.[1]  Because they are exempt, the plaintiffs' claim for payment of the minimum wage fails and judgment against them must be entered.

The relevant statutory language governing this exemption is found in 29 U.S.C. §213(A):

---

[1] It may be assumed, for purposes of this motion, that the entertainers are

1

> The provisions of sections 206 ... and 207 of this title shall not apply with respect to —
>
>> (1) any employee employed in a bona fide ... professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary ...), ....

The regulations referred to are set out in 29 C.F.R. §541.300, *et seq.*:

> (a) The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>> (1) Compensated on a ... fee basis at a rate of not less than $455 per week ...; and
>> (2) Whose primary duty is the performance of work:
>>> (i) ...;
>>> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.
>
> (b) The term ... "fee basis" is defined at § 541.605; ... and "primary duty" is defined at § 541.700.

Thus, for the entertainers to come within the exemption they must satisfy two conditions: (1) the amount they are compensated for their work must be at least $455 per week as measured on a fee basis; and (2) their "primary duty" must require "invention, imagination, originality, or talent" in a "recognized field of artistic or creative endeavor."  29 C.F.R. § 541.300(a)(1)-(2)(ii).

---

"employees" of the defendant within the meaning of the FLSA.

**1.    The "fee basis" calculation of compensation.**

The "fee basis" condition is easily satisfied.  The entertainers who make up the collective are compensated in several different ways for activities in which they engage.  Among them are:

1. Payment for dances they perform on stage – e.g., tips.  This activity takes up but a small part of the entertainer's time in the club.[2] Customers customarily pay dancers for such entertainment and Defendants do not claim that these tips should be used to compute the "fee basis" amount for the Plaintiffs' entertainment activities.

2. Dances performed by an entertainer at a customer's table (a "table dance").  The Club sets the minimum price for table dances and the customer is required to pay at least $10.00 for each such dance. (Exhibit 1, Henderson depo., pp. 17, 32). The customer may choose to pay the dancer an amount in addition to the $10.00 minimum set by the Club and Defendants do not claim that such additional payments should be taken into account in computing the "fee basis" amount for the plaintiffs' entertainment activities.  Defendants rely only upon the

---

[2] Plaintiff Clint Henderson estimated that he spends perhaps one hour per night on

$10.00 charge imposed by the Club for table dances to calculate the "fee basis."

3. Table dances performed by an entertainer for a customer in the VIP Lounge. The Club sets the minimum price for such table dances and the customer is required to pay at least $20.00 for each such dance. (Exhibit 1, Henderson depo., p. 17). The customer may choose to pay the dancer an amount in addition to the $20.00 minimum set by the Club and Defendants do not claim that such additional payments (e.g. tips) should be used to compute the "fee basis" amount for Plaintiffs' entertainment activities. Instead, Defendants rely only upon the $20.00 charge imposed by the Club to calculate the "fee basis."

4. Visits to a VIP room with a customer. As with table dances, the Club sets the minimum price that the customer is required to pay the dancer for a session in a VIP room. The minimum fee for the dancer's time is $100.00 for a session of approximately 15 minutes. (Exhibit 1, Henderson depo., p. 19).

---

stage. (Exhibit 1, Henderson depo, p.16).

As with the charges described above, the customer may choose to pay the dancer an amount in addition to the $100.00 minimum set by the Club (e.g. a tip), and Defendants do not claim – for purposes of this motion – that such additional payment(s) should be used to compute the "fee basis" amount for Plaintiffs' entertainment activities.  Instead, Defendants rely only on the charges imposed by the club in its calculation.

To determine whether the entertainers meet the minimum of $455.00 "fee basis" requirement per week, 29 C.F.R. §541.605(a) provides:

> professional employees may be paid on a fee basis, rather than on a salary basis.  An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion. These payments resemble piecework payments with the important distinction that generally a ''fee'' is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again. ....

In this case, there are essentially three "exempt" activities for which the entertainers are compensated at rates set by the Club: table dances on the main floor ($10.00 per dance), table dances in the VIP Lounge ($20.00 per dance), and sessions in a VIP room ($100.00 per session). If those rates, extended to a 40-hour weekly rate,[3] exceed $455.00 per week then the "fee basis" requirement of 29 CFR §541.300(a)(1) has been met.[4]

---

[3] 29 C.F.R. §541.605(b) explains how to accomplish the calculation:

> (b) To determine whether the fee payment meets the minimum amount of salary required for exemption under these regulations, the amount paid to the employee will be tested by determining the time worked on the job and whether the fee payment is at a rate that would amount to at least $455 per week if the employee worked 40 hours. Thus, an artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement for exemption since earnings at this rate would yield the artist $500 if 40 hours were worked.

[4] A relatively small percentage of each entertainer's time at work is spent on stage in the main room of the Club as he dances "in rotation" with the other entertainers. (Exhibit 1, Henderson depo., pp.15-16). This activity is considered "exempt work." 29 C.F.R. § 541.707 ("Occasional, infrequently recurring tasks that cannot practicably be performed by nonexempt employees, but are the means for an exempt employee to properly carry out exempt functions and responsibilities, are considered exempt work."); *see also*: 20 C.F.R. §541.703. Even if the amount of time spent performing dances on stage in rotation with others is taken into account, the "fee rate" calculation still amounts to more than $455.00 per week.

A table dance (for one song) can last for no more than five (5) minutes. (Exhibit 1, Henderson depo., p.15; Exhibit 1, Colunga depo., p.41). If, as is the case here, an entertainer is paid $10.00 for an activity that it takes at most five (5) minutes to accomplish, that is compensation at a rate of at least $120.00 per hour, or $4,800.00 per 40-hour week.

If the table dance is performed in the VIP Lounge, the dancer is compensated with a fee (set by the Club) of $20. That is a rate of $9,600.00 per 40-hour week.

For visits to a VIP room, the $100.00 per session[5] amounts to compensation at a rate of $400.00 per hour, or $16,000.00 per 40-hour week.

**2.   The nature of the entertainer's duties.**

**a.   The "primary duty."**

The phrase "primary duty" is defined in 29 C.F.R. §541.700:

(a)To qualify for exemption under this part, an employee's ''primary duty'' must be the performance of exempt work. The term ''primary duty'' means the principal, main, major or most important duty that the employee performs. ....

The *only* duty that the plaintiffs have during the time they spend at the Club is to

---

[5] A VIP Room session lasts approximately 15 minutes. Anything significantly longer counts as an additional session. (Exhibit 1, Henderson depo., p. 19).

entertain customers.  (Exhibit 1, Henderson depo., p. 11).  They do this by: (1) performing a table dance on the main floor of the Club or in the VIP Lounge; (2) dancing or posing or conversing with a customer in a VIP room; and (3) performing "in rotation" on the stages on the main floor of the Club.  (Exhibit 1, Henderson depo., pp.15-16).

### b. The job is in a recognized field of artistic or creative endeavor.

Dance, acting, and pantomime are all recognized fields of "artistic or creative endeavor."[6]  The only question is whether that which the plaintiffs do in performing their duties is acting, or dancing, or pantomime, or some combination thereof; that is, for instance, whether it is a performance that requires individual expressive effort or inventiveness to convey a message or an emotion or to create a mood.

### c. The job requires invention, imagination, originality or talent.

The requirements that must be met to be considered a "creative professional" are discussed in 29 C.F.R. §541.302(c):

---

[6]The U.S. Department of Labor has explicitly recognized acting as such an endeavor, 29 C.F.R. §541.302(c), and Congress has so recognized dance and pantomime.  In passing the Copyright Act of 1976, 17 U.S.C. §101, *et seq.*, the Congress included "pantomimes and choreographic works" as "original works of authorship" which are eligible for copyright protection, 17 U.S.C. §102(a)(4).

> (c)  The requirement of "invention, imagination, originality or talent" distinguishes the creative professions from work that primarily depends on intelligence, diligence and accuracy.  The duties of employees vary widely, and exemption as a creative professional depends on the extent of the invention, imagination, originality or talent exercised by the employee. Determination of exempt creative professional status, therefore, must be made on a case-by-case basis. This requirement generally is met by actors, musicians, composers, conductors, and soloists; ....[7]

Expressing oneself through dance is hardly the kind of "manual labor" or "routine mental, manual, mechanical or physical work" contemplated as being outside the exemption's scope.

Defendants' position is simple: Striptease and nude dancing has been determined – as a matter of law – to be an expressive activity, conveying erotic messages and conjuring sexual fantasies.  Since no one but the dancer scripts or choreographs the performances in which these messages are expressed and fantasies created, they must, *a fortiori*, be the product of the ***dancer's*** invention, imagination, originality, or talent.

Apparently the only reported FLSA case to discuss this exemption in the

---

[7]The requirement of "invention, imagination, originality or talent" is not intended to require (or permit) a qualitative critique of the effort.  It is a phrase used to distinguish the work from "routine mental, manual, mechanical or physical work" in 29 C.F.R. §541.302(a).  As expressed in 29 C.F.R. §541.3(a), "The section 13(a)(1) exemptions and the regulations in this part do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive

"Gentlemen's Club" context is one that has been cited by the Plaintiffs:[8] *Harrell v. Diamond A Entertainment, Inc.*, 992 F.Supp. 1343 (M.D. Fla., 1997).  Although the court in *Diamond A* ultimately denied the defendant club summary judgment on the "creative professional" exemption, the court did ***not*** reject the viability of the exemption in this context.

The court's analysis is, in fact, generally favorable to Defendants' position. Predictably, the plaintiffs in *Diamond A* did not think much of the defendant club's argument that the "creative professional" exemption applied to the plaintiff exotic [nude] dancers:

> Plaintiff's response to Defendant's argument is to reduce exotic dancing to its most basic element, a veiled attempt at unveiling, and to separate this overriding theme from its allegedly incidental dancing component:
>
>> The result, the work product being purchased (as it were) by the employer is not their dancing skill at all. It is the ability of the dancers to titillate male customers. If a fully clothed modern dancer auditioned to modern, atonal music, she might be a former member of the Martha Graham or Twyla Tharp dance groups, but she would not stand a chance of being hired at Babe's or Foxy Lady, the two night clubs in this case. The reason is that they are not looking for dancing talent, they are looking for attractive young women who will bare their bodies as much as the law allows, and can do some semblance of dancing which will gratify the crowd. "Gratify" is obviously a key word for the "table dances," in which the dancer dances close to the

---

operations with their hands, physical skill and energy."
[8]/See, Plaintiffs' Response to Defendant's Motion to Dismiss [DE 55. P.6].

>   patron. There was absolutely no professional dance instruction or direction of any kind....
>
>   Because the artistic quality of the dancing was of no interest to the owners, it follows that whatever quality was required in a dancer's performance could be attained by the average patron of a disco or other nightclub where social dancing is permitted.
>
>   Plaintiff's Response, pp. 5-6.
>
>   The Court acknowledges that a dancer's physical attributes may be more important to Diamond A (or to any given customer) than a dancer's ability to dance, but the Court cannot make the kind of distinction that Plaintiff is requesting.[ ]

*Diamond A*, *supra*, 992 F.Supp., at 1356 (footnote omitted).

In *Diamond A*, the defendant analogized its dancers to actors. The *Diamond A* Court held that there remained a dispute over the existence of a material fact – whether the dancers' performance was the product of their "invention, imagination, or talent," and that summary judgment, therefore, was not warranted. Thus, it was not that the law did not allow the exemption to be applied to exotic dancers, or that exotic dancers could not qualify for the exemption as a matter of law; rather, the defendant in *Diamond A* simply had not – at least not at that stage of the proceedings – carried its burden to demonstrate that there were no material facts in dispute concerning that issue.

Here, on the other hand, it is undisputed that the routines performed by the

entertainers at Richards are not scripted, and they are not choreographed by anyone other than the entertainer himself. If those performances are "expressive," then the expressions are, by definition, the product of the "invention, imagination, originality, or talent," of the performer himself.[9] On the issue of "expressiveness," the Courts of Appeals and the Supreme Court have been clear: exotic (nude) dancing is sufficiently expressive so as to fall within the protection of the First Amendment. These Courts have held, as a matter of law, that the act of performing a striptease and dancing in the nude is expressive and communicative, and have warned that lower courts should not engage in grading the relative value or quality of that expression. *Miller v. Civil City of South Bend*, 904 F.2d 1081 (7th Cir., 1990) (*en banc*), *rev'd on other grounds sub nom.*, *Barnes v. Glen Theatre, Inc*, 501 U.S. 56 (1991); *Salem Inn, Inc. v. Frank*, 522 F.2d 1045 (2d Cir.1975) (quoting *Salem Inn, Inc. v. Frank*, 501 F.2d 18, 21 n. 3 (2d Cir.1974), aff'd in part, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)).

In *Miller v. Civil City of South Bend*, 904 F.2d 1081 (7th Cir., 1990) (*en banc*), *rev'd on other grounds sub nom.*, *Barnes v. Glen Theatre, Inc*, 501 U.S. 56 (1991), the Seventh Circuit Court of Appeals (which reversed the district court's

---

[9] This argument was, apparently, neither raised nor decided in *Diamond A*.

finding that nude dancing was not sufficiently expressive) held:

> .... While clearly not all conduct is expression, dance as entertainment is a form of conduct that is inherently expressive.[10] ....
>
> Any attempt to distinguish "high" art from "low" entertainment based solely on the advancement of intellectual ideas must necessarily fail. ....
>
> The State in effect advances the proposition that the dance involved loses its expressive qualities as the dancers lose their clothing. ....
>
> Likewise, the Second Circuit Court of Appeals has stated:
>
>> [W]hile the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person [at the local pub].
>
> *Salem Inn, Inc. v. Frank*, 522 F.2d 1045 (2d Cir.1975) (quoting *Salem Inn, Inc. v. Frank*, 501 F.2d 18, 21 n. 3 (2d Cir.1974), aff'd in part, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)). ....
>
> *Miller*, 904 F.2d, at 1085-86.

Judge Posner, concurring in *Miller*, delved into the history of erotic dance and continued:

---

[10]On this point – the "expressiveness" of the nude dancing involved – a clear majority (8 Justices) of the Supreme Court agreed with the Court of Appeals, *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560 (1991) (Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, in the principal opinion; Justice Souter, concurring in the judgment; and Justice White, joined by Justices Marshall, Blackmun, and Stevens, dissenting).

> *De gustibus non est disputandum*; but whether one has a taste or a distaste for erotic dance in general or striptease dances in particular, to say as the district judge did in this case that a striptease dance is not "expressive activity," but "mere conduct," *Glen Theatre, Inc. v. Civil City of South Bend*, 695 F.Supp. 414, 419 (N.D.Ind.1988), is indefensible and a threat to artistic freedom. ....

*Miller*, 904 F.2d, at 1090.

An entertainer's performance in an adult club can be considered dancing, acting, or pantomime. However it is denominated, it is a performance designed to arouse erotic thoughts and desires in the imagination of the audience. As the Seventh Circuit held:

> The dominant theme communicated here by the dancers is an emotional one; it is one of eroticism and sensuality.[ ] Though this dance is clearly of inferior artistic and aesthetic quality as contrasted with a classic ballet such as the Dance of the Seven Veils in Strauss' Salome, the erotic message communicated to the viewers is present in both performances. That Strauss' Salome tells a compelling story and the nude dancing at the Kitty Kat Lounge may not is not determinative; expression does not lose its protection for lack of a scripted plot. And it is apparent that those who view the respective dances readily comprehend the intended messages, for they advance currency to view them. The success of both the ballerina in an erotic production and the nude dancer in a barroom setting depend on the communication of their sensual message.
>
> *Miller v. Civil City of South Bend*, 904 F.2d 1081, 1086-87 (7th Cir.1990) (footnote omitted)

Judge Cudahy, in his concurring opinion, expanded on this point by stating that "a striptease sends an unadorned message to a male audience. It is a message of temptation and allurement coupled with coy hints at satisfaction." *Miller*, 904 F.2d, at 1089.

Judge Posner enlarged on the message being conveyed by the dancers:

Dance, as Judge Flaum emphasizes with pertinent references, is a medium of expression, of communication. What it expresses, what it communicates, is, like most art – particularly but not only nonverbal art – emotion, or more precisely an ordering of sights and sounds that arouses emotion. ..... Erotic dances express erotic emotions, such as sexual excitement and longing. Nudity is the usual state in which sexual intercourse is conducted in our culture, and disrobing is preliminary to nudity. But of course nudity and disrobing are not invariably associated with sex. The goal of the striptease – a goal to which the dancing is indispensable – is to enforce the association: to make plain that the performer is not removing her clothes because she is about to take a bath or change into another set of clothes or undergo a medical examination; to insinuate that she is removing them because she is preparing for, thinking about, and desiring sex. The dance ends when the preparations are complete. The sequel is left to the viewer's imagination. This is the "tease" in "striptease."
* * *
Though there is no striptease without some stripping – in today's moral climate, without a great deal of stripping – the dancing and the music are not distractions from the main theme, patched on to fool the censor; they are what make a given female body expressive of a specifically sexual emotion. The striptease is the ensemble of the music, the dance, the disrobing, and the nude end state; it is more erotic than any of its components; and what makes it more erotic than the body itself, or the disrobing itself, is, precisely, that it is expressive of erotic emotion...

*Miller*, 904 F.2d, at 1091-92.

15

Thus the Plaintiffs convey a message in a "recognized field of artistic or creative endeavor." The only remaining question is whether the performance is the result of the entertainer's "originality." It would seem obvious that if an entertainer's performance is sufficiently "original" to be eligible for copyright protection, it must also meet the "originality" requirement of the FLSA. The Supreme Court has held:

> The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. See *Harper & Row*, [*Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588 (1985)] *supra*, at 547-549, 105 S.Ct., at 2223-2224. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990).... To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. *Id*., §1.08[C][1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.
>
> *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *See also: L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir.1976).

The fact that the dancers are engaging in expressive, communicative conduct is what matters, and that conclusion is inescapable; it follows, inexorably, that (since the performances at the defendant's club are neither scripted nor choreographed) the expression is necessarily is the result of the entertainers' "invention, imagination, originality or talent."

In addition to the "dance" aspect of the entertainers' performances, there is another aspect of what an exotic dancer in an adult nightclub must accomplish to be successful: the need to ***act*** so as to create in the mind of a customer an illusion – a fantasy – that the particular customer (no matter his physical fitness or visage, his age, education, bearing, sexual orientation, manners, fluency, income, or state of inebriation) is found by the entertainer performing for him, to be uniquely interesting and attractive. (Exhibit 2, Colunga depo., pp.25-27). To the extent that this is an element of the performance – and it ***is*** – it is a ***necessary*** element of an entertainer's performance if he (or she) is going to earn money in an adult entertainment nightclub by being rewarded by a customer.

## CONCLUSION

For all of the foregoing reasons, the dancer-plaintiffs should be found to be creative professionals exempt from the application of the provisions of the FLSA

and summary judgment should be granted to Defendants.

This 3rd day of October, 2014.

                                        Respectfully submitted,

/s/ HERBERT P. SCHLANGER
Herbert P. Schlanger[11]
Ga. Bar Number 629330
Counsel for Defendants

Law Offices of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, Georgia  30303
(404) 808-6659 (voice)
(404) 745-0523 (facsimile)
herb@schlanger.com

---

[11] Counsel hereby certifies, pursuant to the requirements of LR 7.1.D., that the foregoing document was prepared using 14-point Times New Roman type.

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2014, I electronically filed the foregoing Memorandum in Support with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Jeff Kerr, Esq.
John Mays, Esq.
Mays & Kerr
235 Peachtree Street, NE
Suite 202
Atlanta, GA 30303
jeff@maysandkerr.com
John@maysandkerr.com

Paul J. Lukas, Esq.
Timothy C. Selander, Esq.
Nicholas D. Thompson, Esq.
Anna Prakash, Esq.
Nichols Kaster, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
lukas@nka.com
selander@nka.com
nthompson@nka.com
aprakash@nka.com

/s/ HERBERT P. SCHLANGER
Herbert P. Schlanger
Ga. Bar Number 629330
Counsel for Defendants

Law Offices of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, Georgia  30303
(404) 808-6659 (voice)
(404) 745-0523 (facsimile)
hschlanger@bellsouth.net
herb@schlanger.com