IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLINTON HENDERSON, et al.,
      Plaintiffs

                         Civil ActionNumber
v.                   1:13-cv-3767-TWT

1400 NORTHSIDE DRIVE, INC.,
     et al.,
        Defendants

DEFENDANTS' MEMORANDUM
IN REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION [DE 86]
TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT [DE 84]
ON THE ISSUE OF EXEMPTION

Defendants' motion [DE 81] asserts that the entertainers are exempt from

FLSA coverage because they are "creative professionals" within the meaning of

the governing regulations.  Plaintiffs, in opposing defendants' motion, dispute this

[DE 86] because they claim that:

1.     "The only other case to address the exemption in the context of a strip
     club" denied summary judgment to the defendants (DE 86, pp.3-4);

1

2.      Since the entertainers' compensation for services comes from the club's customers and not independently from the club, those monies may not be used to calculate the "fee basis" level of entertainer compensation (DE 86, pp.4-5); and

3.      A striptease just isn't artistic enough to qualify for the exemption (DE 86, pp.6-8).

In support of their own motion regarding the exemption [DE 84-1], plaintiffs claim that they should prevail, as a matter of law on undisputed facts, because:

4.      Payments of the various minimum charges for services does not fit within the definition of payment on a "fee basis" (DE 84-1, pp.9-13); and

5.      The entertainer's job "does not require invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor" (DE 84-1, pp.13-20).

Defendants note that – with regard to the definition or application of the elements of the "creative professional" exemption – there is no case the holding or reasoning of which is binding on this Court.  Neither the Eleventh Circuit nor the Supreme Court has ever had occasion to interpret that provision of the FLSA in *any* context.

1.      The *Harrell* case.

The plaintiffs seek to invoke the opinion in  *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997), in support of their position but they read the decision too superficially and seek to apply it too broadly.  It must be read in context; that is, as a decision on the ***defendants'*** motion for summary judgment and, therefore, with all inferences drawn against the defendants' positions and in favor of the plaintiff entertainers.

The portion concerning the exemption came only after determinations were made that the defendants had presented insufficient evidence to meet their summary judgment burden on the various elements required to determine the entertainers' proper classification.  Only then – constrained by the decision that there was insufficient evidence of the elements already discussed – did the *Harrell* court address the elements of the exemption claim.  The "classification" factors, however, are not involved in this case and the "exemption" elements can be decided independently.

The *Harrell* court held that – as to the "fee basis" utilization of service charge payments in its calculation – "the Court is not prepared to conclude that Plaintiff meets the monetary threshold for the professional exemption,

notwithstanding the fact that she received dance fees in excess of $250 per week." *Harrell*, 992 F.Supp., at 1355.  That is very different from saying that the plaintiff could not, as a matter of law, meet the monetary requirement if additional facts were proved at trial.

Likewise, with regard to the nature of the entertainers' performance, the *Harrell* court simply held that the defendant "failed to meet its burden of showing that Plaintiff's work required 'invention, imagination, or talent,'" and, therefore, "the Court cannot say that Plaintiff is a professional artist within the meaning of §541.3."  *Harrell*, 992 F.Supp., at 1357.  Again, "failing to meet its burden" in the context of a summary judgment motion is a far cry from a holding that a striptease artist can not ever be considered "a professional artist within the meaning of §541.3."

## 2.    For purposes of determining whether the exemption applies, the source of the payment does not matter.

At the heart of the plaintiffs' argument concerning payment of service charges by customers (DE 86, pp.4-6)  is the fact that plaintiffs appear simply to disagree with the Department of Labor in how a "tip" is defined.  The plaintiffs would, understandably, prefer that all money paid to or retained by an entertainer

4

be classified as "tips" while the Department of Labor stubbornly insists that "involuntary gratuities" (like minimum charges imposed by the club for services) are **not** tips.  Since money paid by customers is either a "tip" or a "service charge," it follows that whatever payment isn't a "tip" **is** a "service charge."

As defendants noted elsewhere (DE 82-1, p.6), the U.S. Department of Labor has opined, *inter alia*, that an "imposed gratuity" is not a "tip," even if it is not included in an employer's gross receipts, citing 29 C.F.R. §§ 531.32 and 531.55,  Opinion Letter FLSA2005-31.[1]  Thus, customer payments of the minimum charges imposed by the club for the services of the entertainers are not "tips."  *Ipso facto,* they must be "service charges."

The **amount** of "service charges" received by each plaintiff remains an issue for trial on the issue of offset and the counterclaim but for purposes of meeting the "fee basis" threshold, the VIP Room "involuntary gratuities" (the minimum payment amounts imposed for the dancers' services) are, even standing alone, more than sufficient to carry the day for purposes of the exemption.

---

[1]    Available at:
http://www.dol.gov/whd/opinion/FLSA/2005/2005_09_02_31_FLSA.pdf

**3.      A striptease is clearly sufficiently artistic to qualify for the exemption.**

The plaintiffs seem not to have addressed defendants' argument on its

merits so defendants will not belabor the point.  Defendants adopt those arguments

in opposition to plaintiffs' motion.

**4.      Payments of the various minimum charges for services fits within the definition of payment on a "fee basis."**

In order to keep matters somewhat simple in determining whether the

entertainers receive at least the minimum required amounts when calculated on a

"fee basis," defendants rely only on the minimum charges for VIP Room sessions

which were imposed by the club for dancers' services.[2/]   At those rates, the "fee

basis" amount is approximately $400.00 x ~40 ≅ $16,000.00; this is far in excess

of the $455.00 required minimum.

      **a.      In determining whether the exemption applies, it is the club which actually makes the payment, but who makes the payment is irrelevant.**

The plaintiffs' first objection on the "fee basis" element of the exemption is

---

[2/]      That is, $100.00 for a "15-minute" VIP Room session, $200.00 for a "30-minute" session, and $400.00 for a "60-minute" session.

6

that the money is paid by the customer, not by the club.  As a matter of fact this is inaccurate (or, at least, is a disingenuous characterization); as a matter of law this is irrelevant.

It is an inaccurate argument because – as to the VIP Room charges – the customer's payment is received by the club's assistant manager at the door of the VIP Lounge and then (if it was a cash payment) remitted to the entertainer at the end of the night by the club or, if it was a credit or debit card payment, is collected by the club and paid to the entertainer by check.

It is a disingenuous argument because *all* payments made by the club come from money paid by customers.  Plaintiffs' reasoning would require that entertainer compensation (including any minimum wage payments) could come only from shareholder equity.  That would lead to absurd results and is ridiculous.

It is an irrelevant argument as a matter of law because the USDOL regulations nowhere require that the payment be made by the club.  The plaintiffs seek to conflate two separate and distinct, and very different, questions: (1) "What is the amount of the 'fee basis?'" and (2) "May the minimum amounts charged by the club for certain services be used to offset the amounts calculated to be due to the entertainer at a minimum wage rate?"  Only the first is relevant to the

7

plaintiffs' motion on the exemption issue.

### b.   The VIP Room minimum charge for the entertainers is not based on the time spent.

The plaintiffs' second objection on the use of VIP Room minimum charges used for the "fee basis" calculation is that VIP Room visits are (they assert) described  by using an amount of time and are therefore excluded by the regulations.[3/]   The USDOL has, itself, used tasks described by their duration as illustrations of activities properly used to calculate the adequacy of the payment on a "fee basis."  See 29 C.F.R. § 541.313 (2000-2004); 29 C.F.R. § 541.605 (2005 - 2014).

This makes perfect sense since the adequacy of the fee payment is not measured by the amount that was actually paid to the entertainer, but by an amount measured by what **would** have been earned had the entertainer been performing

_____

[3/]   It should be clear that the durations referred to in notices and in advertise-ments for VIP Room sessions is descriptive only and is, in practice, only approximate.  As the attached Declaration of August Caudle (DE 90-2, ¶5) establishes, the club does not increase the minimum service charge to the customer for a VIP Room session if the session runs a few minutes over (or give a refund on those occasions when a session concludes early).  Thus, as a factual matter, the entertainer is not being compensated based on the amount of time but, rather, on his performance of a session, however many minutes it actually lasts.

that task for 40 hours during the work week; thus, ordinarily the adequacy of the payment can be determined only after the time worked on the job has been determined and then extrapolating that time and amount to a 40-hour week.  See, *e.g.*, 29 C.F.R. § 541.313(c) (2000); 29 C.F.R. § 541.605 (2014).

>       **c.    The task of entertaining in a VIP Room during a session is unique, not simply repetitive.**

The plaintiffs' third objection regarding the "fee basis" element is that entertaining during a VIP Room session is, they assert in the words of the regulations, "a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again."

Using the plaintiffs' reasoning, a music composer who is paid a fixed amount for each work would not qualify as a "creative professional" because he does the same thing over and over again:  He starts with 88 tones and simply arranges them in combinations that he hopes people will find pleasing.  Nothing "unique" there.

In fact, if one defines what is being done broadly enough then ***no*** task qualifies as being "unique."  But entertaining a customer with a striptease and conversation in a semi-private environment (like a VIP Room) is a far cry from

9

sitting on an assembly line and fastening a doohicky to a widget as it passes by.[4]

Although defendants believe that the performance of unscripted striptease

entertainment is, self-evidently, "unique" and that this belief is supported by the

1998 USDOL Opinion Letter, the question of "uniqueness"  – at best for the

plaintiffs – raises a question of fact that must be left for trial and – at best for the

defendants – is a matter of law which must be resolved in defendants' favor.


5.     **The entertainer's job requires "invention, imagination, originality, or talent ...."**

Despite Mr. Henderson's attempt to denigrate the degree of "invention,

imagination, originality, or talent" that his job as an entertainer requires, his

protestations ring hollow when one considers the degree to which those abilities

are required in order to convince the club's gay customers that they should find

Mr. Henderson's striptease sexually alluring or interesting ... when Mr. Henderson

---

[4]     Interestingly, the Department of Labor Opinion Letter cited by the plaintiffs distinguishes, for purposes of the determination of "uniqueness," the "artistic professionals" aspect of the exemption implying that persons performing such duties are among those who were intended to be encompassed in the definition of "unique." ("The use of these professional occupations to demonstrate this point suggests to us that the character or nature of the job itself must be unique, and not simply that the performance of the job vary from day to day."  Opinion Letter, 1998 WL 852761 (1998).)

is, in fact, straight, DE 84-8, Henderson depo, p. 32, ll. 1-8.

The plaintiffs' other attempts to construe the regulations in a manner favorable to their litigation position are similarly unavailing since those attempts require giving the regulations an unnatural and contorted interpretation.

       **a.**     **Plaintiffs' striptease and conversational entertainment of customers is not "routine."**

The plaintiffs argue that their performances are "routine mental, manual, mechanical or physical work," DE 84-1, p. 13, demonstrating that they do not come within the definition of an "artistic" or "creative" professional.  Plaintiffs do not cite to any facts of record that would bring VIP Room entertainment (as opposed to table dances) within any FLSA definition of "routine" and, moreover, the job cannot be "unique" (see ¶4.c., above) and "routine" simultaneously.   Since the plaintiffs' job is characterized as being "unique," this argument fails.

       **b.**     **No amount of "general manual or intellectual ability [or] training" will prepare an individual to perform an alluring striptease or engage in an entertaining conversation while nude.**

The plaintiffs assert that they are performing "work which can be produced by a person with general manual or intellectual ability and training,"  DE 84-1,

p.14, and are therefore not exempt.  No effort has been made, however, to describe how any specific ability or training would equip someone to perform a striptease or to convey the erotic message that the club's entertainers communicate.  In fact, the plaintiffs only engage in linguistic jujitsu by citing cases that found the skill involved in entertaining in an adult club insufficient to earn a designation as a profession of an independent contractor.  But no evaluation of skill level is either necessary or appropriate (see ¶ 5.c., below) to determine whether an entertainer is within the exemption at issue in this case.  As was noted in defendants' initial memorandum, DE 81-1, pp. 8-15, and below, in ¶ 5.d., a striptease – what is often referred to as "nude dancing" – is an exercise in the non-verbal communication of an erotic message and this attribute (the nature of the message conveyed by a striptease) has been held to be present as a matter of law.

   c.   **Performing a suggestive and stimulating striptease most certainly requires a significant measure of "invention, imagination, originality, and talent."**

Plaintiffs' memorandum (DE 84-1), beginning on page 16, reads as though they borrowed it from the plaintiffs in *Harrell*.  It deserves the same response as Judge Bucklew gave those plaintiffs:

Plaintiff's response to Defendant's argument is to reduce exotic dancing to its most basic element, a veiled attempt at unveiling, and to separate this overriding theme from its allegedly incidental dancing component ....

The Court acknowledges that a dancer's physical attributes may be more important to Diamond A (or to any given customer) than a dancer's ability to dance, but the Court cannot make the kind of distinction that Plaintiff is requesting.[16]

> [16] See W.B. Yeats, "Among School Children" (1927) ("O body swayed to music, O brightening glance, / How can we know the dancer from the dance?"). For an entertaining and judicious treatment of expression in exotic dance, from Richard Strauss' Salome (1905) to Gypsy Rose Lee, see *Miller v. Civil City of South Bend*, 904 F.2d 1081, 1089-95 (7th Cir.1990) (Posner, J., concurring); see also Flashdance (Paramount 1983) (arc-welder by day and exotic dancer by night gains admission to the Pittsburgh Conservatory of Dance).

*Harrell v. Diamond A Entertainment, Inc*., 992 F.Supp., at 1355.

Defendants want to be clear on this point: They are not claiming that the entertainers dance tangos or sambas for the customers (although a lambada might not be out of the question). Neither are the entertainers likely to challenge members of the Atlanta Ballet in the execution of an arabesque, a brisé, or a cabriole (either petite or grande). What defendants are asserting is that the entertainers perform a striptease in a way that they devise to convey an erotic message for which they are rewarded monetarily.

13

The club's entertainers are just doing what Beyoncé was doing when she moved seductively to the music in a skimpy outfit while lip-syncing her way through the 2013 Super Bowl halftime show; these entertainers are sending the same erotic message.[5/]   The major differences are that the club's entertainers do it with significantly less-extravagant production values for a somewhat smaller audience while wearing marginally fewer clothes and receiving not quite as many dollars for their efforts.  But they are all creative artistic professionals.

**d.    That which is done by plaintiffs to entertain customers at Swinging Richaards is recognized as a "field of artistic or creative endeavor."**

Plaintiffs assert that "entertaining is not a recognized field of artistic or creative endeavor," DE 84-1, p. 19.  While that *may* be true, the question is not whether "entertaining" – broadly speaking – is such a field but whether the activities engaged in by plaintiffs in seeking to entertain the club's customers falls within such a field.  Plaintiffs boldly state:

---

[5/]     A video of the performance is available at https://www.youtube.com/watch?v=OdeyqChOSwk

14

> [T]his case simply does not involve dancing. (Facts ¶¶ 10-30.) Again, Plaintiffs in this case are strippers. (Facts ¶¶ 10-30.) They work at Defendants' strip club where they strip naked for money. (Facts ¶¶ 10-42.) They can do this job without any training, experience, or ability, so long as they are physically fit, meet Defendants' appearance-based hiring criteria, and are willing to disrobe in public. (Facts ¶¶ 18-25.) Plaintiffs' primary job duty is to strip, not dance, and dancing is not required in order to perform the job.

DE 84-1, pp. 19-20.

Those assertions are, defendants believe, best answered by the Seventh Circuit:  It held, "as a matter of law," that "[w]hile clearly not all conduct is expression, dance as entertainment is a form of conduct that is inherently expressive," *Miller v. Civil City of South Bend*, 904 F.2d 1081, 1085 (7th Cir., 1990) (*en banc*), *rev'd on other grounds sub nom., Barnes v. Glen Theatre, Inc*, 501 U.S. 56 (1991).  What it expresses is an erotic message: "a striptease sends an unadorned message to a male audience. It is a message of temptation and allurement coupled with coy hints at satisfaction." *Miller*, 904 F.2d, at 1089 (Cudahy, J., concurring).[6]

---

[6]     More extensive excerpts from the opinions in *Miller* refuting plaintiffs' points are set out in defendants' memorandum in support of their summary judgment motion at pages 13-15 (DE 81-1) and will not be repeated here.

**AFTERWORD**

Perhaps the most notable thing about plaintiffs' response (and their memorandum in support of their own motion) is what is lacking: any reasoned analysis (or, for that matter, any attempt even to address) the arguments made by defendants.  Other than their flawed discussion of *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997), plaintiffs have not seen fit to mention any of the cases cited by defendants nor have they addressed the arguments advanced in the moving papers (except for an unreasoned rejection, DE 86, p.7). In light of the utter failure of the plaintiffs to meet the defendants' arguments, defendants' motion should be granted.[7/]

**CONCLUSION**

For all of the foregoing reasons, this Court should grant defendants' motion for summary judgment on the issue of exemption and should deny plaintiffs' motion on the same issue.

---

[7/]     Perhaps the plaintiffs are improperly saving their best arguments for their reply memorandum so that the defendants will not have an opportunity to refute them.  Defendants trust that the Court will not permit such a tactic to succeed.

16

Respectfully submitted.

_/s/ HERBERT P. SCHLANGER_____
Herbert P. Schlanger[8]
Ga. Bar Number 629330
Counsel for defendants

Law Offices of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, Georgia  30303
(404) 808-6659 (voice)
(404) 745-0523 (facsimile)
hschlanger@bellsouth.net
herb@schlanger.com

---

[8]   Counsel hereby certifies, pursuant to the requirements of LR 7.1.D., that the foregoing document was prepared using 14-point Times New Roman type.

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2014, I electronically filed the foregoing Memorandum with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Jeff Kerr, Esq.
John Mays, Esq.
Mays & Kerr
235 Peachtree Street, NE
Suite 202
Atlanta, GA 30303
     jeff@maysandkerr.com
     John@maysandkerr.com

Paul J. Lukas, Esq.
Timothy C. Selander, Esq.
Nicholas D. Thompson, Esq.
Anna Prakash, Esq.
Nichols Kaster, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
lukas@nka.com
selander@nka.com
nthompson@nka.com
aprakash@nka.com

  _/s/ HERBERT P. SCHLANGER_____
Herbert P. Schlanger
Ga. Bar Number 629330
Counsel for defendants

Law Offices of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, Georgia  30303
(404) 808-6659 (voice)
(404) 745-0523 (facsimile)
hschlanger@bellsouth.net
herb@schlanger.com

18