UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

      Plaintiffs,

v.                      Civil Action No.: 1:13-cv-3767-TWT

1400 NORTHSIDE DRIVE, INC. d/b/a
SWINGING RICHARDS and C.B.
JONES,

      Defendants.

---

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DEFENDANTS' OFFSET DEFENSE**

_____

**INTRODUCTION**

     Defendants now concede that performance fees not recorded in gross receipts could never qualify for an offset and have abandoned their claim for all but the credit card payments for VIP room dances. As part of this retreat, however, Defendants do not explain why this money is in gross receipts in the first place, or

1

why something is a "tip" when paid in cash suddenly becomes a "service charge" when paid by credit card. Nor do they acknowledge that inclusion in gross receipts is only a threshold factor, failing to address the other factors the Court must weigh through the totality of the circumstances to determine if these sums are "tips" or "service charges." Instead, Defendants ignore the plain language of the regulations and avoid addressing the many factors that weigh so heavily in Plaintiffs' favor (labeling many of them as "quibbles"). In their reply, Defendants have failed give this Court reason to do anything but deny their motion, and grant Plaintiffs' motion for summary judgment on the offset defense.

## ARGUMENT

**I.  DEFENDANTS ABANDONED THEIR CLAIM FOR OFFSET ON ALL SUMS EXCEPT MONEY CUSTOMERS PAID PLAINTIFFS FOR VIP ROOM DANCES.**

Having originally sought an offset against the minimum wage for all performance fees the customers paid Plaintiffs (except tips for stage dances for which they have always conceded), Defendants now concede all but the performance fees paid for VIP room dances:

| DANCE [1] | LOCATION | PAYMENT | DEFENDANTS' ARGUMENT |
|---|---|---|---|
| **Main Stage Dance** | Main Stage | Cash Only | Never Sought Offset |
| **VIP Stage Dance** | VIP Lounge Stage | Cash Only | Never Sought Offset |
| **Table Dance** | Main Floor | Cash Only | Abandoned |
| **VIP Table Dance** | VIP Lounge | Cash Only | Abandoned |
| **VIP Room Dance** | VIP Room | Cash or Credit | **Seeking Offset** |

Defendants do not make this concession "for the sake of simplicity" as they claim. (ECF No. 90 p. 4.) They make it because the law requires they prove <u>all</u> of the requirements for an offset: 1) the amount they seek credit for is a "service charge" (not a "tip"); 2) it is included in their "gross receipts," and 3) it is distributed by the employer to the employees. 29 C.F.R. § 531.55(b). Defendants cannot prove any, and have given up trying.

Defendants' retreat leaves only credit card payments for VIP room dances included in gross receipts and cash payments for VIP room dances that Defendants claim to be "in the process of taking…into gross receipts." (ECF No. 90 p. 5.) Because these payments, like all of the payments Defendants have conceded, are "tips," and not "service charges," and for the additional reason that the cash

---

[1] As discussed below, Defendants' admission that all dances are the same regardless of location (in other words, all of Plaintiffs' earnings are for the same activity) is fatal to Defendants' claim for an offset even for the amounts they inexplicably included in gross receipts. (<u>Infra</u>, § III.E.)

3

payments were not included in gross receipts, Plaintiffs are entitled to summary judgment on what remains of Defendants' offset defense.

## II. DEFENDANTS' ARE NOT ENTITLED TO OFFSET CASH PAYMENTS FOR VIP ROOM DANCES.

Inclusion in gross receipts is a prerequisite for offset.  29 C.F.R. § 531.55(b); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 930 (S.D.N.Y. 2013); Reich v. ABC/York-Estes Corp., No. 91 C 6265, 1997 WL 264379, at *5 (N.D. Ill. May 12, 1997).  For this reason, Defendants lose quickly on their request for an offset of cash payments made by customers for VIP room dances because the cash payments were not recorded in Defendants' gross receipts.[2]

Demonstrating a fundamental misunderstanding of the evidentiary requirements for summary judgment, Defendants attempt to address this problem by asking the Court to ignore it with the promise that they will amend their tax returns and include the VIP room cash payments in gross receipts.[3]  (See ECF No. 82-1 p.4-5; ECF No. 90 p. 4-5).  However, this is summary judgment, not a

---

[2] Without the inclusion in gross receipts, however, the Court need not even consider the issue of whether those sums are "tips" or "service charges" or if the "employer" distributed to the employees as discussed below.  Of course, Defendants would lose for a second reason if the Court conducted the "tips" versus "service charge" analysis." (See ECF No. 85-1 p 6-14; Infra § III.)

[3] Notably, Defendants apparently do not intend to properly classify entertainers as employees or otherwise correct any the other deficiencies in their tax returns described in Plaintiffs initial brief.  (See ECF No. 85-1 p. 4; Facts at ¶¶ 53, 57, 69.)

4

declaratory judgment action or tax proceeding. At summary judgment, the court considers only admissible evidence to make its findings. Fed. R. Civ. P. 56(c)(1)(B). What Defendants claim they are "in the process" of doing after-the-fact as part of a litigation-driven defense strategy is irrelevant and does not change the uncontested fact that they did not comply with the "gross receipts" requirement on the current factual record before this Court.

### III. DEFENDANTS ARE NOT ENTITLED TO OFFSET CREDIT CARD PAYMENTS FOR VIP ROOM DANCES.

Defendants argue that their unexplained and unjustifiable inclusion of credit card performance fee payments should be the beginning and end of the Court's offset analysis. This argument ignores: 1) the plain language of the DOL regulations that overwhelmingly demonstrate that the payments are "tips;" 2) the plain language of the DOL regulations that require far more than inclusion in gross receipts for an offset; 3) what little meaning Defendants' inclusion of the payments in gross receipts actually has considering the totality of the circumstances; and 4) the inherent inconsistency of Defendants seeking an offset performance fees that are identical to those for which they have conceded.

### A. The Court's Offset Analysis Includes Weighing a Number of Factors in Light of the Totality of the Circumstances Far Beyond Gross Receipts.

5

The Court's analysis of Defendants' offset defense includes the consideration and weighing of a number of facts as describe in the DOL regulations and relevant case law.  See, e.g., Hart, 967 F. Supp. 2d at 930-33; Reich, 1997 WL 264379 at *5-7, Reich v. Priba Corp., 890 F. Supp. 586, 594-95 (N.D. Tex. 1995); Thornton v. Crazy Horse, Inc., No. 3:06-cv-00251-TMB, 2012 WL 2175753, at *9-10 (D. Alaska June 14, 2012)[4]  Defendants imprecisely imply that no such balancing test exists and the Court should blindly declare the VIP room dance performance fees a "service charge" because they satisfy one of those many factors by inexplicably including those sums in their gross receipts.  (See ECF No. 90 p. 14 ("Quibble 4").)  Consistent with many of their arguments, Defendants cite no support for this position.

> **B.     The Plain Language of 29 C.F.R. § 531.52 Supports a Finding that the Credit Card Payments are a "Tip," Not a "Service Charge."**

The DOL describes the nature of a "tip" in 29 C.F.R. § 531.52:

> § 531.52 General characteristics of "tips."  A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the

---

[4] On the same day Plaintiffs filed this brief, the court in Hart issued an order confirming its rejection of the defendant's offset argument under the FLSA and extending it to the New York state law claims, and issuing an order for summary judgment of $10.866 million in plaintiffs' favor and sending the issue of the rest of the damages to trial. (Ex. A.)

6

> right to determine who shall be the recipient of the gratuity. Tips are
> the property of the employee whether or not the employer has taken a
> tip credit under section 3(m) of the FLSA.

Contained within this language, there are seven factors for the Court to consider, all of which weigh in favor of finding that the credit card payments for VIP room dances are "tips."

### 1. "General characteristics of 'tips.'"

The title of this regulation supports a finding that the regulation is a list of factors that should be considered and weighed in light of the circumstances, not as a list of requirements that must all be rigidly met before a sum is determined to be a "tip."

### 2. It is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him."

It is undisputed that the entertainer's portion of the credit card payment is in recognition of the VIP room dance performed by Plaintiffs.[5]

### 3. "It is to be distinguished from payment of a charge, if any, made for the service."

---

[5] In "Quibble 2" of their reply, Defendants argue that it is inconsequential who actually receives the payment from the customer. (See ECF No. 90 p. 12.) The courts, however, have found that payment directly from the customer to the entertainer, as is required by the independent contractor agreement Defendants required the entertainers to sign in this case, is an indication that the fee paid is a tip. Thornton, 2012 WL 2175753, at * 9; Hart, 967 F. Supp. 2d at 933; ABC/York-Estes Corp., 1997 WL 264379, at *6.

Defendants do charge the customers. They charge the customers a $5 cover charge to enter the club, a $10 fee to enter the VIP lounge, and a "room rental" fee for the use of the VIP room. These charges are separate and apart ("distinguished") from the money the customer pays the entertainer for the VIP room dance. See Thornton, 2012 WL 2175753, at *10.

### 4. "Whether a tip is to be given…[is] determined solely by the customer."

It is undisputed that the customer decides if he will have an entertainer dance for him in a VIP room. As Defendants' Rule 30(b)(6) designee testified, once the customer pays the cover charge, he is under no compulsion to pay for any dances and can simply sit on the main floor and watch. (Facts at ¶ 37.)

### 5. The "amount [of the tip]…[is] determined solely by the customer."

Defendants' claim that this factor is in their favor because they set a minimum fee for a VIP room dance. It is undisputed, however, that customers could pay more than the minimum fee. This freedom is a factor weighing in favor of a finding that the payment is a tip. Thornton, 2012 WL 2175753, at *10. Further, Plaintiff Henderson testified that although it rarely happens, entertainers could charge customers less than the minimum amount. (Facts at ¶ 37.) Defendants contest this fact with its newly submitted affidavit of August Caudle in

an attempt to recreate a fact question.  (See ECF No. 90-2 ¶ 7).  On Defendants' best day, this factor is a nullity for both parties.

### 6. The "customer…has the right to determine who shall be the recipient of the gratuity."

It is undisputed that if the customer decides to pay for a VIP room dance, the customer selects the entertainer who will perform it.  (Facts at ¶ 37.)

### 7. "Tips are the property of the employee."

It is undisputed that the portion paid by the customer for the VIP room dance is the property of the entertainer.  The record reflects Defendants' agreement on this issue.  For example, immediately upon payment with the credit card, Defendants provide the entertainer with an "IOU" for his portion and within 24 hours cut him a check for that amount.  Why would you hand someone an "IOU" for something that is not their property?  Defendants' other documents, website, and admissions confirm that all performance fee payments are "tips" that are the property of the entertainers.  (ECF No. 85-1 p. 7-8; Facts at ¶¶ 58-63.)  So despite Defendants' claim that their repeated admission that the performance fees are "tips" that are the property of the entertainer is a "quibble," (see ECF No. 90 p. 10-11 ("Quibble 1")), these undisputed facts are extremely relevant to the analysis, and deadly to Defendants' litigation inspired claim that when they say "tip," they

really mean "service charge."[6]  Thornton, 2012 WL 2175753, at *9-10; Hart, 967 F. Supp. 2d at 992-93; ABC/York-Estes Corp., 1997 WL 264379, at *6.

### C. The Plain Language of the DOL Regulations Referencing "Service Charges" Does Not Support a Finding that the Credit Card Payments are "Service Charges," Not "Tips."

While the credit card performance fee payments easily fit the DOL's description of the "general characteristics" of a tip, the same cannot be said for the regulation Defendants cite in an attempt to characterize the payments as a "service charge."

#### 1. Section 531.55 is intended to restrict employers' ability to avoid the FLSA, not as a tool to define "service charges" so broadly as to help employers accomplish this improper goal.

Section 531.55 exists to prevent employers from avoiding the minimum wage requirements of the FLSA by prohibiting them from identifying a service charge imposed on a customer as a "tip," and then taking a "tip credit" for the amount against the mandatory minimum wage payment to its employees. Because Defendants attempt to do just that—avoid the FLSA by misclassifying employees

---

[6] In addition, as part of their unlawful independent contractor scheme, Defendants require Plaintiffs to agree that they are solely responsible from collecting their compensation from the customer and that Defendants have no responsibility to pay them anything. (Facts at ¶¶ 33-35.) Such express agreements are powerful evidence that all resulting payments from the customer to Plaintiffs are "tips" and exclusively their property. Priba Corp., 890 F. Supp. at 594-595.

as independent contractors—the Court should view their arguments with increased skepticism.

### 2. What little guidance section 531.55 provides in defining "service charge" does not support Defendants' argument.

Unlike 29 C.F.R. § 531.52, which provides a list of "general characteristics" used to define a "tip," section 531.55 provides little guidance on what constitutes a "service charge." The only guidance section 531.55 provides in identifying a "service charge" is the example of when "15 percent" is added to a bill. 29 C.F.R. § 531.55(a). That situation does not exist here because the VIP room dance fee is not something added to an existing bill. Rather, Defendants charge the customer a cover charge, VIP lounge fee, and a VIP room rental fee separate and distinct from the performance fees paid for the VIP room dance.

### 3. Section 531.55(b) does not allow for the inclusion in gross receipts alone to convert a "tip" into a "service charge."

Pursuant to section 531.55(b), an offset cannot be applied unless the money is a "service charge" (in other words **not** a "tip") **and** is distributed by the "employer" to the "employee" **in addition** to being included in gross receipts before it is eligible for such treatment. 29 C.F.R. § 531.55(b). Here, the money paid for VIP room dances is a "tip," not a "service charge." (See ECF No. 85-1 p. 6-11 and Infra, § III.B.) Nor are the payments "distributed" by Defendants

11

because Defendants' independent contractor agreement dictates that Defendants have no responsibility to make a "distribution" or any other payment to the entertainers and it is the sole responsibility of entertainers to obtain all of their tips directly from customers.[7] (Facts at ¶¶ 33-36.)  As such, any advantage gained by including money that is not Defendants' in their gross receipts is quickly eliminated.

So while all of the other payments received by Plaintiffs are not eligible for an offset for three reasons found in section 531.55(b) (not a "service charge," not in gross receipts, and not distributed by Defendants), the credit card payments are ineligible for two (not a "service charge" and not distributed by an "employer").

### D. Defendants' Unexplained Inclusion of Credit Card Performance Fees in Their Gross Receipts Carries No Persuasive Weight.

In support of their motion for summary judgment on Defendants' offset defense, Plaintiffs explain why the inclusion of credit card VIP room performance fees in gross receipts is of little significance considering the totality of the circumstances. (See ECF No. 85-1 p. 16-21.)  In response, Defendants cite no support for their position that inclusion in gross receipts alone is sufficient.

---

[7] This is one of many reasons why Defendants' treatment of Plaintiffs as independent contractors is extremely relevant to the Court's analysis of their offset defense and their complaints otherwise are ridiculous. (See ECF No. 90 p. 15 ("Definitely *not* a quibble.").)

Instead, Defendants attempt to distinguish the cases cited by Plaintiffs because those cases involved defendants who did not include the disputed amount in gross receipts. (See ECF No. 90 p. 7-10). First, this ignores the facts that these courts did not stop at "gross receipts," they conducted a thorough balancing test analysis and came to the same conclusion. Hart, 967 F. Supp. 2d at 930-33, ABC/York-Estes Corp., 1997 WL 264379, at *5-7, Priba Corp., 890 F. Supp. at 594-95, Thornton, 2012 WL 2175753, at *9-10. Second, Defendants makes no attempt to argue that if these courts were presented with an inclusion of payments in gross receipts under these circumstances, they would rule any differently than they did.

Plaintiffs provided Defendants an opportunity to bolster the significance of their gross receipts argument by inviting them to explain why they included VIP room performance fees in gross receipts in the first place. (See ECF No. 85-1 p. 18-21.) In reply, Defendants choose not to, remaining deafly silent on why it should be afforded any weight. The least cynical presumption for why Defendants have passed on this opportunity is because the reason speculated by Plaintiffs in their initial brief is correct: inclusion of credit card performance fee payments in gross receipts is a historical accounting remnant from an FLSA-compliant "employer/employee" pay plan that remained after Defendants converted to an illegal "independent contractor" scheme. (See ECF No. 85-1 p. 20; Facts at ¶¶ 78-

13

85.)  Instead, Defendants cling to the hope that the Court will blindly accept their illogical, unexplained and improper inclusion of these sums in gross receipts, and declare this single act as alone dispositive of the issue in their favor.  The Court should reject this invitation.

      **E.    The Method of Payment (Cash v. Credit Card) Does Not Convert a "Tip" Into a "Service Charge."**

As discussed in Plaintiffs' initial brief, money does not change from being a "tip" to being a "service charge" just because customers choose to pay by credit card and the employer happens to record all or a portion of that that credit card money in its gross receipts.  (See ECF No. 85-1 p. 16-18.)  The courts agree, finding that the essential character of the money customers give via credit card for time in a VIP room is the same as the character of the performance fees customers pay for dances outside the VIP room that Defendants have already conceded (i.e., stage dances, main floor dances, and VIP lounge table dances).  See Hart, 967 F. Supp. 2d at 932; Priba Corp., 890 F. Supp. at 595 ("The fact that all of the table dance fees are not reported as gross receipts is fatal to Cabaret Royale's claim that the tips are more properly classified as wages.")[8]

---

[8] Defendants' attempt to downplay the importance of Priba fails.  In Priba, the court held, "The fact that all of the table dance fees are not reported as gross receipts is fatal to Cabaret Royale's claim that the tips are more properly classified as wages." Id.  This holding goes far beyond the division of the voucher money.

Defendants agree with these courts, making two important concessions in relation to the conclusion. The first is Defendants' Rule 30(b)(6) designees' admission that all dances, regardless of their location are the same. (<u>Facts</u> at ¶ 76.) The second is Defendants' admission that the cash and credit card performance fee payments should be defined the same and treated the same. (<u>See</u> ECF No. 90 p. 12 ("Quibble 3.")) Despite conceding all performance fees are the same, Defendants argue they should change the nature of the performance fee cash payments retroactively as if they were always in gross receipts.[9] Defendants, however, are correct: there is no credible reason that credit card performance fee payments should be any different than cash payments for the same service. VIP credit card performance fee payments are, like all of the other performance fees, "tips."

## **CONCLUSION**

For all the reasons stated here and in Plaintiffs' initial brief, the Court should grant Plaintiffs' motion.

---

In fact, the court viewed the totality of the circumstances—including the fact that the cash went completely unrecorded—in deciding the issue. 890 F. Supp. at 595-95.

[9] Incredibly, Defendants claim they did not know that cash VIP room performance fees were being treated differently than credit card payments for the same service. (ECF No. 90 p. 13 ("Now that this inconsistency has been brought to defendants' attention"); ECF No. 82-1 p. 4-5 (the cash and credit card payments have "inexplicably" and "for some reason" treated different by Defendants… "[p]robably as the result of a misunderstanding or a miscommunication").) Defendants cite to nothing in the record to support these claims.

Dated: November 14, 2014      **NICHOLS KASTER, PLLP**

/s/ Paul J. Lukas
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Anna Prakash, MN Bar No. 0351362*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**

Jeff Kerr, GA Bar No. 634260
John Mays, GA Bar No. 986574
235 Peachtree St. NE #202
Atlanta, GA 30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
jeff@maysandkerr.com
john@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

## CERTIFICATE OF SERVICE
*Henderson, et al. v. 1400 Northside Drive, Inc. d/b/a Swinging Richards, et al.*
*Court File No.: 1:1:13-cv-3767-TWT*

I hereby certify that on November 14, 2014, I caused the following documents to be served:

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' OFFSET DEFENSE**

I caused the above-listed document(s) to be served by electronic mail with consent to the following persons at the following address(es):

| | |
|---|---|
| Herbert P. Schlanger<br>Ga. Bar Number 629330<br>hschlanger@bellsouth.net<br>herb@schlanger.com<br>Law Office of Herbert P. Schlanger<br>Suite 1890<br>230 Peachtree Street, N.W.<br>Atlanta, GA  30303<br>404-808-6659 | WM Scott Schulten<br>Ga. Bar Number 630272<br>wss@swtlaw.com<br>Susan K. Murphey<br>Ga. Bar Number 408498<br>skm@swtlaw.com<br>Dean R Fuchs<br>Ga. Bar Number 279170<br>drf@swtlaw.com<br>Schulten Ward & Turner, LLP<br>260 Peachtree Street NW<br>Suite 2700<br>Atlanta, GA  30303<br>404-688-6800 |

Attorneys for 1400 Northside Drive, Inc. d/b/a Swinging Richards

Dated:  November 14, 2014          /s/ Paul J. Lukas
                                    Paul J. Lukas

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated: November 14, 2014  **NICHOLS KASTER, PLLP**

/s/ Paul J. Lukas
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Anna Prakash, MN Bar No. 0351362*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**

Jeff Kerr, GA Bar No. 634260
John Mays, GA Bar No. 986574
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
jeff@maysandkerr.com
john@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE**