IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLINTON HENDERSON, et al.,

   Plaintiffs,

    v.

1400 NORTHSIDE DRIVE, INC.
doing business as
Swinging Richards, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3767-TWT

**OPINION AND ORDER**

This is an action under the Fair Labor Standards Act ("FLSA") for the recovery of unpaid minimum wages. It is before the Court on the Defendants'[1] Motion for Summary Judgment Based on the Exemption Contained in 29 U.S.C. §213(a)(1) [Doc. 81], the Plaintiffs' Motion for Partial Summary Judgment on the Creative Professional Exemption Defense [Doc. 84], the Defendants' Motion for Partial Summary Judgment Based on the Issue of Set-off of "Service Charges" [Doc. 82], the Plaintiffs' Motion for Partial Summary Judgment on the Offsets Defense [Doc. 85], and the Defendants' Motion to Strike [Doc. 88]. For the reasons set forth below, the Defendants' Motion

---

[1] The Defendants will be referred to collectively as "the Defendant."

for Summary Judgment Based on the Exemption Contained in 29 U.S.C. §213(a)(1) [Doc. 81] is DENIED, the Plaintiffs' Motion for Partial Summary Judgment on the Creative Professional Exemption Defense [Doc. 84] is GRANTED, the Defendants' Motion for Partial Summary Judgment Based on the Issue of Set-off of "Service Charges" [Doc. 82] is DENIED, the Plaintiffs' Motion for Partial Summary Judgment on the Offsets Defense [Doc. 85] is GRANTED, and the Defendants' Motion to Strike [Doc. 88] is DENIED.

## I. Background

The Plaintiffs are current and former male strippers who performed at an adult nightclub (the "Club") owned and operated by the Defendant 1400 Northside Drive, Inc.[2] Each Plaintiff signed an "Independent Contractor Agreement," which stated: "The Entertainer acknowledges that the Club will not be responsible for compensating him in any way for the performances which he presents at the Club and that his compensation will be provided directly by customers of the Club."[3] The Plaintiffs brought suit, asserting that they were improperly classified as "independent contractors," and that the Defendant thus impermissibly failed to pay them minimum

---

[2] Defs.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶¶ 1-2.

[3] Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶¶ 33-34.

wage as required by the FLSA. In response, the Defendant has argued, *inter alia*, that (1) the Plaintiffs are not protected under the FLSA due to the "creative professional exemption" ("CPE"), and (2) even if the Plaintiffs are protected under the FLSA, the minimum fees that customers must pay for dances may be offset against the amount that the Defendant owes the Plaintiffs. Both the Plaintiffs and the Defendant now move for summary judgment on these defenses.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[4] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[5] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[6] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[7] A "mere 'scintilla' of evidence

---

[4] FED. R. CIV. P. 56(c).

[5] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[8]

A party may move for summary judgment on a part of a claim or defense.[9] An "order granting partial summary judgment from which no immediate appeal lies is merged into the final judgment and reviewable on appeal from that final judgment. . . .An order granting [summary] judgment on certain issues is a judgment on those issues. It forecloses further dispute on those issues at the trial stage. An order denying a motion for partial summary judgment, on the other hand, is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on the issues on which summary judgment was sought."[10]

### III. Discussion

#### A. Creative Professional Exemption

The FLSA states that the minimum wage requirement "shall not apply with respect to . . . any employee employed in a bona fide . . . professional capacity . . . as such term[] [is] defined and delimited from time to time by regulations of the

---

[8] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

[9] FED. R. CIV. P. 56(a).

[10] Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1284 n.4 (11th Cir. 2001) (quoting Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir.1986)).

Secretary."[11] The applicable regulations define "employee employed in a bona fide professional capacity" to mean "any employee . . . [1] [c]ompensated on a . . . fee basis at a rate of not less than $455 per week . . . and . . . [2] [w]hose primary duty is the performance of work . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."[12] Additionally, the Eleventh Circuit "has recognized the Supreme Court's admonition that courts closely circumscribe the FLSA's exceptions."[13]

Here, based on the undisputed facts, the Plaintiffs' primary duties did not require sufficient creativity, and so the Plaintiffs are entitled to judgment as a matter of law on the Defendant's CPE defense. To "qualify for the creative professional exemption, an employee's primary duty must be the performance of work *requiring* invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work" and "[t]he exemption does not apply to work which can be produced by a person with general manual or intellectual ability and training."[14] Further, the "exemption . . .

---

[11]  29 U.S.C. § 213(a).

[12]  29 C.F.R. § 541.300(a).

[13]  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008) (internal quotation marks omitted).

[14]  29 C.F.R. § 541.302(a) (emphasis added).

depends on the extent of the invention, imagination, originality or talent exercised" and so "[d]etermination of exempt creative professional status . . . must be made on a case-by-case basis."[15]

The testimony of Matthew Colunga – the Club's General Manager[16] – establishes that little creativity is required to be a dancer at the Club. For example, Colunga testified that the dancers did not need original dance moves.[17] In fact, he stated that most of the dancers do not "kn[o]w how to actually dance," and that "knowing how to dance is not necessary to perform the job."[18] He clarified that no special training was needed.[19] Indeed, he even went as far as to say that he generally makes hiring decisions by simply looking at the applicants.[20] Based on this evidence, the Plaintiffs are correct when they state that creativity is not a requirement, and that the job may be performed by anybody with general ability and training.

---

[15]   29 C.F.R. § 541.302(c) (emphasis added).

[16]   Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 8.

[17]   Id. ¶ 19.

[18]   Id. ¶ 18.

[19]   Id. ¶ 24.

[20]   Id. ¶ 28.

Further, a nearly identical question arose in Harrell v. Diamond A Entertainment, Inc.[21] There, the plaintiff was an exotic dancer seeking minimum wage and overtime protections under the FLSA.[22] The defendant argued, *inter alia*, that the plaintiff was not protected under the FLSA because "she was a 'professional' within the meaning of the § 213 exemption."[23] In rejecting this defense, the court relied on several factors found in the case at bar: "Defendant presented no criteria or standards for Plaintiff's 'try out' or her performance . . . Plaintiff did not have any prior dancing experience . . . [the Defendant] did not require or encourage any specific dance steps . . . [h]aving failed to meet its burden of showing that Plaintiff's work required 'invention, imagination, or talent,' the Court cannot say that Plaintiff is a professional artist within the meaning of [the statute]."[24]

In response, the Defendant first argues that the dance routines are unscripted. But this does not mean that the dance routines *must* exhibit a sufficient degree of creativity. As noted, aesthetic appeal is the only requirement. The Defendant then argues that exotic dancing is protected expression under the First Amendment. But it

---

[21]  992 F. Supp. 1343 (M.D. Fla. 1997).

[22]  See id. 1345-46.

[23]  Id. at 1346.

[24]  Id. at 1357.

is not enough to show that the Plaintiffs engaged in a form of artistic expression. Again, that expression must reflect a sufficient degree of creativity in order for the Plaintiffs to fit within the narrow creative professional exemption. Because the undisputed facts show that it does not, the Plaintiffs are entitled to judgment as a matter of law on the Defendant's creative professional exemption defense.

### B. Offsets

The Defendant argues that payments made to the dancers by the customers were not "tips," but rather "service charges," and so they may be used to offset the monetary amount owed to the Plaintiffs under the FLSA. Under the applicable regulations, "[a] tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him."[25] However, "[s]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act" and "[w]here such sums are distributed by the employer to its employees . . . they may be used in their entirety to satisfy the monetary requirements of the [FLSA]."[26] Thus, at minimum, for a fee to constitute a "service

---

[25]   29 C.F.R. § 531.52.

[26]   29 C.F.R. § 531.55(b).

charge," it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee.[27]

Here, the fees received by the dancers for entertainment provided on the main stage, the main floor, the VIP lounge, and the VIP rooms were obviously "tips," and so they may not be used to offset the Defendant's minimum wage obligations under the FLSA. To begin, many courts have considered this question in the context of adult entertainment and have agreed with the Plaintiffs' position.[28] Indeed, the Defendant fails to cite to a single case, with similar facts, in which a court has found that the fees paid to the dancers constitute "service charges." Multiple factors lead the Court to the same conclusion here.

---

[27] See Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 930 (S.D.N.Y. 2013) ("[F]or Rick's NY to succeed on its claim that the performance fees are service charges countable towards its wage obligations, the performance fees must have been [1] recorded in its gross receipts and [2] distributed to plaintiffs by Rick's NY.").

[28] See id. at 933 ("[T]he Court finds that the performance fees charged by Rick's NY were not service charges. They were, instead, tips. Accordingly, the fees cannot be used to satisfy Rick's NY's statutory wage obligations."); Thornton v. Crazy Horse, Inc., No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *10 (D. Alaska June 14, 2012) ("[T]he table dance fees at both Crazy Horse and Fantasies were 'tips' which cannot be used to off-set the clubs' minimum wage obligations."); Reich v. Priba Corp., 890 F. Supp. 586, 595 (N.D. Tex. 1995) ("[T]he fees the entertainers receive for table and stage dances are appropriately classified as tips."); Reich v. ABC/York-Estes Corp., No. 91 C 6265, 1997 WL 264379, at *6 (N.D. Ill. May 12, 1997) ("This court . . . agrees . . . that the table dance fees are more closely related to a tip than a service charge and, as a result, plaintiff's motion for partial summary judgment should be granted.").

First, as noted above, "for a fee to constitute a service charge and therefore be properly applied against an establishment's statutory minimum-wage duty, it must have been included in the establishment's gross receipts."[29] Here, most of the payments made by the customers to the dancers were not recorded in the Club's gross receipts. To be clear, for performances on the main stage, the main floor, and the VIP lounge, the customers could only pay by cash.[30] For entertainment provided within the private VIP rooms, they could either use cash or a credit card. None of the cash payments were recorded in the Club's gross receipts.[31] Thus, these payments may not be classified as "service charges." However, the Defendant points out that the credit card payments for entertainment provided in VIP rooms were included in the Club's gross receipts.[32] But as another court has found, that "[a club] [does] not treat *all* of the tips received as gross receipts of the company" is "fatal to [the club's]" argument

---

[29] Hart, 967 F. Supp. 2d at 929; see also ABC/York-Estes Corp., 1997 WL 264379, at *5 ("[A]n employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA.").

[30] Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 40.

[31] Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 71.

[32] Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 68.

that the payments are "service charges."[33] Indeed, it would make little sense to classify otherwise similar payments differently simply because they occurred through different mediums.

Second, "service charges" must be "distributed by the employer in order to count toward wages."[34] Here, most of the payments – those made in cash – were made directly to the dancers.[35] They were not distributed by the Club. Accordingly, those payments may not be classified as "service charges." And again, because there is no meaningful difference between these payments and those made by credit card, the latter should not be classified differently. Accordingly, the Plaintiffs are entitled to judgment as a matter of law on the Defendant's offsets defense.[36]

---

[33]     Priba Corp., 890 F. Supp. at 594-95 (emphasis added).

[34]     Hart, 967 F. Supp. 2d at 929.

[35]     Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 35.

[36]     In its Response Brief, the Defendant appears to largely abandon its offsets defense. It only pursues the defense in relation to payments made for VIP room sessions – many of which were included in its gross receipts. Defs.' Br. in Resp. to Pls.' Mot. for Partial Summ. J. on Offsets, at 4 ("[D]efendants rely in these motions for setoff only on the amounts paid by customers for the VIP Room minimum session charges."). However, based on the evidence in the record, the Defendant has thus far *only* included credit card payments for VIP room sessions in its gross receipts. Pls.' Statement of Facts in Supp. of Mot. for Partial Summ. J. on Creative Professional Exemption ¶ 70. Thus, the cash payments may not be classified as service charges. And as the Plaintiffs have correctly noted, "money does not change from being a 'tip' to being a 'service charge' just because customers choose to pay by credit card and

Case 1:13-cv-03767-TWT   Document 105   Filed 06/19/15   Page 12 of 13

**C. Motion to Strike**

On July 22, 2014, the parties filed a joint stipulation, stating in part: "Plaintiffs shall not . . . request that the Court determine as a matter of law that they are and/or were Defendant 1400's employees, that Defendant 1400 is and/or was their employer; or that Plaintiffs were misclassified as independent contractors."[37] The Defendant argues that the Plaintiffs, in their Briefs, made multiple "arguments and assertions concerning the plaintiffs' supposed status as 'employees' of the defendants and [asked] the Court to grant them summary judgment . . . based (at least in part) on such arguments."[38] The Defendant thus requests that the Court strike the Plaintiffs' Briefs.[39] The Court disagrees with the Defendant. The Plaintiffs did not violate the stipulation. True, in moving for summary judgment on the Defendant's two defenses, the Plaintiffs mention the basis for their claims – their contention that they were improperly classified as independent contractors. And they rely on several facts which are also relevant to the issue of whether they are "employees" under the FLSA. But they never ask the Court to make a legal determination regarding their "employee"

---

the employer happens to record . . . credit card money in its gross receipts." Pls.' Reply Br. in Supp. of its Mot. for Partial Summ. J. on Offsets, at 14.

[37]     [Doc. 66].

[38]     Defs.' Mot. to Strike, at 2.

[39]     Defs.' Mot. to Strike, at 4.

T:\ORDERS\13\Henderson\mpsjtwt.wpd     -12-

status. In addition, in this Order, the Court has made no such determination. Accordingly, the Motion to Strike is denied.

## IV. Conclusion

For these reasons, the Court DENIES the Defendants' Motion for Summary Judgment Based on the Exemption Contained in 29 U.S.C. §213(a)(1) [Doc. 81], GRANTS the Plaintiffs' Motion for Partial Summary Judgment on the Creative Professional Exemption Defense [Doc. 84], DENIES the Defendants' Motion for Partial Summary Judgment Based on the Issue of Set-off of "Service Charges" [Doc. 82], GRANTS the Plaintiffs' Motion for Partial Summary Judgment on the Offsets Defense [Doc. 85], and DENIES the Defendants' Motion to Strike [Doc. 88].

SO ORDERED, this 19 day of June, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge