# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

      Plaintiffs,                       Case No.: **1:13-CV-3767-TWT**

v.

1400 NORTHSIDE DRIVE, INC., d/b/a
SWINGING RICHARDS, and C.B.
JONES,

      Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, STAGE 2

Plaintiffs Clinton Henderson and Andrew Olinde, on behalf of themselves

and the collective, by and through their attorneys, submit this Memorandum in

Support of Plaintiffs' Motion for Partial Summary Judgment, Stage 2:

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

PROCEDURAL BACKGROUND.........................................................................2

LEGAL STANDARD .........................................................................................4

LEGAL ANALYSIS.............................................................................................5

    I.    BOTH DEFENDANTS ARE LIABLE UNDER THE FLSA...............................5

        A) The FLSA Applies to Defendant Northside......................................5

        B) Defendant Jones Jointly Employed Entertainers. ...........................6

               1)    Jones Enjoys Control Over Daily Club Operations............7

               2)    Jones Supervised Workers...................................................9

               3)    Jones Made the Classification Decision. ..........................10

    II.    DEFENDANTS KNOWINGLY VIOLATED THE LAW AND SHOULD BE HELD ACCOUNTABLE TO THE FULLEST EXTENT. ...................................13

        A) Defendants Willfully and Flagrantly Violated the Law as Directly Explained to them by the DOL. .......................................13

        B) Plaintiffs Are Entitled to Liquidated Damages.............................16

        C) Defendants Did Not Rely on an Administrative Interpretation. ..................................................................................18

    III.    PLAINTIFFS ARE ENTITLED TO FULL MINIMUM WAGES FREE AND CLEAR OF KICKBACKS.........................................................................18

    IV.    DEFENDANT NORTHSIDE'S COUNTERCLAIMS MUST BE DENIED. ...........21

        A) Plaintiffs Cannot Contract Away their Statutory Rights. ..............22

        B) Northside Cannot Confer a Benefit that Does Not Belong to It. ................................................................................................24

CONCLUSION ..................................................................................................25

## TABLE OF AUTHORITIES

CASES

*Adams v. Countrywide Home Loans Inc.*, 2013 WL 1963759 (N.D. Ga. May 9, 2013) .............................................................................................24

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc*., 515 F.3d 1150 (11th Cir. 2008) ......................................................................................13, 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................4

*Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) .............................7

*Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728 (1981).............................22

*Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ...................................22

*Butler v. PP&G, Inc.*, 2013 WL 5964476 (D. Md. Nov. 7, 2013) .........................15

*Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011)...............15

*Collins v. Barney's Barn, Inc.* (E.D. Ark., Nov. 14, 2013) ....................................15

*Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216 (M.D. Fla. 2005) ..........18

*De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295 (N.D. Ga. 2008).......................................................................................*passim*

*Dole v. Simpson*, 784 F. Supp. 538 (S.D. Ind. 1991)................................................12

*Donohue v. Francis Servs.*, 2005 WL 1155860 (E.D. La. May 11, 2005)..............11

*Donovan v. Tavern Talent & Placements, Inc.*, 1986 WL 32746 (D. Colo. Jan 8, 1986)................................................................................16, 20

*Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562 (11th Cir. 2013) ...............16

*Freemon v. Foley*, 911 F. Supp. 326 (N.D. Ill. 1995)..............................................12

*Fuller v. Fuller*, 84 S.E.2d 665 (1954) ...................................................................25

*Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997) ..............15

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013).........15, 25

*Hart v. Rick's Cabaret Intern'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) ...........20

*Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369 (M.D. Ga. 2011) ...............................................................................................................24

*Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015) ...........................23

*Lakeside Vista Apartments, L.P. v. Fed. Nat'l Mortg. Ass'n*, No. 1:09-CV-3136-RWS, 2010 WL 2640602 (N.D. Ga. June 29, 2010) ..................................4

*Lanzetta v. Florio's Enters., Inc.*, 2011 WL 253961 (S.D.N.Y. Jan. 25, 2011)......23

*Martin v. Circle C Invest., Inc.*, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991) ...............................................................................................................16

*Martin v. PepsiAmericas, Inc.*, 628 F.3d 738 (5th Cir. 2010) ................................22

*Martin v. Priba Corp.*, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992) ......................16

*Matsushita v. Zenith Ratio Corp.*, 475 U.S. 574 (1986)...........................................4

*McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260 (D. Md. 2014) .............15

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ........................................13

*Moore v. Appliance Direct, Inc.*, 708 F.3d 1233 (11th Cir. 2013) .......................7–8

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) ................16

*Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010).........................16

*Norton v. Groupware Int'l, Inc.*, 2007 WL 42955 (M.D. Fla. Jan. 4, 2007)............7

*Olson v. Super. Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985)....................16

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986) .......................................................7

*Reich v. Circle C. Invest., Inc.*, 998 F.2d at 330 (5th Cir. 1993) ......................15, 20

*Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995) ............................9, 16, 21

*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008) .............17

*Rubin v. Tourneau, Inc.*, 797 F. Supp. 247 (S.D.N.Y. 1992) ..................................12

*Russell v. Promove, LLC*, No. 1:06-CV-00659, 2007 WL 2274770 (N.D. Ga. Aug. 7, 2007) ........................................................................................................12

*Stevenson v. Great Am. Dream*, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013)......15

*Stout v. Smolar*, No. 1:05-CV-1202-JOF, 2007 WL 2765519 (N.D. Ga. Sept. 18, 2007) ..........................................................................................................11

*Tenn. Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944)...........................22

*Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D.D.C. 2011) ....................16

*Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012)......15

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985)....................23

*Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014) .............15

*Wingrove v. D.A. Techs., Inc.*, 2011 WL 7308492 (N.D. Ga. Feb. 3, 2011)...........23

## STATUTES

29 U.S.C. § 201, *et seq*...............................................................................................2

29 U.S.C. § 203 ...................................................................................................5–6, 19

29 U.S.C. § 206 .........................................................................................................5, 19

29 U.S.C. § 216 .......................................................................................................16, 24

29 U.S.C. § 259 .............................................................................................................18

29 U.S.C. § 260 .............................................................................................................24

## R<span>ULES</span>, R<span>EGULATIONS</span>, & M<span>ISC</span>

5 C.F.R. § 551.104 ...................................................................................14

29 C.F.R. § 531.35 ..............................................................................2, 19

29 C.F.R. § 531.59 ...............................................................................19

29 C.F.R. § 578.3 .............................................................................13–14

29 C.F.R. § 776.4 ...............................................................................18

29 C.F.R. § 791.2 ................................................................................6

Federal Rules of Civil Procedure 56......................................................4

DOL, *Fact Sheet #15 Tipped Employees* (July 2013) .............................19

## INTRODUCTION

The primary legal issues in this case have already been resolved. Defendants agree that Plaintiffs—who worked as entertainers at an adult entertainment nightclub—qualify as "employees" under the Fair Labor Standards Act ("FLSA"). The Court already ruled that Plaintiffs are non-exempt employees entitled to minimum wages and that the monies Plaintiffs receive from customers legally qualify as gratuities, not service charges, and therefore cannot be used by Defendants after-the-fact to satisfy their minimum-wage payment obligations. Plaintiffs have prevailed on the merits.

All that is left to address with a very simple and efficient damage trial are the types of damages Plaintiffs are owed and by whom. On the question of who, Plaintiffs ask the Court to find Defendant 1400 Northside Drive ("Northside") qualifies as a covered entity engaged in interstate commerce subject to the FLSA. Plaintiffs also ask the Court to find Defendant C.B. Jones ("Jones") qualifies as a joint employer. Both Defendants (also collectively "Swinging Richards") should be jointly and severally liable for the club's failure to comply with the FLSA.

As to the question of damages, Swinging Richards owes entertainers "free and clear" back wages for work performed during a three year statute of limitations period, along with liquidated damages. In other words, Plaintiffs seek a ruling that

Defendants knew their actions violated the law and they recklessly disregarded their legal obligations without a good-faith justification. And lastly, Plaintiffs ask the Court to hold that these damages will not be diminished by Defendant Northside's baseless counterclaims.

The material facts are not in dispute, making these issues ripe for summary adjudication and leaving only the quantification of damages for trial on a representative basis. The Court should grant Plaintiffs' Motion.

## PROCEDURAL BACKGROUND

Plaintiffs Clinton Henderson and Andrew Olinde filed this action on behalf of themselves and other similarly-situated entertainers ("Plaintiffs") who worked at a male strip club called Swinging Richards seeking to recoup unpaid minimum wages free and clear under the FLSA, 29 U.S.C. § 201, *et seq.*; 29 C.F.R. § 531.35. (Compl., ECF Nos. 1, 64.) Defendants answered, and Defendant Northside counterclaimed against Plaintiffs for breaches of contract, breach of good faith and fair dealing, and unjust enrichment. (Def. Northside's Counterclaims, ECF No. 32; Def. Northside's Ans., ECF No. 70; Def. Jones's Ans., ECF No. 71.)

The parties agreed to conditionally certify the collective, (ECF No. 27), and to bifurcate discovery. (ECF Nos. 56, 69.) Defendants represented that it would not dispute Plaintiffs' FLSA employee-status, (ECF No. 66), and the parties filed

cross motions for summary judgment on the issues of Defendants' creative professional exemption and offset defense.  (ECF Nos. 81–98.)

On June 19, 2015, the Court ruled entertainers did not satisfy the creative-professional exemption.  (Order 8, ECF No. 105.)  The Court also held that Defendants could not offset their wage obligations using customer gratuities.[1] Following the Court's Order, the parties engaged in the second phase of litigation, relating to the employer status of C.B. Jones, Plaintiffs' damages, and Defendants' mental state (i.e. whether Defendants willfully violated the law and whether Defendants acted in good faith).  (Stip. 2–3, ECF No. 111.)

This Motion addresses all remaining issues, except for the precise amount of damages Defendants owe, which shall be reserved for trial.  After summary judgment, the parties have agreed to try any remaining issues on a representative basis.  (Bailey Decl. ¶ 18.)  Each side will call no more than five Plaintiffs to

---

[1] Defendants' offset defense boiled down to the question of whether the monies entertainers received from customers qualified as "tips" or "gratuities" as a matter of law.  (*Id.* at 8–9.)  Having reviewed the thorough record, the Court found that the monies received by dancers from customers "on the main stage, the main floor, the VIP lounge, and the VIP rooms were obviously 'tips,' and so they may not be used to offset the Defendant's minimum wage obligations under the FLSA."  (*Id.* at 9.)  In so finding, the Court stated that it was "fatal" to the club's argument that it did not treat *all* tips received as gross receipts of the company.  (*Id.* at 10–11).  The Court also refused to characterize Plaintiffs' tips as "services charges" belonging to Defendants because they were not distributed directly to the entertainers by the club.  Defendants filed a request for interlocutory appeal on all of these issues, which remains pending.  (ECF Nos. 106, 113.)

testify in their case.  (*Id.*)

A comprehensive overview of the underlying facts material to the below analyses are provided in Plaintiffs' Statement of Undisputed Facts ("Pls.' SOF") accompanying this Motion, and are therefore incorporated herein by reference.

## LEGAL STANDARD

Summary judgment is appropriate when—upon drawing "all reasonable inferences in the light most favorable to the non-moving party"—"there is no genuine dispute as to any material fact" to resolve at trial.  Fed. R. Civ. P. 56(a); *Lakeside Vista Apartments, L.P. v. Fed. Nat'l Mortg. Ass'n*, No. 1:09-CV-3136-RWS, 2010 WL 2640602, at *7 (N.D. Ga. June 29, 2010) (citation omitted).

The mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  To survive, a dispute must be genuine and must relate to material facts.  *Id.*  A fact is considered material only if it is identified by the substantive law as an essential element of the nonmoving party's case.  *Id.* at 248.  In other words, "[w]here the record taken as a while could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment is appropriate.  *Matsushita v. Zenith Ratio Corp.*, 475 U.S. 574, 587 (1986).  The Court can resolve the

following issues as a matter of law.

## LEGAL ANALYSIS

I.    **BOTH DEFENDANTS ARE LIABLE UNDER THE FLSA.**

Both Defendants are obligated to comply with the FLSA.  Defendant Northside is liable as a covered enterprise, and Defendant Jones is responsible as a joint employer.  The Court should hold them both responsible for denying entertainers of their legally entitled minimum wages.

A)    **The FLSA Applies to Defendant Northside.**

The FLSA covers employers who are "engaged in commerce" or who employ employees "engaged in commerce."  29 U.S.C. § 206(a).  Northside is a covered entity because it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and because it has an "annual gross volume of sales made or business done [that] is not less than $500,000 . . . ."  § 203(s)(1)(A).

Swinging Richards's appeal extends beyond Georgia's borders.  It is "the only GAY managed and GAY operated male strip club in the Southeast."  (Pls.' SOF ¶ 6.)  Its entertainers and customers come from across the country.  (*Id.*) Swinging Richards sells customers both domesticated and imported alcohol that the club obtains from outside of Georgia.  (*Id.* ¶ 8.)  The club is equipped with

furnishings and décor that were manufactured outside of Georgia. (*Id.* ¶ 7.) No credible argument exists that Swinging Richards is not engaged in commerce. Additionally, Defendant admits that its annual sales exceed $500,000. (*Id.* ¶ 9.) Therefore, Northside easily qualifies as a covered enterprise availed to the obligations and responsibilities of the FLSA.

B) **Defendant Jones Jointly Employed Entertainers.**

At Swinging Richards, the buck stopped with Jones. He owned and operated Northside. (Pls.' SOF ¶¶ 10, 16.) Management and office personnel reported directly to him. (*Id.* ¶¶ 20–28.) He established club policies and made decisions concerning Swinging Richards's working relationship with entertainers. (*Id.* ¶¶ 30–47.) Most importantly, he decided to classify entertainers as independent contractors—a decision from which he directly profited—and he therefore should also be held accountable as a joint employer. (*Id.* ¶¶ 46–47.)

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). This broad definition contemplates that an employee may work under "two or more employers at the same time . . . ." 29 C.F.R. § 791.2(a). In this scenario, all employers "are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act . . . ." *Id.*

To establish joint-employer liability for a corporate officer, there is no need to pierce the corporate vail.  The analysis is much more lenient as the definition of employer is much broader under the FLSA.  *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996).  Corporate officers like Jones may qualify as joint employers if they are involved in the day-to-day operation of the business *or* if they have some direct supervisory responsibility.  *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013) (citing *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)).  This is a question of law.  *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1303 (N.D. Ga. 2008) (citing *Antenor v*, 88 F.3d at 929).  Jones qualifies as a joint employer under this standard.

1)    ***Jones Enjoys Control Over Daily Club Operations.***

"Significant" to the analysis is the fact that Jones is the club's owner and sole shareholder.  (Pls.' SOF ¶¶ 10–11); *De Leon-Granados*, 581 F. Supp. 2d at 1303 (citing *Norton v. Groupware Int'l, Inc.*, 2007 WL 42955, at *3 (M.D. Fla. Jan. 4, 2007)).[2]  He also serves as Northside's chief executive officer and chief

---

[2] Jones also owns the facilities and all the fixtures where the club operates and where Plaintiffs work.  (Pls.' SOF ¶ 13.)  Ownership over the facilities is "probative of joint-employment status for the obvious reason that without the land, the worker might not have work, and because a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to [someone else.]"  *Antenor*, 88 F.3d at 936–37.

operating officer.  (Pls.' SOF ¶ 16.)  These positions provide him with authority over club operations, as well as power to alter club policies and practices.

Jones not only possessed the right to control the business, he exercises this right.  Decisions about club management came from Jones.  (Pls.' SOF ¶¶ 23, 30.)  For example, He decided that female patrons could not use the VIP rooms.  (*Id.* ¶ 31.)  He set and adjusted pricing.  (*Id.* ¶ 32.)  He made entertainers sign non-compete agreements.  (*Id.* ¶ 45.)  He organized charity auctions and signed off on advertisements.  (*Id.* ¶¶ 33–34.)

Jones hires the club's revolving door of mangers, and he directly supervised management, the bookkeeper, the accountant, and the person responsible for club marketing.  (*Id.* ¶¶ 20–28.)  He directed their job responsibilities.  (*See, e.g.*, *id.* (directing the accountant on how to document beverage sales so that he could better track business expenses); *id.* (directing the bookkeeper to record tip information); *id.* (testifying that he ran all marketing decisions by Jones).)

Jones was physically present at the club, at times on a weekly basis.  (*Id.* ¶ 35.)  He attended entertainer meetings.  (*Id.* ¶ 37.)  When he was not around, he called in.  (*Id.* ¶ 36.)  Management often told entertainers that decisions came from Jones.  (*Id.* ¶ 30.)  This level of participation warrants personal liability.  *See Moore*, 708 F.3d at 1237 (upholding jury verdict where CEO owned 75% of the

employer entity, "guided company policy," gave "instructions to managers regarding job duties," and "he was the ultimate decision maker at the company," negotiating leases and contracts); *Reich v. Priba Corp.*, 890 F. Supp. 586, 589 (N.D. Tex. 1995) (holding manager of a strip club liable even though he had no ownership interest in the club because he made major policy decisions affecting the profitability of the corporation).

Defendants will likely argue that Jones's participation in club operations has diminished over time due to his deteriorating health. (Pls.' SOF ¶ 29.) But, operational control is not diminished even if "he sometimes delegates certain decisions to be made by others." *De Leon-Granados*, 581 F. Supp. 2d at 1304; *see also id.* at 1307 ("He most certainly was involved in the day-to-day operation of his business, and that others were also occasionally involved in operational aspects of the business is not a persuasive reason to conclude that Eller was not the employer of Plaintiffs."). Regardless, the record is clear that, despite his health troubles, he continued to be involved in important decisions during the relevant time frame. *See supra*. He ultimately decided which responsibilities to continue to undertake and which to delegate. He remained in control.

2)     ***Jones Supervised Workers.***

Not only does Jones own and operate Swinging Richards, but workers

considered him their "boss." (Pls.' SOF ¶¶ 20, 30.) He imposed rules on entertainers, corrected behavior, suspended, and issued fines. (*Id.* ¶¶ 38–45.) He established club policies with regards to scheduling, costumes, and instruction on how entertainers could dance. (*Id.* ¶ 38.) He often told managers how to handle disputes and issues. (*Id.* ¶ 30.) Entertainers understood him to be the final decision maker. (*Id.*)

Jones enjoyed ultimate control over the hiring and firing of entertainers. And, while hiring and firing were two responsibilities Jones often delegated to his management team; managers engaged in these activities at his direction and with his input. (*Id.* ¶ 39); *see De Leon-Granados*, 581 F. Supp. 2d at 1306 (considering whether office had authority to make hiring and firing decisions even though "he normally delegate[d] this duty to others"). On occasion, Jones himself actively did undertake in these responsibilities, and he even hired and fired some Plaintiffs in this case. (Pls.' SOF ¶¶ 39, 43–44.) He sufficiently supervised entertainers to satisfy the joint employer standard.

3)  ***Jones Made the Classification Decision.***

Perhaps most importantly, Jones freely admits that it was his unilateral decision to classify entertainers as independent contractors. (*Id.* ¶ 46.) He profited for decades from this decision. Jones put money directly in his pockets by denying

entertainers of wages, requiring entertainers pay to work, and requiring entertainers subsidize the club's other employees' wages.  (*Id.* ¶¶ 12, 118, 124.)  He implemented rules and policies in an attempt to better adhere to his own classification decision. (*Id.* ¶ 38.)  He reevaluated this decision over the years. (*Id.* ¶ 47.)  He decided to keep making money at the expense of his entertainers.  Only after the lawsuit was filed did Jones require entertainers document their work time and tip earnings.  (*Id.* ¶ 28, 103–04.)  He audited company records for FLSA compliance with one "mild brush" review, and he determined they were adequately compensated.  (*Id.* ¶ 105.)  Jones had the opportunity to rectify the wrong complained of in this action, but he failed to do so.

Control of FLSA compliance is an indicator of employee status.  *See De Leon-Granados*, 581 F. Supp. 2d at 1306–07 ("Eller has attended AWPA and FLSA compliance seminars on behalf of Eller and Sons Trees and has been the officer in charge of certifying the company's compliance with the provisions of those laws."); *Stout v. Smolar*, No. 1:05-CV-1202-JOF, 2007 WL 2765519, at *5 (N.D. Ga. Sept. 18, 2007) (holding individual defendant liable where he, among other things, made inquiries into the business' obligations under the FLSA); *Donohue v. Francis Servs.*, 2005 WL 1155860, at *5 (E.D. La. May 11, 2005) (finding individual liable where he was "responsible for setting pay policies and

for assuring that the company complied with all state and federal wage laws").

In fact, some courts have held this type of control to be sufficient alone to warrant a finding of employer status. As one court reasoned:

> "[The employer] definition is designed to include persons who are in fact responsible for causing violations of the Act. . . . If directors or officers or other employees have such control over the corporate entity that their decisions determine whether a violation occurs, then the Act considers them employers liable for the harm they cause.

*Dole v. Simpson*, 784 F. Supp. 538, 544–45 (S.D. Ind. 1991) (citations omitted), *cited by Russell v. Promove, LLC*, No. 1:06-CV-00659, 2007 WL 2274770, at *4 (N.D. Ga. Aug. 7, 2007); *see also Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995) ("[E]ven if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual."); *Rubin v. Tourneau, Inc.*, 797 F. Supp. 247, 253 (S.D.N.Y. 1992) (stating employer status hinges on "control over the employer's compliance"). Jones is ultimately responsible for Swinging Richards's FLSA violations, and he should be held accountable. He gambled with entertainers' wages, and he lost. For this reason, and because Jones was involved in day-to-day operations and employee supervision, the Court should rule he qualifies as a joint employer.

## II.   DEFENDANTS KNOWINGLY VIOLATED THE LAW AND SHOULD BE HELD ACCOUNTABLE TO THE FULLEST EXTENT.

As soon as Defendants admitted entertainers did not qualify as independent contractors, they conceded the issue of willfulness.  (Stip., ECF No. 66.)  This serves as a direct admission Defendants knew its classification decision did not hold water.  In fact, Defendants knew long before this case that entertainers qualified as employees deserving of a wage.  They knowingly ignored factually on point authority addressing strip club misclassification, and worse yet, they ignored a DOL determination that they were violating the law.  Defendants' behavior was certainly willful and therefore could not have been executed in good faith.

### A)   Defendants Willfully and Flagrantly Violated the Law as Directly Explained to them by the DOL.

The FLSA extends the statute of limitations from two years to three years if the employer acted "willfully," meaning he "either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc*., 515 F.3d 1150, 1162–63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  One way an employer may be found to possess "knowledge" is "if the employer received advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful."  29 C.F.R. §

578.3(c)(2).   An employer acts with reckless disregard if it failed "to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104; *see also* 29 C.F.R. § 578.3(C)(3).

Swinging Richards's violations plainly qualify as willful—most obviously because the DOL directly informed Defendants that entertainers qualified as employees and that it was required to comply with FLSA minimum wage and recordkeeping requirements.  (Pls.' SOF ¶ 62 ("Dancers at establishments such as yours do not meet th[e] criteria" for being classified as "independent contractors" under the FLSA.).)   The DOL directed Defendants to begin treating dancers as employees starting in December 1993. (*Id.* ¶ 79.)  It told Defendants to pay them minimum wage.  (*Id.* ¶ 79.)  The DOL plainly told Defendants to accurately record hours worked.  (*Id.* ¶ 55.)  The club represented that it would comply with these directives.  (*Id.* ¶ 79.)  The club represented that it would pay for expenses, like permit fees, to keep entertainers' wages above the minimum.  (*Id.* ¶ 78.)   It represented that it would track work hours and tips earned and compensate employees when their tips fell below the minimum wage threshold.  (*Id.* ¶¶ 75–77.) But, Defendants did none of these things.

Swinging Richards did not classify entertainers as employees.  It did not record their time, their earnings, or maintain legally required records.  (*See id.* ¶¶

89–103.)   It did not track all of entertainers' tips or provide entertainers with payroll reports.  (*Id.* ¶ 93.)  It did not perform weekly audits to ensure entertainers earned the minimum, and likewise did not compensate dancers when they earned less.  (*Id.* ¶ 94.)  The club did not reimburse entertainers for their permit fees.  (*Id.* ¶ 95.)  Swinging Richards simply did not modify its behavior to comply with the DOL.  This defiance was not only reckless, it was intentional.

Even without the club's blatant disregard for on-point DOL correspondence, Swinging Richards may still be found to have acted recklessly.  Defendants made no effort to abide by the FLSA during the relevant statutory period until Plaintiffs filed this lawsuit.   (*Id.* ¶¶ 98–105 (investigating minimum wage compliance after the filing of the lawsuit).)   This, despite the fact that Jones, an attorney, was personally aware of litigation against Atlanta strip clubs brought within the last ten years.   (*Id.* ¶ 49.)   In fact, the overwhelming weight of authority has found entertainers to qualify as employees deserving of a wage.[3]  Yet, Jones continued to

---

[3] *Stevenson v. Great Am. Dream*, 2013 WL 6880921, at *2 (N.D. Ga. Dec. 31, 2013); *Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326, 1329 (N.D. Ga. 2011); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997); *see also Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260 (D. Md. 2014); *Collins v. Barney's Barn, Inc.*, (E.D. Ark., Nov. 14, 2013; *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Butler v. PP&G, Inc.*, 2013 WL 5964476 (D. Md. Nov. 7, 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska

treat his dancers as contractors. *De Leon-Granados*, 581 F. Supp. 2d at 1314 (finding willfulness where defendant was aware of a relevant case and it watched relevant DOL training videos and still failed to reimburse expenses). This willful behavior deserves an extended three-year statute of limitations period.

B)   **Plaintiffs Are Entitled to Liquidated Damages.**

The FLSA provides an award of liquidated damages in an equal amount to compensatory damages. 29 U.S.C. § 216(b); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282–83 (11th Cir. 2008). "[L]iquidated damages are mandatory" and may only be reduced if the employer is able to prove he acted in good faith and with reasonable grounds for believing he was not violating the law. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 2013); *Alvarez Perez*, 515 F.3d at 1163. "[G]ood faith is intended to apply only where an employer innocently and to his detriment, followed the law . . . ." *Olson v. Super. Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985). This requires both an objective and subjective analysis. *Alvarez Perez*, 515 F.3d at 1150 (citation

---

June 14, 2012); *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D.D.C. 2011); *Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010); *Reich v. Priba Corp.*, 890 F. Supp. 586; *Martin v. Priba Corp.*, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); *Martin v. Circle C Invest., Inc.*, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991); *Donovan*, 1986 WL 32746.

omitted).[4]

Ironically, Defendants will likely defend against liquidated damages by relying on the very DOL correspondence that they ignored.  Defendants will argue they subjectively believed the club to be in compliance with the DOL's 1993 correspondence.  Those letters suggested that table dance monies could belong to the club and could be used to satisfy some portion of minimum wages.  (Pls.' SOF ¶ 56.)  Defendants will reason that—although the Court ultimately determined that these monies qualify as tips and therefore belong to dancers not the club—the DOL's mistaken assumption provides Swinging Richards with a good faith excuse.

Defendants, however, cannot read the DOL's correspondence piecemeal.  It cannot hide behind the "table dance fees count as tips" language while simultaneously failing to comply with the law and the letter in every way.  It is unreasonable to assume Swinging Richards could somehow go from non-compliant to compliant following the investigation by literally doing nothing.  The club's attempt to cherry pick the one provision it liked from the DOL letters and ignore the rest is not reasonable.  Defendants fail to satisfy the objective good-faith

---

[4] If the Court finds Defendant acted willfully, then Defendants' defense against liquidated damages automatically fails.  *Alvarez*, 515 F.3d at 1163–67; *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008).  Plaintiffs hereby incorporate all their arguments supporting a finding of willfulness to defend against a finding of good-faith.

requirement necessary to reduce liquidated damages.

    C)    **Defendants Did Not Rely on an Administrative Interpretation.**

Relatedly, Defendants assert a good-faith affirmative defense under section 259 of the FLSA, which excuses violations when the employer acted in reliance on a written "regulation, order, order, ruling, approval, or interpretation" of the administrator of the Wage and Hour Division of the DOL.  29 U.S.C. § 259; (Def. Northside's Ans. 3–4, ECF No. 70; Def. Jones's Ans. 2–3, ECF Ns. 71.)  As stated above, Defendants did not actually conform with the communications at issue. Moreover, the Court can swiftly reject this affirmative defense because correspondence with a DOL investigator do not qualify as a written administrator's interpretation sufficient to evade liability under the FLSA.  *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216, 1222 (M.D. Fla. 2005).  Defendants' affirmative defense must be denied.

## III.    PLAINTIFFS ARE ENTITLED TO FULL MINIMUM WAGES FREE AND CLEAR OF KICKBACKS.

Plaintiffs next ask the Court to determine precisely what qualifies as back wages so that the only issue left for the jury relating to damages is simply a question of amount.  Typically, in a minimum wage case, the compensatory damages equal the difference between the wages paid and the required minimum

wage.[5]  But, this is a case where the employees received absolutely **_no wages_**[6] and

instead paid to work.  Therefore, the back-pay calculation here must also include

reimbursements for unlawful kickbacks.  *De Leon-Granados*, 581 F. Supp. 2d at

1315 (awarding back pay that included reimbursements where plaintiffs "not only

failed to receive the minimum wage, they actually had negative incomes.").  As the

regulations explain:

> '[W]ages' cannot be considered to have been paid by the employer
> and received by the employee unless they are paid finally and
> unconditionally or 'free and clear.' The wage requirements of the Act
> will not be met where the employee 'kicks-back' directly or indirectly
> to the employer or to another person for the employer's benefit the
> whole or part of the wage delivered to the employee.

29 C.F.R. § 531.35.  In other words, Defendants owe Plaintiffs $7.25 per hour for

each hour worked, 29 U.S.C. § 206(a), plus reimbursement of all fines, fees, and

"tipouts" Plaintiffs paid to the club as a condition of employment.  *See* DOL, *Fact*

---

[5] Minimum wage is calculated on a weekly basis.  *See* 29 C.F.R. § 776.4.

[6] Customer tips cannot count towards wages owed.  (Order 9, ECF No. 105.)
Monies received from customers for dances qualify as gratuities/tips and are
therefore the property of the entertainer.  (*Id.*) Defendants here likewise cannot
invoke the earned tip credit under 29 U.S.C. § 203(m) (permitting a tip credit in the
form of a reduced minimum wage payment so long as the "employee has been
informed by the employer of the provisions of this subsection, and all tips received
by such employee have been retained by the employee.").  For one, Defendants did
not notify Plaintiffs that it intended to invoke the earned tip credit (they did not
even assert the tip credit as an affirmative defense in this case).  Moreover,
Defendant do not pay entertainers *any* wages.  The credit requires at least a wage
of $2.13 per hour irrespective of the amount of tips earned.  *See* 29 C.F.R. §
531.59(b) (explaining $2.13 per hour is the maximum tip credit).

*Sheet #15 Tipped Employees* (July 2013)[7] ("[E]ven where a tipped employee receives at least $7.25 per hour in wages directly from the employer, the employee may not be required to turn over his or her tips to the employer.")

Swinging Richards required entertainers pay the club a flat fee of $20 or $25 for each shift worked. (Pls.' SOF ¶ 117.) This amount increased by $10 on t-shirt/midnight review nights and by an additional $1.00 certain days of the week when entertainers took breathalyzers. (*Id.* ¶ 119.) Plaintiffs are therefore entitled to recoup all these fees in addition to the $7.25 an hour. *See Hart v. Rick's Cabaret Intern'l, Inc.*, 60 F. Supp. 3d 447, 475–77 (S.D.N.Y. 2014) (granting summary judgment as to damages for entertainer case where plaintiffs included in the calculation of minimum wages recoupment of fines and fees); *Donovan v. Tavern Talent & Placements, Inc.*, 1986 WL 32746 (D. Col. Jan. 8, 1986) (holding that a "dance fee" charged by a club that also allegedly paid minimum wages caused the club to violate the minimum wage law because it reduced dancers' take-home wages below the required amount).

Defendants also fined entertainers for engaging in undesired or insubordinate behavior—mainly arriving late to work. Plaintiffs seek to also incorporate these monies into their calculation of back pay. *Reich v. Circle C.*

---

[7] *Available at* www.dol.gov/whd/regs/compliance/whdfs15.pdf.

*Invest., Inc.*, 998 F.2d at 330 (remanding to lower court for determination of whether fines imposed on entertainers should be included in back pay calculation).

Lastly, Swinging Richards required entertainers to subsidize its remaining workforce in the form of "tip outs," or payments to other club workers, such as DJs, security, and the door person. "[C]ollecting a tip out fee similarly violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." *Reich v. Priba Corp.*, 890 F. Supp. at 595. Therefore, to fully compensate Plaintiffs, Defendants must provide back pay at the full minimum wage rate, as well as "return all tip out fees collected from the entertainers." *Id.*

The Court should rule that these monies should be returned to Plaintiffs as a matter of law. The precise amounts of fines, fees, and tip outs reimbursed is a question for the jury.

## IV.   DEFENDANT NORTHSIDE'S COUNTERCLAIMS MUST BE DENIED.

Lastly, Defendant Northside's counterclaims should swiftly be rejected.[8] First, the U.S. Supreme Court has already held employees cannot contract away their FLSA rights, making Defendant's contracts unenforceable.   Second, Defendant's unjust enrichment claim is really a second offset defense in disguise.

---

[8] Defendant Jones does not assert counterclaims against Plaintiffs. (*See* Def. Jones's Ans., ECF No. 71.)

Defendant has already lost this issue and should not be allowed a second bite at the apple.  Both counterclaims fail.[9]

A)      **Plaintiffs Cannot Contract Away their Statutory Rights.**

According to Defendant's counterclaim, Swinging Richards permitted Plaintiffs to work at the club in exchange for the promise and representation that: Plaintiffs acknowledged their independent contractor status, agreed to only receive tips from customers, and indemnified the club of any wrongdoing.  (Def. Northside's Counterclaims ¶¶ 3(a)–(b), 4, ECF No. 32.)  In essence, Defendant asserts a claim for breach of contract resulting from Plaintiffs' exercise of their statutory rights.  (*Id.* ¶ 9.)

Defendant's counterclaims fail as a matter of public policy.  Employees cannot agree to "waive, release, and hold harmless" an employer under the FLSA. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Tenn. Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602–03 (1944) ("Any custom or

---

[9] This Circuit looks disfavorably upon, and has declined to entertain, counterclaims in FLSA cases because resulting "set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the act . . . .  The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards."  *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds by McLaughlin*, 486 U.S. 128; *see also Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 742 (5th Cir. 2010) ("We continue to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee.").  Defendant's counterclaims are antithetical to FLSA claims and should be rejected outright.

contract . . . like an agreement to pay less than the minimum wage requirements . . . cannot be utilized to deprive employees of their statutory rights."); *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 808 (6th Cir. 2015).[10]   Employees even need court or DOL approval to dispose of their claims in the context of settlement. *Wingrove v. D.A. Techs., Inc.*, 2011 WL 7308492, at *1 (N.D. Ga. Feb. 3, 2011) (stating that even a stipulation to lack of FLSA coverage in a settlement agreement cannot waive FLSA rights).

The reason for this rigid prohibition against waiver was articulated best by the U.S. Supreme Court in *Tony & Susan Alamo Found. v. Sec'y of Labor*:

> [T]he purposes of the Act require that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act.  Such exceptions to coverage would affect many more people than those workers directly at issue in this case and would be likely to exert a general downward pressure on wages in competing businesses.

471 U.S. 290, 302 (1985) (citations omitted) (addressing employees who "themselves vehemently protest[ed] coverage").   The Court wished to protect workers against a race to the bottom, which would occur if employers obfuscated the law through form agreements requiring employees waive rights as a condition

---

[10] Nor can an employee waive her right to receive tips.  *See Lanzetta v. Florio's Enters., Inc.*, 2011 WL 253961, *5 (S.D.N.Y. Jan. 25, 2011).

of employment—which is what Swinging Richards did here.[11]  The Court should

reject Defendants' invitation to flout the Supreme Court and deny the claim.[12]

B)     **Northside Cannot Confer a Benefit that Does Not Belong to It.**

Defendant's unjust enrichment counterclaim is really an offset defense

disguised as a cause of action.  To demonstrate, unjust enrichment requires that (1)

Northside "conferred a benefit" on Plaintiffs; (2) Plaintiffs had knowledge of the

benefit; and (3) Plaintiffs "accepted or retained the benefit conferred;" and (4) the

circumstances are such that it would be inequitable for Plaintiffs to retain the

benefit.  *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377

(M.D. Ga. 2011).  This claim is foreclosed upon by the Court's ruling on the

parties' previous cross motions for summary judgment.

All of the monies entertainers receive from customers qualify as gratuities

and are therefore the property of the entertainers.  (Order 9, ECF No. 105.)  They

do not belong to the Club.  They cannot therefore qualify as a benefit conferred by

---

[11] The alleged damages resulting from Plaintiffs "breach" (aka seeking to enforce their statutory rights) are permitted by law and, accordingly, cannot support a breach of contract claim.  28 U.S.C. §§ 216(b), 260.

[12] "[T]o state a claim for breach of the implied covenant, the plaintiff must be found to have stated a claim for breach of contract (since the implied covenant cannot be breached independently of an express contract term)." *Adams v. Countrywide Home Loans Inc.*, 2013 WL 1963759, at *3 (N.D. Ga. May 9, 2013) (quotation omitted). Thus, for the reasons discussed above, the Court must deny Defendants' counterclaim for breach of implied duties of good faith and fair dealing.

Northside.  Defendant cannot give what does not belong to it.  *See Hart*, 967 F. Supp. 2d at 934–35 ("The Club] may not pursue a claim of unjust enrichment, because the performance fees did not come from the Club . . . .").)[13]

Moreover, there is nothing inequitable about permitting entertainers to receive back wages in this case and also to retain their earned tips. "Equity and good conscience do not justify giving [the club] a do-over . . . . Having misclassified plaintiffs and therefore breached their statutory duties as employers, defendants may not avoid liability for such duties." *See Hart*, 967 F. Supp. 2d at 934–35.  Defendant's counterclaims fails.[14]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion in its entirety so the parties may proceed to trial on a representative basis to answer the question of damages.

---

[13] To the extent Defendants argue that they allowed entertainers to retain money from customers based on a contractual understanding that they were contractors, this argument also fails given that the "contracts" are unenforceable (*see supra*) and because nothing in the "contracts" states that money from customers shall belong to Swinging Richards should entertainers be found to be employees.

[14] In asserting this counterclaim, Defendant seeks a free pass for violating the law. Defendant has unclean hands in its classification of Plaintiffs and its structuring of table dance minimums, and it should therefore be barred from relief in equity. *Fuller v. Fuller*, 84 S.E.2d 665, 666 (1954) ("As a general rule, equity will not grant relief to a party who comes into court with unclean hands, or is guilty of an illegal or immoral act.").

Respectfully submitted,

Dated: November 9, 2015 **NICHOLS KASTER, PLLP**


/s/ Rebekah L. Bailey
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Anna Prakash, MN Bar No. 0351362*
Rebekah L. Bailey, MN Bar No.0389599*
Ashley Thronson, MN Bar No. 0395947*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
bailey@nka.com
athronson@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**
John Mays, GA Bar No. 986574
Meredith Carter, GA Bar No. 325422
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
john@maysandkerr.com
meredith@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE**