## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

      Plaintiffs,                     Case No.: **1:13-CV-3767-TWT**

v.

1400 NORTHSIDE DRIVE, INC., d/b/a
SWINGING RICHARDS, and C.B.
JONES,

      Defendants.

## PLAINTIFFS' REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT, STAGE 2

Plaintiffs Clinton Henderson and Andrew Olinde, on behalf of themselves

and the collective, by and through their attorneys, hereby submit this Reply

Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment,

Stage 2:

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................1

REPLY ANALYSIS ...........................................................................2

    I.   DEFENDANT NORTHSIDE IS "ENGAGED IN COMMERCE" PURSUANT TO THE COURT'S PRIOR RULING. ...............................................2

    II.  PURSUANT TO UNDISPUTED FACTS, DEFENDANT JONES JOINTLY EMPLOYED ENTERTAINERS........................................................4

        A) Manager Colunga's Involvement Does Not Diminish Jones's. ...............................................................................4

        B) No Material Fact Dispute Exists as to Jones's Employer-Status. ...............................................................................5

    III. DEFENDANTS CANNOT RELY ON A DEPARTMENT OF LABOR LETTER THAT THEY DID NOT FOLLOW....................................9

    IV. PLAINTIFFS ARE ENTITLED TO FULL MINIMUM WAGES FREE AND CLEAR OF KICKBACKS........................................................12

    V.  DEFENDANT NORTHSIDE'S COUNTERCLAIMS MUST BE DENIED. ...........12

CONCLUSION .................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) ............................................5

*Bruce Construction Corp. v. United States*, 242 F.2d 873 (5th Cir. 1957) ..............6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (2008) ........................................................6

*Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011)...............12

*Cornell v. CF Ctr., LLC*, 410 F. App'x 265 (11th Cir. 2011) ...................................5

*Curl v. Int'l Bus. Machines Corp.*, 517 F.2d 212 (5th Cir. 1975) ...........................5

*De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295 (N.D. Ga. 2008)...............................................................................................................5, 8

*Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343 (S.D. Fla. 2009)..................4

*Doe v. Cin-Lan, Inc.*, 2010 WL 726710 (E.D. Mich. Feb. 24, 2010)......................14

*Dole v. Simpson*, 784 F. Supp. 538 (S.D. Ind. 1991)................................................8

*Donohue v. Francis Servs.*, 2005 WL 1155860 (E.D. La. May 11, 2005)...............8

*Exime v. E.W. Ventures, Inc.*, 591 F. Supp. 2d 1364 (S.D. Fla. 2008).....................4

*Falk v. Brennan,* 414 U.S. 190 (1973).......................................................................5

*Freemon v. Foley*, 911 F. Supp. 326 (N.D. Ill. 1995)...............................................8

*Geter v. Galardi S. Enters.*, 43 F. Supp. 3d 1322 (S.D. Fla. 2014) ........................13

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013)...............14

*McFeeley v. Jackson St. Entm't, LLC*, 2012 WL 5928769 (D. Md. Nov. 26, 2012) ...................................................................................................................14

*Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, 2015 WL 165305 (D. Md. Jan. 12, 2015) ...........................................................................................4

*Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir. 2010) ...........3

*Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995) ........................................4

*Ruffin v. Entm't of E. Panhandle*, 845 F. Supp. 2d 762 (N.D. W. Va. 2011) .........14

*Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110 (11th Cir. 2010) ...............6

*Stout v. Smolar*, No. 1:05-CV-1202-JOF, 2007 WL 2765519 (N.D. Ga. Sept. 18, 2007) ...................................................................................................................8

*Thorne v. All Restoration Srvs., Inc.*, 448 F.3d 1264 (11th Cir. 2006) ....................4

## R<small>ULES</small>

Fed. R. of Civ. P. 56..............................................................................................6, 14

# INTRODUCTION

Defendants' response in opposition to Plaintiffs' Motion makes clear that no material fact disputes remain in this case apart from the quantification of damages. Defendants do not submit to the Court any conflicting evidence, and they only sparingly deny or object to a few of Plaintiffs' nonconsequential facts. Against this backdrop, Defendants barely address Plaintiffs' legal arguments, wholly ignoring Plaintiffs' supportive case law and failing to present new and conflicting legal theories of their own. Given this, the Court should reject Defendants' attempt to defer these ripe issues for trial, and should instead rule as a matter of law that:

(1) Defendant Northside qualifies as a covered employer, engaged in commerce under the Fair Labor Standards Act ("FLSA");

(2) Defendant Jones qualifies as an employer, jointly and severally liable for the classification decisions he made in his capacity as the owner and officer of Northside;

(3) In a light most favorable to Defendants, the relied-upon Department of Labor ("DOL") letter did not provide Swinging Richards with a free pass to continue to ignore the FLSA and therefore it cannot be used to diminish Plaintiffs' showing of willfulness or to support an objectively reasonable good-faith defense to liquidated damages or liability;

(4) After a jury determines Plaintiffs' work hours, Plaintiffs shall be awarded damages according to the agreed-upon formula; and

(5) Defendant Northside fails to present evidence of a valid and enforceable contract and that it has any lawful ownership claim over Plaintiffs' tips.

## REPLY ANALYSIS

**I.    DEFENDANT NORTHSIDE IS "ENGAGED IN COMMERCE" PURSUANT TO THE COURT'S PRIOR RULING.**

Defendant Northside continues to deny that it "engages in commerce" and is therefore covered by the FLSA.  This is particularly peculiar because Defendant *admits* to the facts supporting Plaintiffs' showing; it offers no conflicting additional facts; and it wholly ignores this Court's previous ruling on its arguments.  (*See* Defs.' Summ. J. Resp. 3–5, ECF No. 129.  *Compare* Pls.' SOF ¶¶ 6–9, ECF No. 124-1, *with* Defs.' SOF Resp. ¶¶ 6–9, ECF No. 129-1.)

Defendant Northside moved to dismiss Plaintiffs' complaint early in litigation, challenging Plaintiffs' enterprise-coverage allegations by invoking the ultimate-consumer rule.  (Defs.' Mem. to Dismiss, ECF No. 26-1.)  Defendant argued that the coverage was not satisfied because the club—and not its customers—was the "ultimate consumer" of the goods and materials Plaintiffs identified as having moved interstate.  The Court rejected Defendant's argument, specifically as to the club's purchase and sale of domestic and imported alcohol, holding that "**assuming the Plaintiffs' allegations to be true** – e.g., that the Defendant *sells* [domestic and imported] alcoholic beverages to its consumers – it is clear that neither the Defendant nor its employees are the 'ultimate consumers.'" (Order 5–6, ECF No. 72 (bolded emphasis added).)

2

Assumptions no longer, Defendant Northside *admits* fully to the following

allegations in Plaintiffs' second amended complaint:

> Defendants offer their customers the opportunity to spend time with
> nude male entertainers in an environment with alcohol. In fact,
> **Defendants' website has an entire webpage devoted to the club's
> bar, listing some of the alcohol choices it offers, including liquor
> and beer imported from outside of Georgia. (*See* Ex. C.)
> Defendants, in fact, sell imported liquor and beer at the club.**
> Defendants' homepage, under a section titled "All Male All Nude All
> Night" also lists the prices for well drinks and states "Our bartenders,
> shooter boys, and waiters only pour the best alcohol…." (*See* Ex. D.)
> Customers are required to be 21 years old to enter the club.
> Defendants' VIP Lounge (a section in the club) also has a separate
> bar.

(Pls.' 2d Am. Compl. ¶ 16, ECF No. 64 (emphasis added); Def. Northside's Ans. ¶

16, ECF No. 70.)   Defendant reaffirmed these admissions in responding to

Plaintiffs' statement of facts accompanying this Motion, all while failing to present

conflicting evidence.  (Pls.' SOF ¶ 8; Defs.' SOF Resp. ¶ 8.)  The Court's previous

ruling now requires judgment as a matter of law.

Moreover, Defendant has not provided this Court with any justification as to

why it should abandon its previous order and should instead adopt Defendant's

flawed and previously-rejected arguments.[1]   Absent this, it is clear Defendant

---

[1] For Plaintiffs' detailed rebuttal to Defendants' arguments, Plaintiffs incorporate
herein their Response to Defendants' Motion for a More Definite Statement, (ECF
No. 25), and their Response to Defendants' Motion to Dismiss, (ECF No. 55); *see
also See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1221 (11th Cir.

Northside sells alcohol purchased interstate, and under the Court's previous analysis, it is indeed engaged in interstate commerce.

## II.   PURSUANT TO UNDISPUTED FACTS, DEFENDANT JONES JOINTLY EMPLOYED ENTERTAINERS.

Defendants' efforts to shield Jones from liability are equally unpersuasive. Defendants' response, which resides on a single page, neither cites any supportive case law nor responds to Plaintiffs' factually and legally relevant authority. (*See* Defs.' Summ. J. Resp. 6.) Nor does Defendant Jones dispute the majority of presented facts that support a finding of joint-employer status. Instead, Defendants simply point the finger at someone else and then conclude, without support, that a fact question remains so to preclude summary judgment. Both arguments fail.

### A)   Manager Colunga's Involvement Does Not Diminish Jones's.

The Court should disregard Defendant Jones's attempt to transfer blame

---

2010) ("[T]he legislation was designed to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce." (citation omitted)); *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, 2015 WL 165305, at *6 (D. Md. Jan. 12, 2015) (Finding coverage where a restaurant purchased and sold wine bottled in California); *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1355 (S.D. Fla. 2009) (describing in detail the limited holding of *Thorne v. All Restoration Srvs., Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006)); *Exime v. E.W. Ventures, Inc.*, 591 F. Supp. 2d 1364, 1370–71 (S.D. Fla. 2008) ("Most, if not every, Circuit Court that has spoken on this issue has similarly construed the 1974 amendment as expanding enterprise coverage to virtually all employers, so long as that employer satisfies the $500,000 gross sales requirement."); *Reich v. Priba Corp.*, 890 F. Supp. 586, 590 (N.D. Tex. 1995) (finding enterprise coverage for a similar adult entertainment establishment).

onto his general manager Matt Colunga primarily because the FLSA contemplates "several simultaneous employers of any individual worker."  *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1303 (N.D. Ga. 2008) (citing *Falk v. Brennan,* 414 U.S. 190, 195 (1973)); *see also Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 268 (11th Cir. 2011) (finding two limited liability companies, four corporations, and two individuals collectively liable).  The Court need not concern itself with the question of who else could be held liable, or even who is more liable.[2]  The only question before the Court is whether Jones himself qualifies as a joint employer.  As set forth below, and in Plaintiffs' opening brief, he does.

B)    **No Material Fact Dispute Exists as to Jones's Employer-Status.**

After deflecting, Defendant Jones next argues that Plaintiffs' account of his involvement "create[s], at most, an issue of fact to be decided by a jury."  (Defs.' Summ. J. Resp. 6.)  Defendant, of course, does not present any facts to rebut Plaintiffs' showing so it is unclear precisely what fact dispute Defendant references.  *See Curl v. Int'l Bus. Machines Corp.*, 517 F.2d 212, 213 (5th Cir. 1975) ("(W)hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by

---

[2] This analysis is not a "mathematical formula."  *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996).  The goal should not be to determine which defendant is the most employer-like.  Rather, courts review the factors "qualitatively . . . which may point to both."  *Id.* (citations omitted).

receivable facts that a real, not formal controversy exists . . . ." (quoting *Bruce Construction Corp. v. United States*, 242 F.2d 873, 875 (5th Cir. 1957))).  Though Defendant does object to and/or deny (without support) a limited number of Plaintiffs' facts.[3]  Regardless of these trivial disputes, the remaining material and uncontested facts sufficiently establish a joint-employer relationship, namely:

Defendants admit Jones is the sole shareholder and owner of Northside, the facilities, the land, and all of its profits.  (Pls.' SOF ¶¶ 11–13; *see also* Defs.' Resp. SOF ¶¶ 11–13.)  Jones founded Northside (or its predecessor) and has acted as the chief executive officer and chief financial officer for at least the past eight years.  (Pls.' SOF/Defs.' Resp. ¶¶ 16–17.)  Defendants admit that Jones plays a part in club operations, in that he established the customer cover charge and drink prices, and he prohibited female patrons from entering the VIP lounge.  (Pls.' SOF/Defs.' Resp. ¶¶ 31–32.)  Jones managed the club's marketing.  (Pls.' SOF/Defs.' Resp. ¶ 34.)  The marketing personnel, the club bookkeeper, and accountant all report

---

[3] Most of the objections relate to hearsay.  Hearsay is tolerated to some extent at the summary judgment stage.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (2008) (stating that nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment"); *Saunders v. Emory Healthcare, Inc.,* 360 F. App'x 110, 112 (11th Cir. 2010) (affirming denial of motion to strike declaration because the "documents attached to the Declaration are either non-hearsay or could be reduced to admissible form"); *see also* Fed. R. Civ. P. 56(c).  Plaintiffs respond to these objections in the accompanying response to Defendants' Counter-Statement of Material Facts.

directly to Jones, they take direction from him, and they "check in" with the club at his request.  (Pls.' SOF/Defs.' Resp. ¶¶ 25–28, 34 103–04.)

Jones likewise admits that club managers, DJs, bartenders, waiters, VIP doormen, and entertainers consider him to be "the boss."  (Pls.' SOF/Defs.' Resp. ¶ 20.)  Jones admits he hires management, and that he has hired, disciplines, and fires entertainers.  (Pls.' SOF/Defs.' Resp. ¶¶ 21, 39, 42–43 (admitting to hiring manager Colunga, hiring Plaintiff Carnell, suspending Plaintiff Carnell, and terminating Plaintiff Brower).)  Jones decided whether and how to track entertainer work time and tip earnings.  (Pls.' SOF/Defs.' Resp. ¶ 103.)  Jones personally implemented a number of entertainer rules for the purpose of maintaining the appearance of an independent-contractor relationship with entertainers.  He decided that the club would not schedule dancers, dictate what entertainers could wear, or instruct entertainers on how to dance.  (Pls.' SOF/Defs.' Resp. ¶ 90.)

Jones supervises and controls entertainers in that he has held meetings to discuss club policies with entertainers, and he prohibited dancers from working at other clubs.  (Pls.' SOF/Defs.' Resp. ¶¶ 37, 45.)  When Jones is not present, he communicates with management via phone about club operations.  (Pls.' SOF/Defs.' Resp. ¶ 36.)  Defendants admit that management calls Jones to handle club issues, particularly disputes between entertainers.  (Pls.' SOF/Defs.' Resp. ¶

42 ("When I got into a disagreement with some other entertainers, management called Jones.  Jones questioned me and the other entertainers involved.  He then handed down the discipline.  I personally received at least one suspension and saw Jones fire another entertainer as a result of these altercations.").)

Most importantly, Defendants admit that Jones decided to originally classify, and subsequently to continue to classify, entertainers as independent contractors. (Pls.' SOF/Defs.' Resp. ¶¶ 46–48.)  It is therefore undisputed that he is the reason this lawsuit exists.  Thus, Jones should be held accountable for his decisions as a joint employer, irrespective of his general manager's contributions and irrespective of the Court's ruling on Defendants' pending evidentiary objections.  *See De Leon-Granados*, 581 F. Supp. 2d at 1306–07 (finding an officer in charge of certifying company's compliance with the FLSA to be a joint employer); *Stout v. Smolar*, No. 1:05-CV-1202-JOF, 2007 WL 2765519, at *5 (N.D. Ga. Sept. 18, 2007) (holding individual defendant liable where he, among other things, made inquiries into the business' obligations under the FLSA).[4]

---

[4] *See also Donohue v. Francis Servs.*, 2005 WL 1155860, at *5 (E.D. La. May 11, 2005) (finding individual liable who was "responsible for . . . assuring that the company complied with all state and federal wage laws"); *Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995) ("[S]o long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual."); *Dole v. Simpson*, 784 F. Supp. 538, 544–45 (S.D. Ind. 1991) ("[The employer] definition is designed to include persons who are in fact

### III.   DEFENDANTS CANNOT RELY ON A DEPARTMENT OF LABOR LETTER THAT THEY DID NOT FOLLOW.

Next, Defendants predictably invoke on a single DOL letter to refute Plaintiffs' showing of willfulness and to establish good faith defenses to liquidated damages and liability.  (Defs.' Summ. J. Resp. 7–9.)  Notably again, there is no dispute over material facts relevant to these issues.  Instead, Plaintiffs argue that Defendants' failure to adhere to the requirements found in these letters establishes willfulness (knowledge and/or reckless disregard), while Defendants argue that its reliance on the narrow "fees may equal wages" language in one letter establishes good faith.  These issues therefore are properly before the Court on this Motion.

With this understanding, Defendants' narrow reliance on single passage in one letter is primarily flawed because Defendants' misconstrue the passage out of context.  This letter is just one in a series of correspondence and meetings between the DOL and unidentified club owners during an investigation and settlement process that took place before Swinging Richards existed.  (Pls.' SOF ¶¶ 2, 58; *see* Exs. 20–27.)  Following the investigation, the DOL determined that entertainers at unidentified clubs did not qualify as independent contractors, and the DOL demanded the clubs begin treating entertainers as employees.  (Pls.' SOF/Defs. Resp. ¶¶ 62, 79.)  The DOL instructed the clubs to pay entertainers minimum

responsible for causing violations of the Act . . . .").

9

wages and accurately record hours worked and track tips received.   (Pls.' SOF/Defs.' Resp. ¶¶ 55, 79.)

Various interested parties then presented the DOL with proposals for future business operations.   The DOL approved as compliant two such proposals.   The first came from a potential staffing agency, and it involved the FLSA's tip credit. In approving, the DOL cautioned that the agency must accurately track time, earnings, and deductions, and must make wage payment adjustments when deficient tips caused wages to fall below the minimum.   (Pls.' SOF/Defs.' Resp. ¶¶ 64–69.)   The second proposal came from an accounting firm, and it called for clubs to track on daily entertainer envelopes table-dance "fees" earned, time worked, and deductions made, and to use these "fees" to offset wage-payment obligations, making adjustments when deductions caused earnings to fall below the clubs' minimum-wage obligation.   (Pls.' SOF/Defs.' Resp. ¶¶ 70–78.)   The DOL likewise approved this particular proposal in the specific letter Defendants now rely upon.[5] (Pls.' SOF/Defs.' Resp. ¶ 80.)

---

[5] An entertainer trade group also disseminated communications, indicating that it would continue to treat entertainers as independent contractors, but that it would begin tracking hours and earnings.   It concluded that "[a]s long as the dancer's total income from house set fees at least $2.12-1/2 per hour, and a total income from tips is at least $2.12-1/2per hour, and we have accurate records to establish these amounts, then we are in compliance with the Fair Labor Standards Act." (Ex. 26.)   There is no evidence that the DOL signed off on this position or that Defendants complied with it or relied on it in any way.   (*See* Pls.' SOF ¶¶ 81–86.)

To be clear, Defendants did not adhere to either of these approved proposals. And, Defendants produced no evidence that the DOL directly sanctioned their unique, "do nothing and continue violating the law" brand of compliance. In fact, Swinging Richards did not exist at the time of the investigation, so the DOL could not have commented on its particular operations.

The DOL correspondence does not justify Defendants' continued classification of entertainers as independent contractors; the club's failure to track work hours and tips earned; and its failure to ensure that the tips Defendants specifically regarded as club fees—namely the money obtained for VIP dances— sufficiently satisfied the club's minimum wage-payment obligations, after deductions for fines, fees, and tipouts. (*See* Pls.' SOF ¶¶ 89–103.) Since Defendants did not comply with any of the proposed protocol, they cannot rely on the DOL's blessing of this protocol to establish its own good-faith, objectively reasonable attempt to comply with the law.[6]

Defendants furthermore cannot justify their failed legal compliance for more

---

[6] Defendants' use an illustration of a typical week to prove Plaintiff Alvarez made more in VIP gratuities then he would have received in minimum wages. (Defs.' Summ. J. Resp. 8–9 (relying on testimony that was not submitted to the Court).) This antidote though does not account for deductions the club made to his tips every shift in the form of fines, fees, and tip-outs. Moreover, the example does not prove that Plaintiff Alvarez always made more from VIP gratuities than he would have received in tips. It therefore highlights the fact that Defendants did nothing to ensure continued and complete FLSA compliance.

than twenty years thereafter in the face of mounting case law to the contrary. (*See* Pls.' Summ. J. Br. 15 n.3, ECF No. 124-2 (collecting cases).) Defendants knew of the decision in *Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011), yet they continued to conduct business as usual. (Pls.' SOF/Defs.' Resp. ¶ 50.) Plaintiffs have presented a sufficient showing for the Court to conclude that Defendants' FLSA violations were indeed willful and therefore could not qualify as good faith under either section 260 or 259 of the FLSA.

## IV.   PLAINTIFFS ARE ENTITLED TO FULL MINIMUM WAGES FREE AND CLEAR OF KICKBACKS.

Defendants do not contest the mechanics of Plaintiffs' compensatory damage calculation. The Court should therefore find that Plaintiffs are entitled to recover minimum wages for all hours worked, plus the recovery of all fines, fees, and tipouts paid for every shift during the relevant statutory period according to the hours determination made at the upcoming representative trial.

## V.   DEFENDANT NORTHSIDE'S COUNTERCLAIMS MUST BE DENIED.

Lastly, Defendant Northside[7] opposes Plaintiffs' request for summary judgment on its counterclaims using conflicting arguments. On the one hand, Defendant argues that Plaintiffs' request for judgment is *too late* and that Plaintiffs

---

[7] Defendant Jones does not assert counterclaims against Plaintiffs. (*See* Def. Jones's Ans., ECF No. 71.)

should have instead moved to dismiss the counterclaims early on.  On the other hand, Defendant argues that Plaintiffs' request is *premature* pursuant to the scheduling order and that the counterclaims should instead be submitted to the jury. (Defs.' Summ. J. Resp. 9–11.)  However, in the words of Goldie Locks, a Court ruling now under the present Motion would be "just right."

The viability of Defendant's counterclaims was not ripe for adjudication at the motion to dismiss stage because Plaintiffs' defenses against these claims are premised upon findings that entertainers qualify as employees who are entitled to retain their tips.[8]  (*See* Plts.' Summ. J. Br. 22–25.)  Defendants did not stipulate to employee-status until after Defendant Northside brought its counterclaims.  (Stip., ECF No. 66.)  The Court did not rule that the money at issue qualified as tips, and not fees, until this recent round of summary judgment.  Without these determinations, a ruling on these counterclaims would have simply deferred to Defendants' allegations.

Defendant's cited cases support this contention as they are comprised entirely of denials of entertainers' motions to dismiss counterclaims.  *See Geter v. Galardi S. Enters.*, 43 F. Supp. 3d 1322 (S.D. Fla. 2014) (declining to engage in contract interpretation at the motion to dismiss stage and declining to opine on

---

[8] Moreover, a motion to dismiss for failure to state a claim under Rule 12(b)(6) is not waived if it is not brought at the outset of litigation.  *See* Rule 12(h).

whether the monies at issue qualified as tips not service charges at this early stage); *Doe v. Cin-Lan, Inc.*, 2010 WL 726710, at \*7 (E.D. Mich. Feb. 24, 2010) ("To recover on the counterclaims, Cin–Lan ultimately must establish the dance fees are mandatory service charges, not tips. At the pleading stage, however, Cin–Lan has sufficiently pleaded a claim for unjust enrichment and the Court will deny Doe's motion to dismiss the claim.").[9]  Given these cases, Plaintiffs decision to wait until now to challenge the counterclaims was the prudent and correct decision.

As to Defendant's argument that Plaintiffs' request is premature, there is absolutely no legal reason why the Court should decline to rule on this issue and should instead submit it to the jury.  Defendant admits that there is no factual dispute, meaning there is nothing for a jury to decide.  This is a pure question of law ripe for judgment.  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")  The fact that the counterclaims were not listed in the parties' stipulation as a discovery category for

---

[9] *see also Ruffin v. Entm't of E. Panhandle*, 845 F. Supp. 2d 762 (N.D. W. Va. 2011) (declining to grant a motion to dismiss, finding defendant's sufficiently pled allegations, and allowing counterclaims to proceed only to the extent that they seek an offset not repayments to the club); *accord McFeeley v. Jackson St. Entm't, LLC*, 2012 WL 5928769, at \*4 (D. Md. Nov. 26, 2012).  Alternatively at the summary judgment stage, courts have held that such counterclaims cannot proceed when the court has already ruled that the monies at issue qualify as tips, not fees.  *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 935 (S.D.N.Y. 2013).

the second phase of litigation does not provide sufficient grounds to decline to entertain Plaintiffs' Motion. Notably, Defendant cites no authority for this ill-fated proposition.

Tellingly, Defendant only complains about the timing of Plaintiffs' request for judgment on these counterclaims and does nothing to defend the claims themselves. It does not explain why the Court should ignore Supreme Court precedent making clear that employees cannot contractually waive their statutory rights. (Pls.' Summ. J. Br. 22–23.) It does not explain why entertainers should have to remit their tips to the club when the club has no legal claim to this money.[10] (*Id.* at 24–25.) It fails to give the Court any legal reason to uphold these claims at all. For this, the Motion should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

---

[10] The closest Defendant gets to substance is a footnote request for a do-over of the offset affirmative defense determination the Court made during the first phase of litigation. Defendants have since amended their tax returns to account for both cash and credit VIP gratuities only. (Defs.' Summ. J. Resp. 10 n.9; Pls.' SOF ¶¶ 149–50; Defs.' SOF Resp. ¶¶ 149–50.) This, however, is not dispositive. For all the reasons provided in Plaintiffs' phase one motion for partial summary judgment, the Court should decline Defendants' invitation to undo its prior ruling. (Pls.' Summ. J. Br., Phase I, ECF No. 85-1.)

Respectfully submitted,

Dated: January 19, 2016     **NICHOLS KASTER, PLLP**


/s/ Rebekah L. Bailey
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Anna Prakash, MN Bar No. 0351362*
Rebekah L. Bailey, MN Bar No.0389599*
Ashley Thronson, MN Bar No. 0395947*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
bailey@nka.com
athronson@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**
John Mays, GA Bar No. 986574
Meredith Carter, GA Bar No. 325422
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
john@maysandkerr.com
meredith@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE
COLLECTIVE**

16

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated: January 19, 2016          **NICHOLS KASTER, PLLP**

/s/ Rebekah L. Bailey
Rebekah L. Bailey