# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

---

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

       Plaintiffs,               Case No.: **1:13-CV-3767-TWT**

v.

1400 NORTHSIDE DRIVE, INC., d/b/a    Conference IS requested
SWINGING RICHARDS, and C.B.
JONES,

       Defendants.

---

## <u>PRETRIAL ORDER</u>

1.

There are no motions or other maters pending for consideration by the court except as noted:

There are no presently pending motions.  The parties, however, are continuing their efforts to potentially stipulate to damages or a component thereof.

While preparing this pretrial order, the parties discovered a fundamental a disagreement as to how to proceed with representative evidence and whether it is appropriate or necessary to offer deposition testimony (rather than live testimony)

for all Plaintiffs who do not testify on the limited issue of hours worked and gratuities earned.  Thus, the parties request leave to submit to the Court briefing on this issue at the time they submit motions in limine.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

The parties are presently attempting to stipulate to some portion of the damages calculation.  As part of this process, Defendants may still be searching for and potentially producing new accounting data and/or sign-in sheets.  The parties are presently cooperating.

Plaintiffs are also still presently attempting to authenticate the correspondence and related documents Defendants produced to Plaintiffs on the eve of summary judgment related to DOL investigation in the 1990s.  The parties do not anticipate that any Court intervention will be necessary on this issue.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

The Plaintiffs named in the above caption all properly remain in this action. Plaintiffs and the additional opt-in Plaintiffs presently included in the collective action include:

| # | Last Name | First Name |
|---|-----------|------------|
| 1 | Alvarez | Michael |
| 2 | Angerer | Jeremy |
| 3 | Borrego | Troy |
| 4 | Brower | Shawn |
| 5 | Burroughs | Beau |
| 6 | Carnell | Chad |
| 7 | Chandonnet | Austin |
| 8 | Cook | Demarcus |
| 9 | Crowley | Michael |
| 10 | Dalke | Matthew |
| 11 | Duggan | Matthew |
| 12 | Egan | James |
| 13 | Eswine | Gregory |
| 14 | Ferraro | John |
| 15 | Frank | Matthew |
| 16 | Garcia | Michael |
| 17 | Geroldi | Armando |
| 18 | Hall | Christopher |

| 19 | Henderson | Clinton |
| 20 | James | Valentino |
| 21 | Jugar | Eric |
| 22 | Keenan | Bryan |
| 23 | Klimetz | Randall |
| 24 | Leggett | Joseph |
| 25 | Luangraj | Yago |
| 26 | Mcgahee | Christopher |
| 27 | Olinde | Andrew |
| 28 | Ortiz | Nicholas |
| 29 | Outlaw | Austin |
| 30 | Peiser | Jeffery |
| 31 | Phillips | Craig* |
| 32 | Potts | Joshua |
| 33 | Purvis | Brannon |
| 34 | Richwine | Nicholas |
| 35 | Saegert | Ryan |
| 36 | Setser | Thomas |
| 37 | Taskin | Deuntray |
| 38 | Taylor | Nathan |

The parties agree that Craig Phillips*, listed above, worked for Defendants outside of the statute of limitations period, and thus should be removed from the

Case.  Five additional persons originally joined this case but have since withdrawn: Hakeem Aamir, Robert Casey, Adam Cummings, Ernesto Martinez, and Andrean McCoy.  (ECF Nos. 52, 59, 102, 104.)  This leaves 37 proper Plaintiffs in total.

The Defendants named in the above caption all properly remain in this action.  The employer status of each Defendant has been ruled upon by the Court.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

There is no dispute.  Plaintiffs' claims for minimum wages (Count One) arise under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*  The Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiffs**: Rebekah L. Bailey, Nichols Kaster PLLP, 4600 IDS Center, 80 South Eighth Street, Minneapolis, MN  55402, (612) 256-3200, bailey@nka.com

**Defendants**: Herbert Schlanger, 230 Peachtree Street, N.W., Suite 1890, Atlanta, GA, (404) 808-6659, hschlanger@bellsouth.net

**Other Parties**: (specify) n/a

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

Defendants contend that they should open and close the argument since they bear the burden of proof on the majority of the issues.

Plaintiffs respond that Plaintiffs bear the burden on the two issues before the jury: damages and willfulness and therefore are entitled to open and close.

7.

The captioned case shall be tried (__X__) to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

Both legal and factual disputes remain to be resolved at trial.

**The parties agree**:  The following issues should be submitted to the jury:

a.      Representative Plaintiffs' dates of employment (damages question),

b.      Representative Plaintiffs' hours worked (damages question),

c.      Representative Plaintiffs' fines, fees, and tipouts paid (damages question), and

d.      The question of whether Defendants' violations were willful, and therefore entitled to an extended three year statute of limitations period, pursuant to 29 U.S.C. § 255.

The parties are presently attempting to stipulate to some or all of the above damages questions.

PRETRIAL ORDER                    6

**Plaintiffs additionally state**:  Part 17 below identifies the legal issues that remain for the Court to resolve following the jury's verdict.

**Defendants additionally state**:  The following additional question remains to be resolved at trial:  monies paid for service charges are relevant to the good-faith argument and whether the setoff defense applies post 2013.

**Plaintiffs respond**:  the Court has already determined that customer payments qualify as gratuities, not service charges, and therefore no additional legal questions remain to be resolved at trial on this issue.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

The parties do not wish to bifurcate trial.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B" are the general questions which plaintiff and defendant wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters.  The determination of

whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

The parties agree to submit a single set of voir dire questions.  The parties further request the right to ask follow-up questions of the potential jurors following voir dire.

State any objections to defendant's voir dire questions:

See above

State any objections to the voir dire questions of the other parties, if any:

n/a

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

No adjustments to the usual process are requested.

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

None.

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the noncooperating counsel.

17.

The legal issues to be tried are as follows: _____

**Plaintiffs state:** Following the jury's determination on the damages components of hours and monies paid, and on the question of willfulness, the Court will subsequently make the following findings:

a.     Calculate damages for the collective using the damages components found by the jury for the representative Plaintiffs,

b.     Resolve the issues of liquidated damages (Defendants' good-faith affirmative defense against presumed double damages, 29 U.S.C. § 260),

c.     Determine whether Defendants met their burden to prove they relied in good faith on a "regulation, order, order, ruling, approval, or interpretation," thereby evading liability. (Defendant's good-faith defense, 29 U.S.C. § 259),

d.     Award reasonable attorneys' fees, following Plaintiffs' post-petition submission of fees pursuant to 29 U.S.C. § 216(b),

e.     Award litigation expenses, following Plaintiffs' post-petition submission of costs pursuant to 29 U.S.C. § 216(b), and

f.      Award interest if applicable.

**Defendants state**:  The only calculation of damages by the Court should be liquidated damages if the jury finds a willful violation.  The other tasks requested by Plaintiffs in paragraph 17 should be accomplished by the jury under proper instruction.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness. All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping

purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

Many of the proposed exhibits are jointly requested, thus the parties submit three separate lists:  G-1 provides the list of joint exhibits, G-2 provides Plaintiffs' exhibits and G-3 provides Defendants' exhibits.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

PRETRIAL ORDER                    12

**Plaintiffs state**: Plaintiffs understand that James Matthew Colunga no longer works for Defendants and no longer lives in the state of Georgia.  Thus, in the event that James Matthew Colunga is unavailable to testify at trial, Plaintiffs submit the following:  Pages/Lines: 4:11–16, 6:20–7:10, 8:16–:19, 13:16–14:24, 15:11–16:4, 22:7–33:17, 35:9–36:9; 37:16–39:23, 42:7–44:10, 59:18–60:16, 61:1–64:25, 66:9–80:23, 86:2–89:9, 92:1–93:1, 100:18–101:4, 108:2–112:9.  Plaintiffs now understand that Karen Caudle also no longer works for Defendant, but that she is still within the subpoena authority of the Court.  If Ms. Caudle otherwise becomes unavailable to testify, Plaintiffs will submit proposed testimony to offer at trial.

**Defendants state**:  The Defendants may introduce part or all of the depositions of the plaintiffs who do not testify at trial and of Matt Colunga and Karen Caudle.

**Plaintiffs respond**:  Defendants should not be permitted to offer Plaintiffs' deposition testimony at trial, but rather should call them to appear live.

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiffs state**: Plaintiffs' propose special verdict form attached as Attachment I.

**Defendants' state**:  Defendants desire a general verdict on two questions: liability for damages and willfulness.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

No alterations requested.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on August 5, 2015, to discuss in good faith the possibility of settlement of this case.  The parties will soon meet again upon conclusion of their efforts to stipulate to damages.  The court (_____) has or (_____) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.
(__X__) Some possibility of settlement.
(_____) Little possibility of settlement.
(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

The parties request a special setting.  Many Plaintiffs, Plaintiffs' counsel, and even witnesses reside outside the State of Georgia and would benefit from trial at a date certain.

28.

The plaintiff estimates that it will require ___3___ days to present its evidence. The defendant estimates that it will require ___3___ days to present its evidence. The other parties estimate that it will require _____ days to present their evidence. It is estimated that the total trial time is ___6___ days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (___X___) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 20_____.

_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

**NICHOLS KASTER, PLLP**

*/s/ Rebekah L. Bailey*
Paul J. Lukas*
Timothy C. Selander*
Anna Prakash*
Rebekah L. Bailey*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
selander@nka.com
aprakash@nka.com
bailey@nka.com
*admitted pro hac vice

MAYS & KERR, LLC
John L. Mays, GA Bar No. 986574
Meredith J. Carter, GA Bar No. 325422
Suite 202, North Tower
235 Peachtree Street N.E.
Atlanta, GA 30303
john@maysandkerr.com
meredith@mcarterlaw.com

*Attorneys for Plaintiffs and
the Collective Action*

**LAW OFFICE OF HERBERT P. SCHLANGER, P.C.**

*/s/ Herbert P. Schlanger*
Herbert P. Schlanger
Ga. Bar Number 629330
230 Peachtree Street, N.W., Suite 1890
Atlanta, GA  30303
404-808-6659
hschlanger@bellsouth.net
herb@schlanger.com

*Attorney for Defendants*

# ATTACHMENT A

# Questions to the Jury

# ATTACHMENT A

The parties request that the Court propound to the jurors the following questions to determine their legal qualifications to serve, pursuant to 28 U.S.C. § 1865:

1.  Do you have trouble reading, writing, speaking, or understanding the English language?

2.  What is your full name?

3.  Are you over the age of 18?

4.  Are you a citizen of the United States?

5.  Jurors for the Northern District of Georgia must reside in one of the following counties: Fulton, Cobb, Clayton, Cherokee, DeKalb, Douglas, Gwinnett, Henry, Newton, Rockdale.  Are you a resident of one of these counties?

6.  Have you resided in one of these counties for a period of at least one year?

7.  What is your educational background?

8.  Have you ever served on a jury? If so, when and where? Was it a civil or criminal trial?

9.  Do you have a close friend or loved one who identifies as gay, lesbian, bisexual, or transgendered?

10. Have you read or heard anything about this case?

11.    Have you ever been to a strip club or other type of adult entertainment establishment?

12.    Have you ever been to Swinging Richards?

13.    Are you (or were you) or any members of your immediate family an employee of 1400 Northside Drive d/b/a Swinging Richards?

14.    Are you or any members of your immediate family related by blood or marriage to any of the parties [read names of all parties]?

15.    Do you or any members of your immediate family know any of the parties [read names of all parties]?

16.    Do you or any members of your immediate family know any of the attorneys representing the parties in this case [read names of all parties]?

17.    Do you know any of the witnesses who may testify in this case [read names of will and may call witnesses]?

18.    Is there any other reason that you could not serve on this jury or be present for the duration of this trial?

19.    Do you have trouble seeing or hearing well? Do you have any other physical or mental health condition that would prevent you from serving as a juror in this case?

20.    This trial could take up to six (6) business days. Does that present a special problem for you?

# ATTACHMENT B

# The Parties' Proposed Questions

# Voir Dire Examination

## ATTACHMENT B

### The Parties' Proposed General Questions to the Jury

*The parties request that, if the Court excludes any of the questions requested proposed in Attachment A from the jury questionnaire, then those questions be included herein as part of the parties' voir dire questions.  Additionally, the Parties wish to ask the jury the following:*

1.    What is your occupation and where do you work?

2.    Are you married, and if so, what is your spouse's occupation?

3.    Do you have any teenage or adult-aged children?

4.    What did your parents do for a living?

5.    Would you describe the town where you grew up as being more rural or urban?

6.    What is the highest level of education you completed?

7.    Are you a member of any social, civic, fraternal or political organizations?

8.    Do you regularly read the newspaper?  If so, which one?

9.    Do you regularly watch the news on television?  If so, which channels do you watch?

10.    Have you ever owned your own business?

11.    Have you ever worked as an independent contractor?

12.    Have you ever been a union member?

13.   Are you aware of recent efforts across the nation to increase the minimum wage to upwards of $15.00 an hour?  Do you think the minimum wage should be $15.00 an hour?

14.   Have you or anyone in your immediate family ever experienced any kind of unfairness at work?

15.   Have you or anyone in your immediate family ever experienced any kind of complaint or grievance against your/their employer?

16.   Have you ever been sued?  For what?

17.   Have you ever brought a lawsuit?  For what?

18.   Have you ever participated in a class action lawsuit?   What was it about?  Did you receive money?

19.   Do you have an opinion about class action lawyers?

20.   Do you have any legal training or education?

21.   Have you ever worked in a personnel or human resources department?

22.   Do you feel that workplaces are too closely regulated?

23.   Do you think companies sometimes break the rules when they think they will not get caught?

24.   Have you or anyone close to you ever worked at a job where you received tips or gratuities? What was that job and when and where did you work?

25.     Do you believe dancers or strippers should have the same employment rights as other types of workers?

26.     Do you personally know anyone who has worked as a stripper/dancer or as an adult entertainer?

27.     Do you have a friend or family member who is gay, lesbian, bisexual, or transgendered?  Do you socialize with that person(s)?

28.     Do discussions about adult entertainment make you uncomfortable?

29.     Are you comfortable admitting whether or not you have been to a strip club before?

30.     The parties in this case work at or operate a strip club, catering to a gay male clientele.  The testimony in this trial may discuss interactions between dancers and club clients.  Will this upset you?

31.     Is there anything that you want to discuss privately?

32.     Is there anything that you have heard so far about this case that would prevent you from serving as an unbiased juror?

# ATTACHMENT C

# Plaintiffs' Case Outline

## ATTACHMENT C

### Plaintiffs' Outline of the Case

I) **PLAINTIFFS' CLAIMS**

Plaintiffs Clinton Henderson and Andrew Olinde filed this collective action on behalf of themselves and other similarly-situated entertainers ("Plaintiffs") who work(ed) at a male strip club called Swinging Richards.  Plaintiffs' complaint contains one count for unpaid minimum wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*   (Compl., ECF Nos. 1, 64.) Plaintiffs allege that Defendants misclassified them as independent contractors, rather than employees, and as a result failed to pay them any wages and instead required Plaintiffs to pay Defendants in the form of fines, fees, and "tip-outs" to Defendants' workers.

Under the FLSA, all non-exempt employees of covered employers are entitled to wages of at least the federal minimum hourly rate of $7.25 for all hours worked free and clear of kickbacks.  As explained below, the elements of this case have already been established for the collective against both Defendants.  The answers to the remaining inquiries at trial will determine the amount of money owed, which includes a finding of compensatory damages, willfulness, and liquidated damages.  The following breaks down the issues already decided and those that remain.

A)   **Resolved Issues**

1)   *Collective Action Status*

The parties stipulated to conditionally certify the collective, (ECF Nos. 27, 33), and the Court approved the stipulation and proposed notice, (ECF No. 43).  As a result, this case properly consists of 37 persons.  Defendants never moved to decertify.  The parties stipulated that collective treatment is appropriate at trial by agreeing to put on their cases using representative testimony.  Each side will call no more than five (5) Plaintiffs to testify.  (*See* Jt. Mot. ¶ 5; ECF No. 133.)

2)   *Plaintiffs' Employee Status*

The FLSA only provides *employees* with minimum wage protections.  The term "employees" is not directly defined under the statue, but this Circuit examines the "economic reality" of the working relationship to determine employee status.

Throughout the relevant time period, Defendants considered Plaintiffs to be independent contractors, not employees, and thus originally argued Plaintiffs were not entitled to minimum wages in this case for this reason.  During litigation, Defendants represented that they would not dispute Plaintiffs' FLSA employee-status despite its prior reliance on the "independent contractor" classification.  (Stip. ¶¶ 1, 3, ECF No. 66 ("For purposes of this case only, . . . Defendant 1400 will not dispute that the Plaintiffs are entitled to all of the benefits of the FLSA, including earning at least the federal minimum wage for each hour worked. . . . Defendant shall not rely on the 'independent contractor' defense during any

portion of this litigation, including trial and appeal.").)   Thus, for the purpose of this case, Plaintiffs undisputedly qualify as employees.

### 3)   Entertainers' Exemption Status

The FLSA exempts certain types of employees from its minimum wage protections.   Defendants asserted an affirmative defense, claiming Plaintiffs qualified as exempt creative professionals.   (Northside 2d Am. Ans. 3, ECF No. 70; Jones Ans. 2, ECF No. 71.)   On June 19, 2015, the Court ruled entertainers did not qualify for the creative-professional exemption.   (1st Summ. J. Order 4, ECF No. 105).   Plaintiffs are not therefore exempt from the minimum wage requirements.

### 4)   Defendant Northside's FLSA Coverage

The FLSA only covers employers who are "engaged in commerce" or who employ employees "engaged in commerce."   On June 19, 2015 and June 3, 2016, the Court ruled that Defendant 1400 Northside is covered by the FLSA.   (Dismiss Order 5–6, ECF No. 72; 2d Summ. J. Order 4–6, ECF No. 132.)

### 5)   Defendant C.B. Jones's Employer Status

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."   On June 3, 2016, the Court found that Defendant C.B. Jones qualifies as a joint employer as a matter of law.   (2d Summ. J. Order 7–9, ECF No. 105.)

Thus, neither the employee nor employer status of the parties are issues for trial.

### 6)   *Damages Components*

The federal minimum wages is $7.25 per hour free and clear of kickbacks. Plaintiffs alleged Defendants paid Plaintiffs no money and instead made them pay to work.  Plaintiffs moved for summary judgment on the components of damages, arguing Plaintiffs are entitled to $7.25 an hour for every hour worked, plus recoupment of fees, fines, and tipouts.   Defendant did not contest this, and therefore, the Court granted Plaintiffs' motion for summary judgment as to the components of damages.  (2d Summ. J. Order 12–13, ECF No. 132.)  All that is left is a finding on the amount of each component.

### 7)   *Defendants' Offset Defense*

Defendants argued that the monies Plaintiffs received from customers should offset Defendants' wage-payment obligations.   Plaintiffs argued this money qualifies under the regulations as gratuities paid from customers and belonging to the employees, and therefore it cannot be considered payments from Defendants. The Court granted Plaintiffs' motion for summary judgment on this setoff affirmative defense.  (1st Summ. J. Order 8–11, ECF No. 105.)  Thus, the gratuities Plaintiffs received from customers have no relevance to Plaintiffs' minimum wage claims at trial.

        *8)    Counterclaims*

Defendant Northside brought counterclaims of unjust enrichment and breach of contract against Plaintiffs.  The Court granted Plaintiffs' motion for summary judgment on both of these counts.  (2d Summ. J. Order 13, ECF No. 132.)  Thus, this trial will be limited to determining the amount of minimum wages owed.

    B)   **Triable Issues**

        *1)    Willfulness*

The FLSA extends the statute of limitations from two years to three years if the employer acted "willfully," meaning he either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was.  The Court recently found that a fact question existed as to Defendants' willfulness, and therefore this issue will be tried before the jury.  (2d Summ. J. Order 9–11, ECF No. 132.)

        *2)    Liquidated Damages*

The FLSA provides an award of liquidated damages in an equal amount to compensatory damages.  Liquidated damages are mandatory unless an employer can prove it acted in good faith and with reasonable grounds for believing it was not violating the law.  A finding of willfulness precludes a finding of good-faith.  The Court therefore denied Plaintiffs' request for summary judgment as to Defendants' good-faith defense because it also denied the motion as to willfulness.  (2d Summ. J. Order   11–12, ECF No. 132.)

### 3)     *Good Faith Defense*

In a separate statutory section, there exists another good-faith defense that, when met, absolves employers from liability for their violations.  This defense is permitted when an employer relies in good faith on a written "regulation, order, order, ruling, approval, or interpretation" of the administrator of the Wage and Hour Division of the DOL.  In moving for summary judgment, Plaintiffs argued in part that the DOL correspondence Defendants rely upon do not as a matter of law qualify as a written administrator's interpretation sufficient to evade liability under the FLSA.  (Pls.' 2d Summ. J. Br. 18, ECF No. 124-1.)  The Court's order did not address this affirmative defense specifically, only good faith generally, and therefore remains an open question for the Court to consider.

### C)     **Damages**

As stated above, the components of damages are not contested, *supra* Part I.A.6, and Plaintiffs intend to present this evidence through representative testimony of good-faith estimates of hours worked and monies paid, *supra* Part I.A.1.[1]  As further explained in the accompanying trial brief, Plaintiffs request the Court allow the jury to make findings of fact as to the components of damages relating to the representative Plaintiffs and for the Court to apply those findings post-trial to calculate damages for the collective.

------------------------

[1] The parties are still hoping to stipulate to a portion of damages before trial.

## II)   AUTHORITY

| Element/Issue | Relevant authority |
|---|---|
| Triable Issues | |
| Willfulness | 29 U.S.C. § 255(a); 29 C.F.R. §§ 551.104, 578.3(c); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Davila v. Menendez*, 717 F.3d 1179 (11th Cir. 2013); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008); *Gardner v. Country Club, Inc.*, 2015 WL 7783556 (D.S.C. Dec. 3, 2015). |
| Liquidated Damages (Defendants' good-faith defense) | 29 U.S.C. § 216(b); 29 U.S.C. § 260; *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 2013); *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012); *Alvarez Perez*, 515 F.3d at 1163; *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008); *Olson v. Super. Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985); *Gardner*, 2015 WL 7783556 (D.S.C. Dec. 3, 2015); *Swan v. Nick Grp., Inc.*, 2013 WL 5200508 (N.D. Ga. Sept. 13, 2013). |
| Defendants' good-faith defense to liability | 29 U.S.C. § 259; *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216 (M.D. Fla. 2005); *Lacurtis v. Express Med. Transporters, Inc.*, 2016 WL 3055636, at *7 (E.D. Mo. May 31, 2016); *Affo v. Granite Bay Care, Inc.*, 2014 WL 273223, at *2 (D. Me. Jan. 22, 2014) ; *McLaughlin v. Quan*, 1988 WL 62595 at *3 (D.Colo. June 17, 1988); *Murphy v. Miller Brewing Co.*, 307 F. Supp. 829, 838 (E.D. Wis. 1969); *Spring v. Washington Glass Co.,* 153 F. Supp. 312, 318 (W.D .Pa. 1957). |
| Resolved Issues | |
| Plaintiffs' collective status/ representative | 29 U.S.C. §216(b); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *see also*, *Monroe v. FTS USA, LLC*, 815 F.3d 1000 (6th Cir. 2016); *Reich v. S.* |

| | |
|---|---|
| evidence (resolved) | *New Eng. Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3d Cir. 1991); *Donovan v. Bel-Loc Finer*, 780 F.2d 1113 (4th Cir. 1985); *Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813 (W.D. Tex. 2015). |
| Plaintiffs' employee status | 29 U.S.C. §§ 203; 206(a); U.S. Dep't Labor, Adm'r Interpretation, No. 2015-1 ("A.I. 2015-1"); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013); *Berry v. Great Am. Dream, Inc.*, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014); *Stevenson v. Great Am. Dream, Inc.*, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997); *see also McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235 (4th Cir. 2016); *Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993); *Foster v. Gold & Silver Private Club, Inc.*, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015); *Degidio v. Crazy Horse Saloon & Rest., Inc*, 2015 WL 5834280 (D.S.C. Sept. 30, 2015); *Mason v. Fantasy, LLC*, 2015 WL 4512327 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Collins v. Barney's Barn, Inc.*, 2013 WL 11457080 (E.D. Ark., Nov. 14, 2013; *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D.D.C. 2011); *Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995); *Martin*, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); *Martin v. Circle C Invest., Inc.*, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991); *Donovan v. Tavern Talent & Placements, Inc.*, 1986 WL 32746 (D. Colo. Jan 8, 1986). |

| | |
|---|---|
| Plaintiffs' exemption status (Defendants' affirmative defense) | 29 U.S.C. § 2 13(a); 29 C.F.R. §§ 541.300(a), .302; *Harrell*, 992 F. Supp. 1343. |
| Defendant Northside's FLSA coverage | 29 U.S.C. §§ 203(b), (i), (s)(1)(A), 206(a). |
| Defendant Jones's employer status | 29 U.S.C. §§ 203(d), 206(a); 29 C.F.R. § 791.2(a); *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233 (11th Cir. 2013); *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996); *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986); *Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1364 (N.D. Ga. 2009); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295 (N.D. Ga. 2008); *Stout v. Smolar*, 2007 WL 2765519 (N.D. Ga. Sept. 18, 2007); *Donohue v. Francis Servs.*, 2005 WL 1155860 (E.D. La. May 11, 2005). |
| Damage components | 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; DOL, *Fact Sheet #15 Tipped Employees* (July 2013); *De Leon-Granados*, 581 F. Supp. 2d at 1315; *see also Hart v. Rick's Cabaret Intern'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014); *Donovan*, 1986 WL 32746 (D. Col. Jan. 8, 1986); *Reich v. Circle C. Invest., Inc.*, 998 F.2d at 330; *Reich v. Priba Corp.*, 890 F. Supp. at 595. |
| Defendants' setoff affirmative defense | 29 C.F.R. §§ 531.52, .55; *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds by McLaughlin*, 486 U.S. 128; *see also Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 742 (5th Cir. 2010); *Hart*, 967 F. Supp. 2d 901; *Thornton*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Reich v. Priba Corp.*, 890 F. Supp. 586; *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379 (N.D. Ill. May 12, 1997). |
| Defendants' counterclaims | *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985); *Barrentine v. Ark.-Best Freight* |

|  | | *Sys., Inc.*, 450 U.S. 728 (1981); *Tenn. Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944); *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 808 (6th Cir. 2015); *Hart*, 967 F. Supp. 2d at 934–35. |

III) **NEGLIGENCE**

Not applicable.

IV) **DAMAGES**

In compliance with the local rules, Plaintiffs submit the following damages estimate for the collective created based upon the present record of Plaintiffs' good-faith estimates:

| Component | 3 Yr Amt | Authority |
|---|---|---|
| Hourly Wages free of Kickbacks | $1,795,971.95 | (2d Summ. J. Order 12–13, ECF No. 132); *see also* 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; DOL, *Fact Sheet #15 Tipped Employees* (July 2013) *Hart*, 60 F. Supp. 3d 447; *De Leon-Granados*, 581 F. Supp. 2d at 1315; *Donovan*, 1986 WL 32746; *Reich v. Circle C. Invest., Inc.*, 998 F.2d at 330; *Reich v. Priba Corp.*, 890 F. Supp. at 595. |
| Liquidated Dmgs | $1,795,971.95 | 29 U.S.C. § 216(b) |
| Attorneys' Fees | $629,696.75 to date | 29 U.S.C. § 216(b) |
| Litigation Costs | $40,395.36 to date | 29 U.S.C. § 216(b) |
| Pre-lit interest (if no liquidated) | unknown | *See Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) |

| Post-Judgment interest | unknown | 28 U.S.C. § 1961 |
|---|---|---|

The above damages breakdown represents a reasonable estimate and is subject to adjustment based upon the evidence and testimony offered by the representative Plaintiffs at trial. Plaintiffs will petition for fees and costs post-trial after trial with full and complete records of fees and costs incurred up to and including trial and post-trial.

# ATTACHMENT D

# Defendants' Case Outline

## <u>ATTACHMENT D</u>

### Defendants' Outline of the Case

Defendants do not believe that Plaintiffs will carry their burden to demonstrate the number of hours, days, or weeks worked by each of them. Further, the Plaintiffs will not be able to demonstrate that the Defendants acted in other than good faith in establishing the method of compensation of dancers.

# ATTACHMENT E

# Factual Stipulations

## ATTACHMENT E

## Factual Stipulations

The parties stipulate and agree to the following facts and/or the Court has already found the following facts to be undisputed:

### *The Club Operations*

1.     Defendant C.B. Jones ("Jones") owns Defendant 1400 Northside Drive ("Northside").

2.     Jones started Northside (or its predecessor) in 1983.

3.     Northside was originally a club named Cabaret Platinum and then Diamond Club, which provided female entertainers to male patrons.

4.     Since 1997, 1400 Northside Drive does business as Swinging Richards (also referred to as "the club").

5.     Swinging Richards is currently located at 1400 Northside Drive in Atlanta, Georgia.

6.     Swinging Richards is a strip club, also referred to as an adult entertainment establishment, catering to gay male clientele.

7.     Swinging Richards invests more money into the business of entertainment than the individual entertainers.

8.     Defendants control the entire club, including providing the stage, furniture, lighting, sanitation, music, and other amenities. These items of furniture

and décor together form the aesthetic Defendants desire to maintain, promote, and sell at the club, many likely being manufactured outside of Georgia and/or passing through interstate commerce at some point prior to arrival at Defendants' club.

9.      The club consists of a main stage, on which entertainers dance, customer seating around the stage referred to as the "main floor," a bar, and a separate "VIP lounge" area adjacent to the main floor, containing a "VIP stage," couch, and seven (7) additional private "VIP rooms."

10.      The following types of workers work at the club: exotic dancers (also referred to as "adult entertainers" or "entertainers"), bartenders, waiters, "shooter boys," a front door person, a VIP room door person, an additional security employee, and a bathroom valet.

11.      During relevant time frames, the manager on duty also often performs D.J. duties.

12.      The number of entertainers varies based on the night of the week between approximately 15 to 45.

13.      Customers pay a door charge or cover charge to enter the Club.

14.      The nightly cover charge ranges from $5.00 to $10.00 per customer.

15.      There is a separate entrance fee for the "VIP Lounge."

16.      Swinging Richards sets the minimum rates charged for certain services, such as VIP and private room usage.

17.     Swinging Richards retains these cover charges and VIP entrance fees.

18.     Swinging Richards reserves the right to refuse entrance to anyone at any time, and that anyone unable or unwilling to comply with the rules of the club can be escorted out of the club.

19.     Swinging Richards sells alcohol.

20.     Swinging Richards's annual volume of sales made or business done is not less than $500,000.

### Employer C.B. Jones

21.     Jones is the sole shareholder of 1400 Northside.

22.     Jones has been the chief executive officer and chief financial officer of Northside for at least the past eight years.  Initially, he was the sole board member when the business incorporated in 1996.

23.     Jones owns the building and land where Swinging Richards operates, including all of the fixtures and equipment inside.

24.     Jones sometimes collects rent from Swinging Richards at his discretion when funds are available.

25.     Jones is considered the "boss" to club managers, DJs, bartenders, waiters, VIP doormen, and entertainers.

26.     The club general manager reports to Jones.

27.     The club bookkeeper, formerly Karen Caudle, reported to Jones.

28.     Jones made decisions with regards to club advertisements and the club website.

29.     While management typically undertook the hiring responsibilities, Jones has on occasion has hired an entertainer.

30.     Jones tried to prohibit entertainers from working at other clubs.

### *Entertainers -- Employees*

31.     Plaintiffs performed as adult entertainers / exotic dancers during the statutory period.

32.     Swinging Richards has considered its entertainers to be independent contractors for at least the past ten years.

33.     During relevant times, Swinging Richards has required entertainers to sign an "Independent Contractor Agreement."

34.     The parties have agreed, for the purpose of this litigation, that Plaintiffs are entitled to the employee minimum-wage benefits of the FLSA, and the Court has ruled that Plaintiffs are non-exempt.

35.     Jones     personally     reconsidered     the     independent-contractor classification "back and forth" during the last ten years.

### *Entertainers - Hiring*

36.     Swinging Richards did not use the AAlanta Club workers broker service to hire or obtain entertainers.

PRETRIAL ORDER                     43                     Attachment E

37.    The job of an entertainer does not require any special training or education or a particular level of intelligence.

38.    Prior dance knowledge or experience is not required to perform at Swinging Richards.  In fact, most entertainers do not know how to dance.

39.    In fact, it is more important for an entertainer to be very attractive than for the entertainer to know how to dance.

40.    Swinging Richards hires entertainers primarily on looks, applying specific physical appearance requirements.

41.    Swinging Richards requests entertainers to remove their clothes and have their bodies inspected before they are permitted to dance at the club.

### *Entertainer - Duties*

42.    During relevant times, Swinging Richards requires entertainers to sign in at the beginning of their shifts and sign out before they leave.

43.    Plaintiffs entertain customers.  They do this by: (1) performing table dances on the main floor of the Club or in the VIP Lounge; (2) dancing, posing or conversing with a customer in a VIP room; and (3) performing "in rotation" on the stages on the main floor of the Club.

44.    Entertainers are rotated onto the stage in a "stage rotation" throughout the night.  During any particular rotation, there are up to six entertainers on the stage for a three-song set.  When a set is over, another one begins.

45.     Entertainers start on the main stage for a three song set.  During this set, they are required to take their shirt off during the first song, their pants off during the second, and go completely nude by taking off their underwear during the last song if a defined amount of money is put on stage.

46.     After their set on the main stage, the entertainers come off the stage and are required to put their underwear back on and are free to work the floor in search of table dances.

47.     Table dances, regardless of whether on the main floor, in the VIP lounge, or in a VIP room, involve the entertainer getting naked and dancing outside of the knees of the customer without physical contact.

48.     Table dances on the main floor or in the VIP lounge last the length of one song, typically between three and five minutes.

49.     Swinging Richards requires entertainers subject to breathalyzers at the end of their shifts.

50.     Swinging Richards forbids entertainers from socializing at the club outside of work hours.

51.     Swinging Richards may suspend entertainers if they get too fat.

52.     Swinging Richards has the right to terminate its relationship with entertainers.

*Entertainers - payments*

53.     Entertainers are not subject to the FLSA tip credit provisions, and are therefore entitled to receive $7.25 per hour in minimum wages.

54.     Entertainers' sole source of income for their work at Swinging Richards is provided by Swinging Richards's customers.

55.     Entertainers receive tips from customers in three main ways: 1) tips given to them while "dancing" on stage; 2) a minimum of a $10 tip for a table dance (a minimum $20 tip for a table dance in the VIP lounge); and 3) a minimum of $100 tip per fifteen minutes in a VIP room.

56.     Once customers pay the cover charge to enter the Club, they have the discretion to simply sit and watch entertainers or to receive a "dance."

57.     If they desire a dance, they may choose an entertainer and select the dance venue, i.e. a table dance on the main floor, a table dance in the VIP lounge, and/or a private dance in a VIP room.

58.     Swinging Richards does not assign entertainers to customers.

59.     Customers may also provide entertainers money for any other reason or for no particular reason at all.  They may tip entertainers for simply speaking with them or in recognition of their attractiveness without ever receiving a table dance.

60.     There are shifts when entertainers do not make $7.25 for each hour they worked that day at Swinging Richards.

61.     Swinging Richards requires entertainers to pay a "house fee" to the club every night.

62.     The house fee during the applicable time period ranged from $20.00 to $25.00.

63.     Swinging Richards recorded these fees in its gross receipts.

64.     Swinging Richards also requires entertainers to pay additional sums to the club for showing up late for shifts.  The late charge equals $10.00 when entertainers arrived one hour past opening and $20.00 when entertainers arrived two hours past opening.

65.     At relevant times, Swinging Richards required entertainers pay one dollar on every Friday and Saturday shift for intoxilyzer (breathalyzer) tubes.

66.     The club records fines received in its gross receipts.

67.     Swinging Richards requires entertainers pay (or "tip-out") some of its employees, contractors, and other personnel each shift.

68.     Swinging Richards requires entertainers pay the manager/DJ "10% of all money earned," but no less than $10, at the end of every shift.

69.     Swinging Richards does not itself compensate its DJ/managers. Instead, it shifts this burden and responsibility entirely onto entertainers.

70.    Swinging Richards requires entertainers tip out the front door hosts a minimum of $5.00 per shift.

71.    Swinging Richards does not pay any payroll taxes on amounts collected by managers/DJs, door persons, or security.

# ATTACHMENT F-1

# Plaintiffs' Witness List

## ATTACHMENT F-1

### Plaintiffs' Witness List

Plaintiffs will call or may call the following witnesses:[2]

| Witness | Knowledge |
|---|---|
| Plaintiff Clint Henderson<br><br>2121 Wylmoor Way SE<br><br>Smyrna, GA  30080 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Shawn Brower<br><br>1459 Mecaslin St. NW Apt. 5311<br><br>Atlanta, GA 30309 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Austin Chandonnet<br><br>5474 Oakley Industrial Blvd Apt. 713<br><br>Fairburn, GA 30212 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |

---

[2] The parties have agreed to each identify ten plaintiffs in this order who they may call.  Thirty days before trial, when the parties know more about Plaintiffs' commitments and availability, the parties will meet and confirm and refine their respective lists.

| | |
|---|---|
| Plaintiff Matthew Dalke<br><br>140 Autumn Crk<br><br>Senoia, GA  30276 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Matthew Frank<br><br>2315 Tanglewood Cir. NE<br><br>Atlanta, GA  30345 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Michael Garcia<br><br>1604 W 27th St. Apt. 3<br><br>Los Angeles, CA  90007 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Joseph Leggett<br><br>1557 Terrell Mill Rd SE Apt 4001<br><br>Marietta, GA  30067 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Joshua Potts<br><br>188 Bryant St.<br><br>McDonough, GA  30253 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will |

| | |
|---|---|
| | also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Demarcus Cook<br>228 Dodd Ave SW<br>Atlanta, GA  30315 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Plaintiff Gregory Eswine<br>103 Palm Sprints Ct.<br>Canton, GA  30115 | Plaintiff will testify about his work habits, including frequency of work, hours worked, and fines, fees, and tip-outs paid.  Plaintiff will testify about signing in and out at the club.  Plaintiff will also testify about his interactions with Defendants, the club's rules and regulations, and Defendants' classification of him as an "independent contractor." |
| Alexander Wise<br>Nichols Kaster PLLP<br>4600 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55422 | If the parties cannot fully stipulate to damages, Mr. Wise may be called to lay the foundation for and explain how he compiled Plaintiffs' damages summary exhibits. |
| C.B. Jones<br>3906 Ivy Rd., NW<br>Atlanta, GA 30318 | Defendant Jones will be called to testify about his ownership and operations of Swinging Richards, his interactions with Plaintiffs, his involvement in the 1993 DOL investigation into unnamed clubs and related correspondence, his decision whether to record Plaintiffs' work time and gratuities, his knowledge of other entertainer litigation, and his decision to classify and continue to classify entertainers as "independent contractors." |

| | |
|---|---|
| James Matthew Colunga<br><br>800 Bellaire St. Apt. 222<br><br>Denver, CO 80220 | Matthew Colunga will be called to testify about his role as general manager and DJ at Swinging Richards, his interactions with Defendant Jones, his interactions with Plaintiffs, his involvement in the "independent contractor" classification, his enforcement of rules and regulations, his role in recording entertainers' time and/or payments made, his knowledge of other entertainer litigation, and his knowledge of the 1993 DOL investigation into unnamed clubs. |
| Karen Caudle<br><br>1312 Harbins Rd<br><br>Dacula, GA 30019 | Karen Caudle is the club's bookkeeper and she will be called to testify about the club's classification of Plaintiffs, the fines, fees, and tipouts paid by Plaintiffs, the documentation (or lack thereof) of hours worked by Plaintiffs, of monies paid by Plaintiffs (or lack thereof), and his knowledge of the 1993 DOL investigation into unnamed clubs. |
| Demetrious "Jimmy" Haralambus<br><br>2602 Penrick Dr NW 27<br><br>Marietta, GA 30064 | Jimmy Haralambus may be called to testify about the club's classification of Plaintiffs, the fines, fees, and tipouts paid by Plaintiffs, the club's documentation (or lack thereof) of fines and fees paid by Plaintiffs, the club's documentation (or lack thereof) of Plaintiffs' hours worked, and his knowledge of the 1993 DOL investigation into unnamed clubs. |
| Scott A. Lawson<br><br>Pechter & Assocs., P.C.<br><br>(or if no longer at the firm another representative)<br><br>2655 Dallas Hwy SW, Suite 530<br><br>Marietta, GA 30064 | Scott Lawson (or if necessary a Pechter representative) may be called to testify about the firm's involvement in the 1993 DOL investigation, the clubs that it represented in that investigation, the content of his letters to the DOL including reference to any documents or attachments, the result of the investigation including clubs' subsequent compliance, and the firm's working relationship with 1400 Northside Drive and/or C.B. Jones. |

| | |
|---|---|
| Wm. Scott Schulten<br><br>Schulten & Ward<br><br>260 Peachtree St. NW, Suite 2700<br><br>Atlanta, GA  30303 | Scott Schulten may be called to testify about his involvement in the 1993 DOL investigation, the clubs that he represented in that investigation, his work with the American Entertainment Association, Inc., the content of his letters to the DOL including reference to any documents or attachments, the result of the investigation including clubs' subsequent compliance, and his representation of C.B. Jones and/or 1400 Northside Drive at any time for any reason. |
| Anyone identified on Defendants' witness list. | |

# ATTACHMENT F-2

# Defendants' Witness List

## ATTACHMENT F-2

### Defendants' Witness List

Defendants will call or may call the following witnesses:

| Witness | Knowledge |
|---|---|
| C.B. Jones<br>3906 Ivy Rd., NW<br>Atlanta, GA 30318 | Defendants expect each witness to testify about the clubs' operation and their experience in the industry with regard to behavior of entertainers and their compensation. |
| James Matthew Colunga<br>800 Bellaire St. Apt. 222<br>Denver, CO 80220 | |
| Karen Caudle<br>1312 Harbins Rd<br>Dacula, GA  30019 | |
| Demetrious "Jimmy" Haralambus<br>2602 Penrick Dr NW 27<br>Marietta, GA  30064 | |
| Harry Hunt<br>Address unknown | |
| The parties stipulate and agree that Defendants may in no more than thirty days amend this witness list to identify up to ten Plaintiffs who Defendants may call to testify at trial pursuant to footnote 2 above.  Plaintiffs/the parties may then amend the exhibit list to add any exhibits that may be relevant to those Plaintiffs as necessary and as reserved on the joint exhibit list at lines 21, 25, 37–38. | |
| Anyone identified on Plaintiffs' witness list. | |

# ATTACHMENT G-1

# The Parties Joint Exhibit List

## ATTACHMENT G-1

### The Parties' Joint Exhibit List

| Ex # | Identifier Start | Description |
|------|------------------|-------------|
| 1. | Ex. P2 - NKA000176 | Independent Contractor Agreement |
| 2. | Ex. P3 - NKA000179 | Independent Contractor Agreement |
| 3. | Ex. P4 - NKA000182 | Swinging Richards Entertainer Rules and Regulations |
| 4. | Ex. P5 – SR002094 | 1400 Northside Drive Inc. Income Statement & Tax Information |
| 5. | Ex. P6 | List of Swinging Richards income/expenses line items |
| 6. | Ex. P7 – SR000188 | Swinging Richards Sign In/Out Sheet |
| 7. | Ex. P8 – SR000421 | Front Door memorandum |
| 8. | Ex. P9 – SR000440 | Guest Check/Receipt |
| 9. | Ex. P10 | Swinging Richards VIP Sign-In |

| | | |
|---|---|---|
| | | Sheet (Jan. 1, 2011) |
| **10.** | Ex. P11 – SR000966 | Richards: House, Matt C (Oct. 21, 2011) (handwritten) |
| **11.** | Ex. P12 – SR002037 | Time Card for Mike Crowley a/k/a "Rome" |
| **12.** | Ex. P13 – SR002038 | Record of dances for Mike Crowley a/k/a "Rome" |
| **13.** | Ex. D1 | Photo of VIP Lounge Entrance Fee Sign |
| **14.** | Ex. D2 | Photo of VIP Room Rates |
| **15.** | Ex. D3 – SR002132 | Agreement, signed by Clint Henderson (July 21, 2012) |
| **16.** | SR002164 | Agreement, signed by Austin Chandonnet a/k/a "Christian" |
| **17.** | SR000138 | Agreement, signed by Matt Dalke (June 15, 2011) |
| **18.** | SR002140 | Agreement, signed by Michael Garcia, a/k/a "Pierce" (July 21, 2012) |
| **19.** | SR002149 | Agreement, signed by Joshua Potts , |

PRETRIAL ORDER 60 Attachment G-1

| | | |
|---|---|---|
| | | a/k/a "Channing" (July 21, 2012) |
| **20.** | SR002170 | Agreement, signed by Greg Eswine a/k/a "Bruce" (July 21, 2012) |
| **21.** | | PLACE HOLDER for Agreements signed by Plaintiffs on Defendants' witness list |
| **22.** | SR000133 | Swinging Richards Entertainer Rules and Regulations, signed by Clint Henderson (Sept. 2009) |
| **23.** | SR000108 | Swinging Richards Entertainer Rules and Regulations, signed by Demarcus Cook a/k/a Pretty Boi "Marcus" (Dec. 7, 2013) |
| **24.** | SR000130 | Swinging Richards Rule and Regulations, signed by Michael Garcia (2009) |
| **25.** | | PLACE HOLDER for Rules and Regulations signed by Plaintiffs on Defendants' witness list |
| **26.** | SR000182–528, 2091–93 | Compilation of sign in/out sheets |
| **27.** | SR000529–2036 | Compilation of Swinging Richards |

|  |  | VIP Sign-In Sheets |
|---|---|---|
| **28.** | Produced by Defendants on June 28, 2016 | Electronic VIP Sign-In Sheets |
| **29.** | SR002041–43 | Time Cards for Matt Dalke a/k/a "Tucker" |
| **30.** | SR002044–45 | Records of dances for Matt Dalke a/k/a "Tucker" |
| **31.** | SR002046–48 | Time Cards for Matt Frank a/k/a "Dallas" |
| **32.** | SR002049–58 | Records of dances for Matt Frank a/k/a "Dallas" |
| **33.** | SR002059–61 | Time Cards for Michael Garcia a/k/a "Pierce" |
| **34.** | SR002062–74 | Records of dances for Michael Garcia a/k/a "Pierce" |
| **35.** | SR002075–76 | Time Cards for Clint Henderson a/k/a "Clint" |
| **36.** | SR002077–84 | Records of dances for Clint Henderson a/k/a "Clint" |

| 37. | SR00XXXX | PLACE HOLDER for time cards for Plaintiffs on Defendants' witness list |
|---|---|---|
| 38. | SR00XXXX | PLACE HOLDER for records of dances for Plaintiffs on Defendants' witness list |
| 39. | Produced by defendant Sept. 2, 2014 | Check stub number 28208, Matt Frank (Jan. 17, 2014) |
| 40. | Produced by defendant Sept. 2, 2014 | Credit Paid (I.O.U.) Robert Casey and Michael Garcia (June 28, 2014) |
| 41. | ECF NO. 124-31 | Compilation of Sec'y of State filings extracted from the Ga. Sec'y of State website on Nov. 5, 2015 |
| 42. | ECF No. 84-13 | Pages extracted from Swinging Richards's Website (last visited Oct. 2014), *available at* www.swingingrichards.com; |
| 43. | ECF NO. 124-32 | Pages extracted from Swinging Richards's Website (last visited Nov. 6, 2015), *available at* www.swingingrichards.com |

| 44. | ECF NO. 84-4 | Dep. of Def. 1400 Northside Dr. through designee James Matthew Colunga (Aug. 21, 2014) |
|---|---|---|
| 45. | ECF NO. 84-5 | Dep. of Def. 1400 Northside Dr. through designee Karen R. Caudle (Aug. 21, 2014) |
| 46. | ECF NO. 84-6 | Dep. of Def. 1400 Northside Dr. through designee Demetrios "Jimmy" Haralambus (Sept. 18, 2014) |
| 47. | ECF NO. 84-7 | Dep. of Karen R. Caudle, in her individual capacity (Sept. 18, 2014) |
| 48. | ECF No. 124-15 | Dep. of Def. C.B. Jones (Sept. 11, 2015) |
| 49. | | Dep. of Plt. Michael Alverz (Oct. 1, 2015) |
| 50. | ECF NO. 124-21 | Dep. of Plt. Jeremy Angerer (Oct. 15, 2015) |
| 51. | ECF NO. 124-20 | Dep. of Plt. Troy Borrego (Oct. 1, 2015) |
| 52. | | Dep. of Plt. Shawn Brower (Sept. 23, 2015) |

| | | |
|---|---|---|
| **53.** | | Dep. of Plt. Beau Burroughs (Oct. 8, 2015) |
| **54.** | | Dep. of Plt. Chad Carnell (Sept. 24, 2015) |
| **55.** | | Dep. of Plt. Austin Chandonnet (Sept. 11, 2015) |
| **56.** | ECF NO. 124-18 | Dep. of Plt. Demarcus Cook (Sept. 23, 2015) |
| **57.** | | Dep. of Plt. Michael Crowley (Oct. 15, 2015) |
| **58.** | | Dep. of Plt. Matthew Dalke (Sept. 23, 2015) |
| **59.** | | Dep. of Plt. Matthew Duggan (Oct. 1, 2015) |
| **60.** | | Dep. of Plt. James Egan (Oct. 8, 2015) |
| **61.** | | Dep. of Plt. Greg Eswine (Sept. 23, 2015) |
| **62.** | | Dep. of Plt. John Ferraro (Oct. 1, 2015) |

| | | |
|---|---|---|
| **63.** | | Dep. of Plt. Matthew Frank (Sept. 11, 2015) |
| **64.** | | Dep. of Plt. Michael Garcia (Sept. 23, 2015) |
| **65.** | | Dep. of Plt. Armando Geroldi (Oct. 1, 2015) |
| **66.** | | Dep. of Plt. Christopher Hall (Oct. 1, 2015) |
| **67.** | | Dep. of Plt. Clinton Henderson (Aug. 22, 2014 & Sept. 11, 2015) |
| **68.** | ECF NO. 124-17 | Dep. of Plt. Valentino James (Sept. 23, 2015) |
| **69.** | | Dep. of Plt. Eric Jugar (Sept. 24, 2015) |
| **70.** | | Dep. of Plt. Bryan Keenan (Sept. 23, 2015) |
| **71.** | | Dep. of Plt. Randall Klimetz (Sept. 23, 2015) |
| **72.** | ECF NO. 124-19 | Dep. of Plt. Joseph Leggett (Sept. 24, 2015) |

| 73. |  | Dep. of Plt. Yago Luangraj (Oct. 1, 2015) |
|---|---|---|
| 74. | ECF NO. 124-22 | Dep. of Plt. Christopher McGahee (Oct. 15, 2015) |
| 75. |  | Dep. of Plt. Andrew Olinde (Aug. 22, 2104 & Oct. 8, 2015) |
| 76. |  | Dep. of Plt. Nicholas Ortiz (Oct. 15, 2015) |
| 77. |  | Dep. of Plt. Austin Outlaw (Sept.11, 2015) |
| 78. |  | Dep. of Plt. Jeffrey Peiser (Oct. 8, 2015) |
| 79. |  | Dep. of Plt. Joshua Potts (Sept. 11, 2015) |
| 80. |  | Dep. of Plt. Brannon Purvis (Oct. 8, 2015) |
| 81. |  | Dep. of Plt. Nicholas Richwine (Oct. 1, 2015) |
| 82. |  | Dep. of Plt. Thomas Setser (Oct. 1, 2015) |

| 83. |  | Dep. of Plt. Deuntry Taskin (Oct.r 1, 2015) |
| 84. | ECF NO. 124-16 | Dep. of Plt. Nathan Taylor (Sept.23, 2015) |
| 85. |  | Dep. of Plt. Ryan Saegert, (Oct. 8, 2015) |
| 86. |  | Defendants' Ans. to Interrogs., Set I (Aug. 25, 2014) |
| 87. |  | Pls.' Interrogs. to Defs.' Set II (Aug. 28, 2015) |
| 88. |  | Defs.' Ans. to Pls.' Interrogs., Set II (Oct. 7, 2015) |
| 89. | ECF No. 124-35 | Decl. of Shawn Brower in Supp. of Summ. J. Mot. phase II (Nov. 4, 2015) |
| 90. | ECF No. 124-36 | Decl. of Chad Carnell in Supp. of Summ. J. Mot. phase II |
| 91. | ECF No. 124-37 | Decl. of Matthew Duggan in Supp. of Summ. J. Mot. phase II (Nov. 5, 2015) |
| 92. | ECF No. 124-38 | Decl. of Matthew Frank in Supp. of |

| | | Summ. J. Mot. phase II |
|---|---|---|
| **93.** | ECF No. 124-39 | Decl. of Nicholas Ortiz in Supp. of Summ. J. Mot. phase II |
| **94.** | ECF No. 124-40 | Decl. of Joseph Leggett in Supp. of Summ. J. Mot. phase II (Nov. 6, 2015) |
| **95.** | ECF No. 129-2 | Decl. of Demetrios "Jimmy" Haralambus in Supp. of Defs.' Opp'n to Plfs.' Summ. J. Mot. phase II (Dec. 26, 2015) |
| **96.** | ECF No. 89-3 | Decl. of Demetrios "Jimmy" Haralambus in Supp. of Defs.' Opp'n to Plfs.' Exempt. Summ. J. Mot. (Oct. 31, 2014) |
| **97.** | ECF No. 90-3 | Decl. of Demetrios "Jimmy" Haralambus in Supp. of Defs' Opp'n to Plfs.' Set-off Summ. J. Mot. (Oct. 31, 2014) |
| **98.** | ECF No. 90-2 | Decl. of August Caudle in Supp. of Defs.' Opp'n to Plfs' Set-off Summ. J. Mot. (Oct. 30, 2014) |
| **99.** | ECF No.1-1 | Plaintiff Clinton Henderson Consent Form |

| 100. | ECF No. 1-2 | Plaintiff Chad Carnell Consent Form |
| 101. | ECF No. 1-2 | Plaintiff Michael Crowley Consent Form |
| 102. | ECF No. 1-2 | Plaintiff Adam Cummins Consent Form |
| 103. | ECF No. 1-2 | Plaintiff James Egan Consent Form |
| 104. | ECF No. 1-2 | Plaintiff Greg Eswine Consent Form |
| 105. | ECF No. 1-2 | Plaintiff Christopher Hall Consent Form |
| 106. | ECF No. 1-2 | Plaintiff Randall Klimetz Consent Form |
| 107. | ECF No. 1-2 | Plaintiff Joseph Leggett Consent Form |
| 108. | ECF No. 1-2 | Plaintiff Christopher Michael McGahee Consent Form |
| 109. | ECF No. 1-2 | Plaintiff Thomas Setser Consent Form |
| 110. | ECF No. 1-2 | Plaintiff Deuntray Taskin Consent |

| | | |
|---|---|---|
| | | Form |
| **111.** | ECF No. 1-2 | Plaintiff Nathan Taylor Consent Form |
| **112.** | ECF No. 3 | Plaintiff Austin Outlaw Consent Form |
| **113.** | ECF No. 8 | Plaintiff Austin Chandonnet Consent Form |
| **114.** | ECF No. 13 | Plaintiff Matthew Dalke Consent Form |
| **115.** | ECF No. 14 | Plaintiff Michael Garcia Consent Form |
| **116.** | ECF No. 15 | Plaintiff Matt Frank Consent Form |
| **117.** | ECF No. 16 | Plaintiff Joshua Potts Consent Form |
| **118.** | ECF No. 17 | Plaintiff Troy Borrego Consent Form |
| **119.** | ECF No. 19 | Plaintiff Valentino James Consent Form |
| **120.** | ECF No. 22 | Plaintiff Shawn Brower Consent Form |
| **121.** | ECF No. 23 | Plaintiff Ernesto Martinez Consent |

| | | Form |
|---|---|---|
| **122.** | ECF No. 28 | Plaintiff Brannon Purvis Consent Form |
| **123.** | ECF No. 30 | Plaintiff Eric Jugar Consent Form |
| **124.** | ECF No. 31 | Plaintiff Yago Luangraj Consent Form |
| **125.** | ECF No. 35 | Plaintiff Michael Alverz Consent Form |
| **126.** | ECF No. 40 | Plaintiff DeMarcus Cook Consent Form |
| **127.** | ECF No. 41 | Plaintiff John P. Ferraro Consent Form |
| **128.** | ECF No. 42 | Plaintiff Nicholas Ortiz Consent Form |
| **129.** | ECF No. 43 | Plaintiff Craig Phillips Consent Form |
| **130.** | ECF No. 44 | Plaintiff Jeffrey Peiser Consent Form |
| **131.** | ECF No. 45 | Plaintiff Armando Geroldi Consent Form |

| 132. | ECF NO. 46 | Plaintiff Matthew McGraw Duggan Consent Form |
| 133. | ECF No. 47 | Plaintiff Nicholas Richwine Consent Form |
| 134. | ECF No. 48 | Plaintiff Jeremy Angerer Consent Form |
| 135. | ECF No. 48 | Plaintiff Beau Burroughs Consent Form |
| 136. | ECF No. 50 | Plaintiff Ryan Michael Saegert Consent Form |

# ATTACHMENT G-2

# Plaintiffs' Exhibit List

**ATTACHMENT G-2**

**Plaintiffs' Exhibit List**

| Ex # | Identifier | Description | Plaintiffs' Objections |
|------|-----------|-------------|------------------------|
| 1. | Henderson000001 | Atlanta Police Department License Information | |
| 2. | Henderson000071 | Atlanta Police Department License Information | |
| 3. | Henderson000110 | Atlanta Police Department License Information | |
| 4. | | *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011) | |
| 5. | | Summary Exhibit of information contained in sign in-out sheets, SR000182–528, 2091–93 | The parties reserve objections to all summary exhibits until after the parties attempt to stipulate on many of these issues.  Thirty days before trial or as otherwise required by the Court, the parties will amend their exhibit lists to identify any objections they may have to summary exhibits. |
| 6. | | Summary Exhibit of information contained in VIP Sign-In Sheets, SR000529–2036, and those produced on June 28, 2016 | |
| 7. | | Any documents obtained relating to the above correspondence with the DOL from pending Freedom of | |

| | | | |
|---|---|---|---|
| | | Information Act Requests or any subsequent subpoenas | |
| **8.** | | Summary or demonstrative exhibit hours estimates and fees, fines, and tipout testimony contained in Plaintiffs' deposition testimony | |

Plaintiffs may request the right to supplement and/or amend these disclosures to include inadvertent omissions, demonstrative and summary exhibits, and/or documents to be used for impeachment and/or rebuttal up until and through the trial of this case.

# ATTACHMENT G-3

# Defendants' Exhibit List

**ATTACHMENT G-3**

**Defendants' Exhibit List**

| Ex # | Identifier | Description | Plaintiffs' Objections[3] |
|---|---|---|---|
| 1. | Ex. P14 – SR002173 | Letter from Mary Ziegler, Investigator, DOL to Scott A Lawson, Pechter & Assocs. (De. 27, 1993) | Relevance, foundation, authenticity |
| 2. | ECF NO. 124-27 | Ltr from Daniel W. Bremer, District Director, DOL to Scott Schulten, Schulten & Ward (Dec. 6, 1993) | Relevance, foundation, authenticity |
| 3. | ECF NO. 124-26 | Ltr from Scott A. Lawson, Pechter & Assocs. to Mary Ziegler, Investigator, DOL (Nov. 10, 1993) | Relevance, foundation, authenticity |
| 4. | ECF NO. 124-25 | Ltr from Daniel W. Bremer, District Director, DOL to Jim Berry, Berry Insurance (Nov. 5, 1993) | Relevance, foundation, authenticity |
| 5. | ECF NO. 124-24 | Ltr from Jim Berry, AAtlanta Club Workers to Daniel W. Bremer, District Director, DOL (Nov. 3, 1993) | Relevance, foundation, authenticity |

---

[3] The parties are presently attempting to resolve in whole or in part objections to items 1-7 through the exchange of additional information.

| 6. | ECF NO. 124-23 | Ltr from Daniel W. Bremer, District Director, DOL to "Owner or Representative" (Oct. 20, 1993) | Relevance, foundation, authenticity |
|---|---|---|---|
| 7. | ECF NO. 124-30 | Ltr from Schulten of Schulten & Ward to the Association (Dec. 23 1993) | Relevance, foundation, authenticity |
| 8. | ECF NO. 124-29 | Mem. from Scott Schulten of Schulten & Ward to All American Entertainment Association Members from Dec. 22, 1993 | Relevance, foundation, authenticity |
| 9. | | IRS Rev. Ruling 2012-18 | Relevance |
| 10. | | Summary or demonstrative exhibit hours, work weeks, work table dances performed, and VIP room visits undertaken contained in Plaintiffs' deposition testimony | The parties reserve objections to all summary exhibits until after the parties attempt to stipulate on many of these issues.  Thirty days before trial or as otherwise required by the Court, the parties will amend their exhibit lists to identify any objections they may have to summary exhibits. |

Defendants reserve the rights similar to those reserved by Plaintiffs.

# ATTACHMENT H-1

# Plaintiffs' Trial Brief

## ATTACHMENT H-1

### Plaintiffs' Trial Brief

This Court has already ruled in Plaintiffs' favor as to Defendants' liability under the FLSA.  Thus, the only remaining issues to be tried are (1) damages, (2) willfulness, (3) liquidated damages (good-faith defense to liquidated damages), and the (4) good-faith defense to liability.   The following provides authority for Plaintiffs' position on each of these issues, explaining why Plaintiffs will prevail at trial.  This brief concludes by providing Plaintiffs' position on arguments Plaintiffs anticipate Defendants will make leading up to trial.

I)    **DAMAGES**

There is no dispute as to the components that make up Plaintiffs' damages. The parties are presently attempting to stipulate to the amounts for some of these components.  Regardless, Plaintiffs intend to prove their damages by presenting up to five Plaintiffs to testify and provide good-faith estimates, creating a just and reasonable inference of hours worked and monies paid.  The parties have already stipulated that testimony from up to five Plaintiffs each is sufficiently representative, and the U.S. Supreme Court permits such representative estimates in circumstances where an employer does not keep accurate timekeeping and payroll records.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).  Plaintiffs also intend to corroborate their testimony with summary exhibits

that compile Defendants' partial sign-in sheets and VIP sheets, as well as with the

Atlanta Police Department's license information.

Upon hearing this evidence, the jury should then make the following factual

findings:

- Dates of employment;
- Average number of shifts worked per week;
- Average number of hours worked per week;
- Average fees paid per shift;
- Average tipouts paid per shift; and
- Average fines paid.

*See infra* Attachment I-1 (proposed special verdict form); *see also Clark v.*

*Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 820 (W.D. Tex. 2015) (finding

average number of weekly hours for testifying plaintiffs).

Once the above is found, then the Court will have everything it needs to

calculate and apply these averages to the collective as a whole and award damages

post-trial.  More specifically, Plaintiffs request that the parties meet and confer

following the verdict and present to the Court a proposed allocation for approval.

This "estimated average" approach is commonly used in FLSA collective trials and

has been approved by many courts. *See, e.g.*, *Monroe v. FTS USA, LLC*, 815 F.3d

1000, 1020–22 (6th Cir. 2016) (collecting cases); *see also U.S. Dep't of Labor v.*

*Cole Enter., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995); *Donovan v. Hamm's Drive Inn*,

661 F.2d 316, 318 (5th Cir. 1981); *Clark.*, 104 F. Supp. 3d at 833; *McLaughlin v.*

*DialAmerica Marketing, Inc.*, 716 F. Supp. 812, 825–26 (D.N.J. 1989).  The Court should adopt a similar approach here in determining the collective's damages.

## II)   WILLFULNESS

The FLSA extends the statute of limitations from two years to three years if the employer acted "willfully," meaning he "either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was."  29 U.S.C. § 255(a); *Davila v. Menendez*, 717 F.3d 1179 (11th Cir. 2013); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  One way an employer may be found to possess "knowledge" is "if the employer received advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful."  29 C.F.R. § 578.3(c)(2).  An employer acts with reckless disregard if it failed "to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104; *see also* 29 C.F.R. § 578.3(C)(3).

It is Plaintiffs' burden to establish willfulness, and the question of whether an employer acted willfully is a fact question for the jury.  Plaintiffs intend to establish willfulness at trial with evidence that Defendants knew about and ignored the overwhelming authority declaring entertainers to be "employees" rather than "independent contractor" under the FLSA.  The evidence will show that owner

Defendant Jones, an attorney by trade, was personally aware of litigation against Atlanta strip clubs brought within the last ten years, finding entertainers to be employees entitled to minimum wages.  *See De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1314 (N.D. Ga. 2008) (finding willfulness where defendant was aware of a relevant case and it watched relevant DOL training videos and still failed to reimburse expenses).  Yet, the evidence will show he did not investigate whether gratuities were (erroneously assuming they legally could be counted as wages) satisfying minimum wage amounts until after the initiation of this lawsuit.  This is certainly reckless and unreasonable.

Defendants not only ignored legal decisions that were contrary to their position, but they knew about and continued to ignore a DOL investigator's findings that potentially analogous conduct by strip clubs in Atlanta in the 1990s was found to violate the FLSA.  In fact, Defendants now contend that they erroneously *relied* on this finding to justify their continued unlawful practice.

Plaintiffs though will show at trial that the DOL letter (which was drafted *before* Swinging Richards was even in operation), informed unidentified club operators that entertainers qualified as employees and that they were required to comply with FLSA minimum wage and recordkeeping requirements.  The DOL directed the clubs to begin treating dancers as employees starting in December 1993.  It told the clubs to pay them a minimum wage.  The DOL plainly told the

clubs to accurately record hours worked.   The clubs represented that they would comply with these directives.   The clubs represented that they would pay for expenses, like permit fees, to keep entertainers' wages above the minimum.   They represented that they would track work hours and tips earned and compensate employees when their tips fell below the minimum-wage threshold.

But, the evidence will show that Defendants did none of these things in relation to Swinging Richards.   Swinging Richards never classified entertainers as employees.   It did not record their time, their earnings, or maintain legally required records.   It did not track all of entertainers' tips or provide entertainers with payroll reports.   It did not perform weekly audits to ensure entertainers earned the minimum, and likewise did not compensate dancers when they earned less.   The club did not reimburse entertainers for their permit fees.   Swinging Richards simply did conform with the DOL audit upon which it now relies.   Defendants made no effort to abide by the FLSA during the relevant statutory period until Plaintiffs filed this lawsuit.   This reliance was not reasonable, in fact, Defendants' selective reading of the DOL audit letters evidence extreme reckless disregard and willfulness.

Defendants are not the first club to rely on this audit in an attempt to evade a finding of willfulness or assert a good-faith defense.   A federal district court has recently rejected similar arguments made by the defendants in *Gardner v. Country*

*Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556 (D.S.C. Dec. 3, 2015) (represented by these Defendants' former counsel).   That court found after a "careful examination of the letter and the surrounding circumstances" that the club's reliance on the letter was not reasonable.  *Id.* at *19.  In so ruling, the court notes the "defendant is not relying on a letter that *it* received indicating that *its* practices were in compliance with the FLSA."   *Id.*   In that respect, the court reasoned, the letter was "not so different from the district court opinions" the club has ignored, representing only "an example of how a regulation has been applied in an analogous, but separate instance." *Id.*

The court went on to find that reliance on this letter rather than the contrasting case law also was not reasonable because the letter was much older, over twenty years old.  *Id.*  ("The owner and operator of a strip club would have to have his head buried in the sand not to know that in the intervening years there have been considerable developments in the law regarding the status and compensation of exotic dancers under the FLSA.").

Worse yet, "the defendant has not even bothered to follow the instructions it provides." *Id.*  The court noted  that the letters "assume that exotic dancers will be classified as employees," and require that the club's records "must accurately reflect the number of hours worked by the employee and the compensation received." *Id.*  The club in *Gardner*, like these Defendants, clearly rejected the

classification demanded by the letters and ignored the recordkeeping requirements. *Id.* "Thus, even if the letter were entitled to the weight the defendant alleges, the defendant would not be entitled to rely on it because it has not complied with the record keeping requirements the letter prescribes." *Id.* at \*20 ("Accordingly, the Court rejects the defendant's arguments that a letter received by a separate club over twenty years ago distinguishes this case from *Degidio* or shields the defendant from liability.").

Plaintiffs will show at trial, similarly to what the Court found in *Gardner*, that Defendants' FLSA violations were plainly willful, and therefore Plaintiffs are entitled to back wages beginning three years before they each consented to join this case.

## III)   **LIQUIDATED DAMAGES**

The FLSA provides an award of liquidated damages in an equal amount to compensatory damages.  29 U.S.C. § 216(b); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282–83 (11th Cir. 2008).  "[L]iquidated damages are mandatory" and may only be reduced if the employer is able to prove he acted in good faith and with reasonable grounds for believing he was not violating the law. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 2013); *see also* 29 U.S.C. § 260; *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012); *Alvarez Perez*, 515 F.3d at 1163.  "[G]ood faith is intended to

apply only where an employer innocently and to his detriment, followed the law . .

. ." *Olson v. Super. Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985). This requires both an objective and subjective analysis. *Alvarez Perez*, 515 F.3d at 1150. The good-faith affirmative defense is a legal question to be answered by the Court post-trial.[4]

Ironically, Defendants will likely defend against liquidated damages by relying on the very DOL correspondence that they ignored. Defendants will likely testify that they subjectively believed the club to be in compliance with the DOL's 1993 correspondence. Those letters suggested that table dance monies could belong to the club and could be used to satisfy some portion of minimum wages. Defendants will likely testify that—although this Court ultimately determined that these monies qualify as tips and therefore belong to dancers not the club—the DOL's mistaken assumption provides Swinging Richards with a good faith excuse.

Defendants, however, cannot read the DOL's correspondence piecemeal. It cannot hide behind the "table dance fees count as tips" language while simultaneously failing to comply with the law and the letter in every way. It is unreasonable to assume any strip club could somehow go from non-compliant to compliant following this investigation by literally doing nothing. The club's

---

[4] If the jury finds Defendant acted willfully, then Defendants' defense against liquidated damages automatically fails. *Alvarez*, 515 F.3d at 1163–67; *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008). .

attempt to cherry pick the one provision it liked from the DOL letters and ignore the rest is not reasonable.  *See Gardner*, 2015 WL 7783556, at *19.  Defendants fail to satisfy the objective good-faith requirement necessary to reduce liquidated damages, and their subjective position is not credible.  Thus, the Court should reject Defendants' § 260 affirmative defense and award Plaintiffs full liquidated damages post trial.

IV) **GOOD FAITH DEFENSE**

Defendants' good-faith affirmative defense under section 259 of the FLSA similarly fails.  This affirmative defense is to liability (not similarly liquidated damages).  It is less frequently invoked as it only excuses violations when the employer acted in reliance on a written "regulation, order, order, ruling, approval, or interpretation" of the administrator of the Wage and Hour Division of the DOL. 29 U.S.C. § 259.

As stated above, Defendants did not actually conform with the DOL communications at issue, so it could not rely on the 1993 audit findings, permitting this defense to similarly fail.  Though, the Court can also swiftly reject this affirmative defense after trial for an additional reason:  because a correspondence by a DOL investigator does not qualify as a written administrator's interpretation sufficient to evade liability under the FLSA.  *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216, 1222 (M.D. Fla. 2005); *accord Lacurtis v. Express Med.*

*Transporters, Inc.*, 2016 WL 3055636, at *7 (E.D. Mo. May 31, 2016) ("Here, the Court doubts whether the investigator who signed the 2010 Compliance Action Report had the power to act as, rather than merely for, the DOL's Wage and Hour Administrator."); *Affo v. Granite Bay Care, Inc.*, 2014 WL 273223, at *2 (D. Me. Jan. 22, 2014) ("I followed those courts that have endorsed the Department of Labor's (DOL's) view that an individual investigator does not speak for the agency so as to establish a good faith defense within the meaning of section 259."); *McLaughlin v. Quan,* 1988 WL 62595 at *3 (D.Colo. June 17, 1988) (written finding by Department of Labor investigator "would not constitute a ruling or interpretation of the Administrator such that any good faith reliance upon it would support a defense under 29 U.S.C. § 259"); *Murphy v. Miller Brewing Co.*, 307 F. Supp. 829, 838 (E.D. Wis. 1969) (summary of unpaid wages provided by investigator "was not an administrative regulation, order, ruling, approval or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor as required by the statute."); *Spring v. Washington Glass Co.,* 153 F. Supp. 312, 318 (W.D .Pa. 1957) (favorable finding in a letter from an investigation supervisor of the Wage and Hour Division was not "equivalent to a ruling, approval or interpretation authorized by the Administrator").

Thus, this good-faith defense fails as a matter of law and the Court should so rule at the conclusion of evidence at trial.

V)      **POTENTIAL LEGAL AND EVIDENTIARY ISSUES**

Plaintiffs anticipate that Defendants are attempt to re-litigate the offset affirmative defense issue and attempt to nullify the jury with evidence suggesting entertainers sometimes made a lot of money in tips and therefore are undeserving of guaranteed wages from their employers.  Plaintiffs ask that neither be permitted. The parties though request additional briefing on these matters and so Plaintiffs will reserve arguments until that time.

# ATTACHMENT I

# Plaintiffs' Proposed Special Verdict Form

### ATTACHMENT I

### Plaintiffs' Proposed Special Verdict Form[5]

*Please answer all __three__ questions:*

1. Did the employers know that their conduct was prohibited by law or did the employers show reckless disregard for whether their conduct was prohibited by law? (*check one*)

   ☐ Yes   ☐ No

2. How much did the testifying employees work and what fees, fines, and/or tip-outs did the employers require the testifying employees pay? (*complete the following chart*)

| Plaintiff | No. of Shifts Per Week | No. of Hours per week | Avg Fees Paid Per Shift | Total TipOuts Paid Per Shift | Total Fines Paid |
|---|---|---|---|---|---|
| **Testifying P No. 1**[6] | | | $ | $ | $ |
| **Testifying P No. 2** | | | $ | $ | $ |
| **Testifying P No. 3** | | | $ | $ | $ |
| **Testifying P No. 4** | | | $ | $ | $ |
| **Testifying P No. 5** | | | $ | $ | $ |
| **….** | | | | | |

*Continue on the next page….*

---

[5] The parties are presently attempting to stipulate to portions of question two and three.

[6] The testifying plaintiffs' names will be populated in this column at trial.

3.  When did the employees work for the employers? (*complete the chart*)

| Plaintiff | Start Date | End Date |
|---|---|---|
| **Testifying P No. 1** | | |
| **Testifying P No. 2** | | |
| **Testifying P No. 3** | | |
| **Testifying P No. 4** | | |
| **Testifying P No. 5** | | |
| **….** | | |

So Say We All

                         _____

                         Foreperson