UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

    Plaintiffs,

v.

1400 NORTHSIDE DRIVE, INC. d/b/a
SWINGING RICHARDS, and C.B.
JONES,

    Defendants.

Civil Action No.: 1:13-cv-3767-TWT

## FIRST AMENDED STIPULATED FACTS FOR TRIAL

Pursuant to the Court's Order Regarding Stipulated Facts For Tip-Outs and House Fees, (ECF No. 148), issued at the request of the Parties in their Joint Consent Motion Regarding Stipulated Facts For Tip-Outs and House Fees, (ECF No. 146), the Parties' Stipulated Facts were amended as follows:

## Factual Stipulations

The parties stipulate and agree to the following facts and/or the Court has already found the following facts to be undisputed:

### *The Club Operations*

1. Defendant C.B. Jones ("Jones") owns Defendant 1400 Northside Drive ("Northside").

2. Jones started Northside (or its predecessor) in 1983.

3. Northside was originally a club named Cabaret Platinum and then Diamond Club, which provided female entertainers to male patrons.

4. Since 1997, 1400 Northside Drive does business as Swinging Richards (also referred to as "the club").

5. Swinging Richards is currently located at 1400 Northside Drive in Atlanta, Georgia.

6. Swinging Richards is a strip club, also referred to as an adult entertainment establishment, catering to gay male clientele.

7. Swinging Richards invests more money into the business of entertainment than the individual entertainers.

8. Defendants control the entire club, including providing the stage, furniture, lighting, sanitation, music, and other amenities. These items of furniture

and décor together form the aesthetic Defendants desire to maintain, promote, and sell at the club, many likely being manufactured outside of Georgia and/or passing through interstate commerce at some point prior to arrival at Defendants' club.

9. The club consists of a main stage, on which entertainers dance, customer seating around the stage referred to as the "main floor," a bar, and a separate "VIP lounge" area adjacent to the main floor, containing a "VIP stage," couch, and seven (7) additional private "VIP rooms."

10. The following types of workers work at the club: exotic dancers (also referred to as "adult entertainers" or "entertainers"), bartenders, waiters, "shooter boys," a front door person, a VIP room door person, an additional security employee, and a bathroom valet.

11. During relevant time frames, the manager on duty also often performs D.J. duties.

12. The number of entertainers varies based on the night of the week between approximately 15 to 45.

13. Customers pay a door charge or cover charge to enter the Club.

14. The nightly cover charge ranges from $5.00 to $10.00 per customer.

15. There is a separate entrance fee for the "VIP Lounge."

16. Swinging Richards sets the minimum rates charged for certain services, such as VIP and private room usage.

17. Swinging Richards retains these cover charges and VIP entrance fees.

18. Swinging Richards reserves the right to refuse entrance to anyone at any time, and that anyone unable or unwilling to comply with the rules of the club can be escorted out of the club.

19. Swinging Richards sells alcohol.

20. Swinging Richards's annual volume of sales made or business done is not less than $500,000.

*Employer C.B. Jones*

21. Jones is the sole shareholder of 1400 Northside.

22. Jones has been the chief executive officer and chief financial officer of Northside for at least the past eight years. Initially, he was the sole board member when the business incorporated in 1996.

23. Jones owns the building and land where Swinging Richards operates, including all of the fixtures and equipment inside.

24. Jones sometimes collects rent from Swinging Richards at his discretion when funds are available.

25. Jones is considered the "boss" to club managers, DJs, bartenders, waiters, VIP doormen, and entertainers.

26. The club general manager reports to Jones.

27. The club bookkeeper, formerly Karen Caudle, reported to Jones.

28. Jones made decisions with regards to club advertisements and the club website.

29. While management typically undertook the hiring responsibilities, Jones has on occasion has hired an entertainer.

30. Jones tried to prohibit entertainers from working at other clubs.

*Entertainers -- Employees*

31. Plaintiffs performed as adult entertainers / exotic dancers during the statutory period.

32. Swinging Richards has considered its entertainers to be independent contractors for at least the past ten years.

33. During relevant times, Swinging Richards has required entertainers to sign an "Independent Contractor Agreement."

34. The parties have agreed, for the purpose of this litigation, that Plaintiffs are entitled to the employee minimum-wage benefits of the FLSA, and the Court has ruled that Plaintiffs are non-exempt.

35. Jones personally reconsidered the independent-contractor classification "back and forth" during the last ten years.

*Entertainers - Hiring*

36. Swinging Richards did not use the AAlanta Club workers broker service to hire or obtain entertainers.

37. The job of an entertainer does not require any special training or education or a particular level of intelligence.

38. Prior dance knowledge or experience is not required to perform at Swinging Richards. In fact, most entertainers do not know how to dance.

39. In fact, it is more important for an entertainer to be very attractive than for the entertainer to know how to dance.

40. Swinging Richards hires entertainers primarily on looks, applying specific physical appearance requirements.

41. Swinging Richards requests entertainers to remove their clothes and have their bodies inspected before they are permitted to dance at the club.

*Entertainer - Duties*

42. During relevant times, Swinging Richards requires entertainers to sign in at the beginning of their shifts and sign out before they leave.

43. Plaintiffs entertain customers. They do this by: (1) performing table dances on the main floor of the Club or in the VIP Lounge; (2) dancing, posing or conversing with a customer in a VIP room; and (3) performing "in rotation" on the stages on the main floor of the Club.

44. Entertainers are rotated onto the stage in a "stage rotation" throughout the night. During any particular rotation, there are up to six entertainers on the stage for a three-song set. When a set is over, another one begins.

45. Entertainers start on the main stage for a three song set. During this set, they are required to take their shirt off during the first song, their pants off during the second, and go completely nude by taking off their underwear during the last song if a defined amount of money is put on stage.

46. After their set on the main stage, the entertainers come off the stage and are required to put their underwear back on and are free to work the floor in search of table dances.

47. Table dances, regardless of whether on the main floor, in the VIP lounge, or in a VIP room, involve the entertainer getting naked and dancing outside of the knees of the customer without physical contact.

48. Table dances on the main floor or in the VIP lounge last the length of one song, typically between three and five minutes.

49. Swinging Richards requires entertainers subject to breathalyzers at the end of their shifts.

50. Swinging Richards forbids entertainers from socializing at the club outside of work hours.

51. Swinging Richards may suspend entertainers if they get too fat.

52. Swinging Richards has the right to terminate its relationship with entertainers.

*Entertainers - payments*

53. Entertainers are not subject to the FLSA tip credit provisions, and are therefore entitled to receive $7.25 per hour in minimum wages.

54. Entertainers' sole source of income for their work at Swinging Richards is provided by Swinging Richards's customers.

55. Entertainers receive tips from customers in three main ways: 1) tips given to them while "dancing" on stage; 2) a minimum of a $10 tip for a table dance (a minimum $20 tip for a table dance in the VIP lounge); and 3) a minimum of $100 tip per fifteen minutes in a VIP room.

56. Once customers pay the cover charge to enter the Club, they have the discretion to simply sit and watch entertainers or to receive a "dance."

57. If they desire a dance, they may choose an entertainer and select the dance venue, i.e. a table dance on the main floor, a table dance in the VIP lounge, and/or a private dance in a VIP room.

58. Swinging Richards does not assign entertainers to customers.

59. Customers may also provide entertainers money for any other reason or for no particular reason at all. They may tip entertainers for simply speaking with them or in recognition of their attractiveness without ever receiving a table dance.

60. There are shifts when entertainers do not make $7.25 for each hour they worked that day at Swinging Richards.

61. Swinging Richards requires entertainers to pay a "house fee" to the club every night.

62. The house fee during the applicable time period was $20.00, and Plaintiffs paid Defendants the $20.00 house fee for each shift they worked.

63. Swinging Richards recorded these fees in its gross receipts.

64. Swinging Richards also requires entertainers to pay additional sums to the club for showing up late for shifts. The late charge equals $10.00 when entertainers arrived one hour past opening and $20.00 when entertainers arrived two hours past opening.

65. At relevant times, Swinging Richards required entertainers pay one dollar on every Friday and Saturday shift for intoxilyzer (breathalyzer) tubes.

66. The club records fines received in its gross receipts.

67. Swinging Richards requires entertainers pay (or "tip-out") some of its employees, contractors, and other personnel each shift.

68. Swinging Richards requires entertainers pay the manager/DJ $10 at the end of every shift.

69. Swinging Richards does not itself compensate its DJ/managers. Instead, it shifts this burden and responsibility entirely onto entertainers.

70. Swinging Richards requires entertainers tip out the front door host $5.00 per shift.

71. Swinging Richards requires entertainers tip out the security person $3.00 per shift.

72. Swinging Richards requires entertainers tip out a total of $18.00 per shift ($10 to the manager/DJ, $5.00 to the front door host, and $3.00 to the security person). Plaintiffs tipped out a total of $18.00 per shift.

73. Swinging Richards does not pay any payroll taxes on amounts collected by managers/DJs, door persons, or security.

DATE:   January 13, 2017

**NICHOLS KASTER, PLLP**

*s/ Michele R. Fisher*
Paul J. Lukas, MN No. 22084X*
Rebekah L. Bailey, MN No. 0389599*
Michele R. Fisher, GA No. 076198
Robert L. Schug, MN No. 0387013*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
bailey@nka.com
fisher@nka.com
rschug@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**
Jeff Kerr, GA Bar No. 634260
John Mays, GA Bar No. 986574
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
jeff@maysandkerr.com
john@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE**

11

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CERTIFICATE OF SERVICE

*Henderson, et al. v. 1400 Northside Drive, Inc. d/b/a Swinging Richards, et al.,*
**Court File** No**.: 1:13-cv-3767-TWT**

I hereby certify that on January 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification to the following attorneys of record:

Herbert P. Schlanger
Ga. Bar Number 629330
hschlanger@bellsouth.net
herb@schlanger.com
Law Office of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, GA  30303
404-808-6659

Attorney for Defendants 1400 Northside Drive, Inc. d/b/a Swinging Richards and C.B. Jones.

Dated:  January 13, 2017                             */s/ Michele R. Fisher*
                                                                          Michele R. Fisher

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated:  January 13, 2017             */s/ Michele R. Fisher*
                                                             Michele R. Fisher