# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CLINTON HENDERSON and
ANDREW OLINDE, individually and
on behalf of all other similarly situated
individuals,

      Plaintiffs,                         Case No.: 1:13-CV-3767-TWT

v.

1400 NORTHSIDE DRIVE, INC., d/b/a
SWINGING RICHARDS, and C.B.
JONES,

      Defendants.

## MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION

## I.      INTRODUCTION

Plaintiffs Clinton Henderson and Andrew Olinde, individually and on behalf of the collective class ("Plaintiffs"), and 1400 Northside Drive, Inc. d/b/a/ Swinging Richards, and C.B. Jones (Defendants) reached a settlement and jointly move the Court for approval and dismissal.

The parties consent and respectfully request that the Court grant this motion. After several years of zealous litigation, the parties reached a settlement that is a

fair, adequate, and reasonable resolution of the parties' bona fide dispute under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  The parties have informed Plaintiffs of the terms of the settlement and each of the 37 Plaintiffs have agreed to it by signing and returning a release form.  (Ex. E.)

## II.    SUMMARY OF LITIGATION

On November 11, 2013, Plaintiffs Andrew Olinde and Clinton Henderson initiated this FLSA collective action against Defendants.  (Compl., ECF No. 1; Am. Compl.,  ECF No. 24.)  Plaintiffs assert that when they worked for Defendants as exotic dancers (also referred to as "entertainers" or "strippers") they were improperly classified as independent contractors, and that Defendants failed to pay them minimum wage and charged them to work by requiring them to pay fines and fees and to tip out Defendants other workers.  (*Id.*)

On February 2, 2014, Defendants answered, denying any violation of the FLSA(Ans. to Am. Compl., ECF No. 32; Am. Ans. to Am. Compl., ECF No. 53; Def 1400 Northside Drive, Inc.'s Ans. to 2d Am. Compl, ECF No. 70; Def. Jones Special Appearance and Ans. to 2d Am. Compl., ECF No. 71.)  Defendants contended the entertainers were independent contractors, not employees, and therefore, not subject to the minimum wage requirements of the FLSA.  They also argued Plaintiffs were exempt from the requirements of the FLSA under the artistic/creative professional exemption, 29 U.S.C. § 213(a)(1).  (*See generally id.*)

The parties stipulated to conditionally certify the collective, (Stip. to Stay Lit. Pending Mediation, ECF No. 27; and Stip. to Issue Judicial. Not., ECF No. 33), and the Court approved the stipulation and proposed notice to putative plaintiffs, (Order, ECF No. 34).  A total of thirty seven (37) individuals are plaintiffs in this action, including the named Plaintiffs.  (Fisher Decl. ¶ 2.)

Over the course of this litigation, the parties engaged in discovery, and exchanged documents and data related to the claims.  (*Id.* ¶ 3.)  Plaintiffs had to subpoena information from the Atlanta Police Department to identify the putative collective members for the purpose of sending notice of this action, and to obtain permit dates the entertainers were authorized to work for the club.  (*Id.* ¶ 4.)  Plaintiffs' Counsel, with assistance from their staff, interviewed each Plaintiff to obtain information related to their claim.  (*Id.* ¶ 5.)  Plaintiffs deposed Defendant C.B. Jones,[1] the club's accountant, its bookkeeper, its former manager, and its former attorney.  (*Id.* ¶ 6.)  The testimony of the club's owner, attorney, accountant, and bookkeeper was important to Defendants' defense that their manner of paying the entertainers complied with the law, as they claimed they relied on this advice.  (*Id.*)  Defendants deposed all 37 Plaintiffs.  (*Id.* ¶ 7.)  The parties analyzed data, documents, and testimony in an effort to discern each Plaintiff's approximate dates of employment, number of hours they worked, as

---

[1] Defendant Jones made for a challenging witness due to medical issues and memory loss from several strokes.  (Fisher Decl. ¶ 6.)

well as the fines, fees, and tip outs Plaintiffs paid.  (*Id.* ¶ 8.)  This included front door and VIP room sign in/out sheets, 1099s, permit dates, independent contractor agreements, and testimony and information provided by Plaintiffs.  (*Id.*)

The parties engaged in two rounds of summary judgment briefing.  First, the Court ruled in Plaintiffs' favor that the creative professional exemption did not apply.  (Order, ECF No. 105.)  Second, the Court ruled in Plaintiffs' favor that Defendant C.B. Jones was a proper defendant, and on Defendants' offset defense. (Order, ECF No. 132.)  Defendants stipulated that Plaintiffs were entitled to the protections of the FLSA.  (Stip., ECF No. 66.)

The parties engaged in mediation on May 15, 2014 with a local mediator which was not successful.  (Fisher Decl. ¶ 9.)  On December 14, 2016, the Court set the case for a January 17, 2017 trial date, the same day that Plaintiffs' Counsel was scheduled to try another case in this court with the Honorable Judge Steve C. Jones.  (*Id*. ¶ 10.)  Rather than request a continuance, two alternate attorneys from Plaintiffs' Counsel's office, Michele Fisher and Robert Schug, prepared the case for trial.  (*Id.* ¶ 11.)  In addition to preparing the pretrial submissions, several motions in limine, and a motion for a trial plan, Plaintiffs' Counsel traveled to Atlanta and prepared their trial witnesses.  (*Id.* ¶ 12.)  During trial preparation, the parties' counsel had several conversations about settlement.  (*Id.* ¶ 13.)  During those settlement discussions, Plaintiffs' Counsel negotiated Plaintiffs' damages

and attorneys' fees separately, even suggesting Plaintiffs' Counsel petition separately for their fees. (*Id.*)

On the eve of trial, January 16, 2017, the parties reached agreement on the terms of a settlement.  (*Id.*) The parties agreed to a settlement of $1,360,000 to resolve this action, which is a fair and reasonable settlement in light of the disputed risks.  (*Id.*)  The Court permitted the parties to place the terms of the settlement on the record on January 17th.  (*Id.*)

The parties formalized the settlement in the Settlement Agreement attached as Exhibit A.  Counsel for the parties at all times vigorously pursued their respective positions and the rights of their clients throughout the negotiations, engaged in extended legal and factual analysis, discovery, damages analysis, trial preparation, and good faith, arms-length negotiations regarding settlement.  (*Id.* ¶ 14.)

## III.   DAMAGES AND SETTLEMENT TERMS

### A.   Damages Calculation

Defendants did not keep accurate or complete records of Plaintiffs' dates of employment, days or hours worked, or the fines, fees, or tip-outs Plaintiffs paid to work.  (*Id.* ¶ 15.)  As a result, Plaintiffs' Counsel used a variety of sources of information to calculate damages.

The formula and variables necessary to calculating damages for the minimum wage claim, and the reimbursement for the fines, house fees and tip-outs paid is below:

> Minimum wage: ($7.25 * (hours per shift * shifts per week * weeks worked during the 2-year or 3-year statute of limitations)); plus
>
> House Fees: (Stipulated $20 * (shifts per week * weeks worked during the 2-year or 3-year statute of limitations)); plus
>
> Tip Outs: (Stipulated $18 * (shifts per week * weeks worked during the 2-year or 3-year statute of limitations)); plus
>
> Fines: (Fines * (shifts per week * weeks worked during the 2-year or 3-year statute of limitations)).

(Pls.' Mem. in Supp. of Mot. for App. of Trial Plan 20–21 n.6, ECF No. 156.)

Plaintiffs analyzed each Plaintiffs' deposition testimony, and any available front door and VIP room sign in/out sheets, 1099s, permit dates, and independent contractor agreements to establish each Plaintiff's dates of employment.  (*Id.* ¶ 16.) They relied on each Plaintiff's deposition testimony regarding days and hours worked.  (*Id.*)  Because there was no record of fines, house fees, and tip-outs Plaintiffs paid, the parties reached a stipulation of $20 in house fees per day worked, and $18 in tip-outs for each day worked ($10 for the DJ, $5 for security and $3 for the front door host).  (Jt. Consent Mot. Re Stip. Facts for Tip-outs and House Fees, ECF No. 146.)  Because fines were sporadic to non-existent for many Plaintiffs, $5 per shift was included for fines.  (Fisher Decl. ¶ 17.)  The date each

6

Plaintiff joined the case by filing a consent form with the Court was also used to determine the time worked that fell within the three-year statute of limitations under the FLSA.  (*Id.* ¶ 18.)

### B.      Settlement Amount and Allocation.

The total settlement of $1,360,000.00 represents a significant recovery in a case involving a club and its infirm owner with questionable ability to pay.      After the deduction of attorneys' fees in the amount of $453,333.33 (one-third of the settlement) and litigation costs of $58,916.69, Plaintiffs will receive $847,749.98 for disbursement from the allocation fund.  (Fisher Decl. ¶ 19; *see* Settlement Allocations, Ex. B.)  The parties also allocated a named plaintiff service payment of $7,500 to the lead named Plaintiff Henderson, and $500 to the other named Plaintiff Olinde.  (*Id.;* Settlement Agmt., Ex. A.)  An additional $500 was allocated to each of the 12 Plaintiffs who actively participated in trial preparation. (Settlement Allocations, Ex. B; Settlement Agmt., Ex. A.)

Each Plaintiff's individual damages calculation was determined based on a formula that took into account the date his "opt-in" consent form was filed with the Court, his length of employment as an entertainer within the three-year statute of limitations derived from the sources identified above, and each individual Plaintiff's estimate of days and hours worked (capped at four (4) days per week and seven (7) hours per day).  (Fisher Decl. ¶ 20.)  In addition to these factors, a

fines, fees, and tip-out figure of $43 per shift was applied for everyone.  (*Id.*) The settlement funds were allocated on a pro rata basis based on these damage calculations.  (Fisher Decl. ¶ 22; Settlement Allocations, Ex. B; see *infra* Section IV.A.2.)

### C.    Notice of Settlement

On February 6, 2017, in accordance with the terms of the Settlement Agreement, Plaintiffs' Counsel distributed the Notice of Settlement and Release of Claims Form to all Plaintiffs.  (*See* Not. of Settlement Template, Ex. D.)  The Notice of Settlement informed each Plaintiff of the terms of the settlement, including each Plaintiff's individual settlement offer from Defendants. (*Id.*)  The Notice also described the various factors considered in determining individual allocations.  (*Id.*)  The Notice of Settlement explained the release of claims that is part of the settlement and the payment period.  (*Id.*)

### D.    Release of Claims

In consideration for the settlement payment from Defendants, each Plaintiff was required to return a "Release of Claims Form." (*See* Not. of Settlement Template, Ex. D.)  The Release of Claims Form releases Defendants as defined in the Agreement from:

> By signing and returning this Release of Claims form, I agree that in exchange for my settlement payments, and on behalf of my respective heirs, beneficiaries, and assigns, I hereby knowingly and voluntarily release, waive, and discharge Defendants from any and all claims,

demands, rights, liabilities, suits, and causes of action, relating to wages, whether based on federal, state or local wage and hour law, including the claims asserted or that could have been asserted in this action through January 17, 2017.

(*Id.*)  This Release of Claims Form is narrowly tailored to only release claims related to wages, which is what was at issue in this matter.

## IV.   ARGUMENT

### A.   The Settlement is the Result of a Bona Fide Dispute and is Fair and Reasonable.

There are two ways in which claims under the FLSA can be settled and released by employees.  First, section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* § 29 U.S.C. 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit, an employee may settle and release FLSA claims if the parties present the court with a proposed settlement, and the court approves the fairness of the settlement.  *Lynn's Food Stores,* 679 F.2d at 1354.

The court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355. The Eleventh Circuit has detailed the circumstances that justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.   The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*.

In determining whether FLSA settlements are fair and reasonable, district courts also look to "fairness" factors derived from Rule 23 class actions including: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See, e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 722 (E.D. La. 2008).  When applying the *Leverso* factors, there is a "strong presumption" in favor of finding a settlement fair.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

As detailed below, a bona fide dispute exists here and the factors demonstrating the settlement is fair and reasonable are met.

### 1.　　A *Bona Fide* Dispute Exists.

In determining whether a *bona fide* dispute exists, a court must "ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *See Collins*, 568 F. Supp. 2d at 719. A court's settlement approval, however, "must not be turned into a trial or a rehearsal of the trial." *Brask v. Heartland Auto Svcs., Inc.,* 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

A *bona fide* dispute exists in this case. Plaintiffs claim that Defendants misclassified them as exempt from the FLSA and failed to pay them minimum wage. Defendants asserted Plaintiffs were exempt under the creative professional exemption, and to the extent Plaintiffs were entitled to minimum wage, that the minimum wage obligation could be offset by the monies the club received from its customers that the club characterizes as "service charges". While Defendants' arguments on those points did not pass summary judgment, Defendants were intent on appealing the offset ruling post-trial.

Trial was left to resolve the question of damages, including the hours and

shifts worked, and the amount of house fees, tip outs and fines paid for which there were no accurate records. The issue of willfulness, where Plaintiffs bear the burden of proof to extend the FLSA's statute of limitations to from two, to three years, and liquidated (double) damages also remained, with Defendants relying on attorney and accountant advice that the "service charges" the club collected satisfied their minimum wage obligations to Plaintiffs. The risk was inherent that a jury could find that Plaintiffs did not work the amount of hours and shifts they claimed, that Plaintiffs could not meet their burden of proof on the amount of money they paid Defendants to work, and that Defendants' actions were not willful because of the advice upon which they claimed they relied. The risk was also present that a jury would feel sorry for a confused and infirm club owner, have a negative reaction to the type of work these entertainers performed, and believe they already were paid lucratively through tips from customers.

Although both parties continue to firmly believe in the merits of their respective claims and defenses, they agree that a compromise is appropriate here. It permits them to calculate and award damages based on the parties' analysis of the existing records and Plaintiffs' testimony, rather than leaving that uncertainty to a jury less familiar with the issues, the law in this area, and the math formulas to be used.

## 2.   The Factors for Determining "Fair and Reasonable" are Met.

Consideration of the relevant factors identified above confirms that the proposed settlement is fair and reasonable.

As an initial matter the Court may presume no fraud or collusion occurred between counsel, as there is no evidence to the contrary.  *See Collins*, 568 F. Supp. 2d at 725 (citing *Cotton*, 559 F.2d at 1331).  The evidence that supports this, also weighs in favor of another fairness factor where the court considers the stage of the proceedings and the amount of discovery completed.  As the docket reflects, the parties fought vigorously regarding their positions through extensive motion practice and discovery, and prepared this case literally up to the eve of trial.  This is compelling evidence contrary to fraud or collusion, and supports that the settlement was reached as a result of comprehensive analysis, litigation, and arms-length negotiations by the parties.

Next, Plaintiffs were represented by counsel experienced in handling wage and hour class and collective actions.  (*See infra* Section IV.B.)  Plaintiffs' Counsel has the experience to assess the risks of trial and appeal, and the benefits of settlement.  Plaintiffs' Counsel has a long-standing national practice representing employees with claims against employers similar to the  claims asserted in this case.  (*Id.*); *see Houston*, 2009 WL 2474055, at *7.  Plaintiffs' Counsel saw risk in handing over to the jury, the calculation of damages and a

13

determination on whether a two or three year statute of limitations applies.  As mentioned above, the calculations were complex, the range of possible recovery could be found to be uncertain in light of the absence of accurate and complete records, a jury could be put off by the nature of the work performed, and it may have sympathized with the club's owner who claimed his actions were not willful and were in good faith reliance on advice he received.  Moreover, protracted litigation post-trial through a lengthy appeals process factored into the determination that settlement was appropriate now as well.  A court may rely on the judgment of experienced counsel in weighing the reasonableness of settlement and absent fraud, collusion or the like, should be hesitant to substitute its own judgment for that of counsel.  *See Cotton*, 558 F.2d at 1330; *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Finally, the fact that all Plaintiffs accepted the settlement by returning a signed release form supports a finding that the settlement is fair and reasonable. Plaintiffs' Counsel calculated damages using each Plaintiffs' approximate dates of employment during a three-year statutory period, each Plaintiffs' testimony of shifts and hours worked (capped at 7 hours per shift and 4 shifts per week to ensure fairness), and a stipulated amount of $43 per shift worked to compensate for fines, house fees and tip-outs, for which there are no records.  Maximum unliquidated

damages under this formula totaled $1,262,976.  (*See* Settlement Allocations, Ex. B.)   The settlement of $1,360,000 resulted in an amount for disbursement to Plaintiffs of $847,749.98 after the deduction of attorneys' fees and costs, which Plaintiffs' Counsel considered separately when negotiating the settlement.  (*Id.;* Fisher Decl. ¶ 20)  This results in payment certain to Plaintiffs' of 67% of their claimed damages, rather than the risk of trial and appeal.  While the maximum damages amount relies on Plaintiffs' testimony of the hours and shifts they worked, although incomplete, the front door and VIP sign in/out records produced by Defendants provided compelling evidence that the hours and shifts worked per week were actually lower than estimated.  (Fisher Decl. ¶ 21.)  This also played a significant role in the determination that the settlement amount for disbursement reached was fair and reasonable.  (*Id.*)

Preparation for trial enabled counsel and their clients to find common ground while assessing the respective strengths and weaknesses of their case and reach the conclusion that settlement under the terms in the settlement agreement is in the parties' best interest.  The settlement eliminates the inherent risks both sides would bear if this case were to continue and should be approved.

### B.    The Attorneys' Fees and Costs Request is Reasonable.

Plaintiffs seek approval from the Court that Plaintiffs' Counsel's request for attorneys' fees and out-of-pocket litigation costs are reasonable.  Under the FLSA,

the court "shall in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b). What constitutes a reasonable fee is within the sound discretion of the district court. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The amount of fees that constitutes a reasonable attorneys' fee "must be determined on the facts of each case." *Ford v. Tennessee Senate*, 2008 WL 4724371, at *5 (W.D. Tenn. Oct. 24, 2008) (citing *Hensley*, 461 U.S. at 429); *see also Lytle v. Lowe's Home Centers, Inc.*, 2014 WL 6469428, at *2–3 (M.D. Fla. Nov. 17, 2014) (noting courts are afforded broad discretion in addressing attorney fees issues and may consider a number of factors).

In common fund cases, the percentage method to calculate attorneys' fees can be used.  *See generally Camden I Condo. Ass'n., Inc. v. Dunkle,* 946 F.2d 768, 773 (11th Cir. 1991) (approving percentage of the fund method of calculating fees); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); *see also Lytle*, 2014 WL 6469428, at *2–3; *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013). A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys. *Kritzer v. Safelite Sol., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 20, 2012) (citing *Reed v. Rhodes*,

179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897(1984)).

Here, the Settlement Agreement provides for Plaintiffs' Counsel to seek an award of one-third of the total settlement amount for reasonable attorneys' fees ($453,333.33)[2] and out-of-pocket litigation costs ($58,916.69). (Settlement Agmt. Ex. A.) This is no windfall. As detailed below, Plaintiffs' Counsel has expended significantly more than what they are seeking, to reach the successful results they have obtained here for their clients. The amount sought is reasonable and should be approved for the reasons below.

First, the requested fees are fair and reasonable in light of the significant results Plaintiffs' Counsel achieved for the entertainers through their litigation efforts. They prosecuted this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs. During litigation, Plaintiffs' Counsel gathered the necessary information regarding the merits of Plaintiffs' claims and Defendants' defenses, interviewed and communicated with each Plaintiff, prepared for and attended each of the 37 Plaintiff's depositions (it is unusual to get every

---

[2] Note that Plaintiffs will be paying $6,025.43 of their attorneys' fee award to cover Plaintiff Randall Klimentz's settlement allocation. (Fisher Decl. ¶ 22.) Due to a typographical error in his consent filed date, he was inadvertently allocated $0. (*Id.*) When Plaintiffs realized this error, they calculated his *pro rata* allocation, which will be deducted from their attorneys' fees. (*Id.*) This correction is provided in the revised disbursements spreadsheet to be used for payment. (Rev. Disburs., Ex. C.)

Plaintiff to attend a deposition), took several key defense witness depositions, fought vigorously to obtain information to reasonably calculate damages, and expended significant time and effort analyzing and piecing together incomplete and disorganized records (mostly in paper format that had to be manually entered to be useful) to arrive at the variables necessary for calculating damages.  Further, Plaintiffs' Counsel prevailed on two rounds of cross-motions for summary judgment, and filed several motions in limine and a motion for a trial plan, while fully preparing their case and clients for trial.  They litigated this case, literally up to the eve of trial, and continue to litigate it through this settlement approval process.  Further, Plaintiffs' Counsel will manage this case and their clients for several more years, as settlement payments contemplated by the Settlement Agreement extend via payments in four years.

Second, the total requested attorneys' fees of just under[3] one-third of the total settlement amount is a reasonable contingency recovery for this case. Plaintiffs' Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of one-third of any settlement. (Fisher Decl. ¶ 23.)  Because of this contingency fee arrangement, Plaintiffs' Counsel has not received payment for any of their time litigating the case over the past three years, nor have they received reimbursement for their out-of-pocket

---

[3] *See supra* n. 2.

costs expended. Regardless, Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation and Defendants' inability to pay, in an effort to recover minimum wages for workers in an industry that has long gone unnoticed when it comes to minimum wage protection. Further evidence of reasonableness of the contingency is that all Plaintiffs agreed to the settlement, being fully informed of the attorneys' fees and costs being sought for approval.

Notably, courts routinely approve similar contingency agreements in the amount of one-third, and it is fair and reasonable to do so here as well. *See e.g.,* *Wreyford*, 2014 WL 11860700, at *1 (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington*, 2013 WL 6022972, at *6 (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (finding 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in FLSA action); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *9 (S.D.N.Y. May 11,

2010) (approving attorneys' fees of one-third in FLSA case).

Courts may apply a lodestar cross-check when confirming the percentage of the fund requested is reasonable. *See, e.g., Febus v. Guardian First Funding Grp., LLC,* 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012); *see also Heath v. Hard Rock Cafe Int'l (STP), Inc.,* 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving one-third of settlement amount for attorneys' fees after cross-checking plaintiffs' counsel's lodestar, determining attorneys were receiving less fees than their lodestar and thus their fees did not taint the settlement). Here, that lodestar cross-check readily supports that Plaintiffs' Counsel's request for one-third of the fund to compensate for attorneys' fees is reasonable, as it is far less than their actual attorneys' fees expended. Plaintiffs have over $896,000 in time (2,611 hours) litigating this action for over more than three years. (*See* Atty. Fee Summ., Ex. G.)[4] In light of the lengthy nature of the case, how active the litigation was, and Plaintiffs' Counsel's regular communication with Plaintiffs, many staff and support professionals were also involved in its success. (*See id.*)[5]

Plaintiffs' Counsel's experience and firm reputation supports the lodestar

---

[4] Plaintiffs can submit the billable hours details for each attorney and staff member if necessary.

[5] More staff members worked on this matter than were included on the Attorney Fee Summary, but Plaintiffs' Counsel deducted their time as *de minimis* for purposes of this motion. (Fisher Decl. ¶ 29.)

cross-check analysis as well.  Nichols Kaster, PLLP is renowned for its national wage and hour class and collective action practice.  (*See* Firm Resume, Ex. H.) Paul Lukas ("Lukas"), who was the primary partner acting as lead counsel on this matter, garners close to 30 years of litigation experience, focusing almost exclusively on national wage and hour litigation over the past 17 years.  (Fisher Decl. ¶ 25; *see* Lukas website bio, Ex. I.)  Lukas has tried nearly 50 cases to verdict, including wage and hour collective actions, and is a frequent national speaker.  (Fisher Decl. ¶ 25.)  Anna Prakash ("Prakash"), Tim Selander ("Selander") and Rebekah Bailey ("Bailey") were the primary associates on this case, with Selander moving from associate to partner in 2015, Prakash in 2016, and Bailey in 2017.  (*Id.* ¶ 26.)  Prakash has been an attorney for 12 years, litigating wage and hour collective and class actions with the firm since 2009. (*Id.*)  She has litigated and prevailed on several exotic dancer cases.  (*Id.; see* Prakash website bio, Ex. M.)  Selander's work has focused primarily on litigating FLSA class and collective actions for over 11 years.  (*Id.*)  Similarly, Bailey has been litigating wage and hour class and collective actions for 9 years, five of which include exotic dancers, and is active in organizations and publications nationally.  (*Id.*; *see* Bailey website bio, Ex. K.)

Michele Fisher ("Fisher") and Robert Schug ("Schug") stepped in to try this case when it was set for trial the same day as the Magic City case that Lukas and

Bailey are litigating.  (Fisher Decl. ¶ 27.)  Fisher is one of the managing partners at Nichols Kaster, PLLP, whose practice has focused primarily on large wage and hour class and collective action cases for over sixteen years.  (*Id.*)  Fisher is well-known in the wage and hour community as she is the co-chair of the American Bar Association's Federal Labor Standards Legislation committee, the co-chair of the Practicing Law Institute's Wage & Hour Litigation & Compliance seminar, is a frequent speaker nationally on wage and hour topics, and has served as an editor and board member on the ABA's FLSA treatise, and an editor on the ABA's State Wage and Hour Law treatise.  (*Id.*; *see* Fisher website bio, Ex. J.)  Schug has been litigating class and collective actions, including wage and hour matter, since 2006.  (Fisher Decl. ¶ 28.)  He previously served as the Director of Litigation at the Impact Fund and also worked briefly at a Minneapolis-based law firm on complex business litigation.  (*Id.*)  Schug is a frequent speaker at national continuing legal education programs.  (*Id.*; *see* Schug website bio, Ex. L.)  The hourly fee rate and amount of hours expended by each attorney is provided in the Attorney Fee Summary at Exhibit G.  *See generally Willoughby v. Youth Villages, Inc.*, 2016 WL 7013537, at *2, ---F. Supp. 3d----, (N.D. Ga. Nov. 30, 2016) (concluding hourly rate of $400 reasonable for attorney with twenty-two years of experience and citing other cases finding the same); *Butz v. Amware Distrib. Warehouses of Georgia, Inc.*, 2014 WL 6908393, at *2 (N.D. Ga. Dec. 8, 2014).

In addition to attorneys' fees, Plaintiffs' Counsel also seeks reimbursement for out-of-pocket costs incurred, which counsel advanced with the risk of no recovery. Those costs totaling $58,916.69 generally include court and service fees, photocopies, case advertising, travel and related meals, postage, filing fees, research charges, mediation fees, deposition costs, and trial supplies. (Costs Summ., Ex. F.) Defendants do not oppose either the attorneys' fees or out-of-pocket costs request.

### C.   Service Payments Should Be Approved.

Under the terms of the Settlement Agreement, the parties have allocated and are requesting approval for a service payment for the lead named Plaintiff Henderson in the amount of $7,500.00, and the second named Plaintiff Olinde in the amount of $500. This is in recognition of their time and agreement to pursue this case on behalf of themselves and others, and for the significant time and effort Plaintiff Henderson spent assisting Plaintiffs' Counsel through numerous meetings, calls and emails, mediation discussions, and time he dedicated to case and trial preparation through multiple meetings lasting several hours. (Fisher Decl. ¶ 30.) The parties also allocated $500 to each Plaintiff who met with Plaintiffs' Counsel to prepare for trial, which consisted of two in-person meetings and several phone calls and emails. (*Id.*)

These service payments are fair and reasonable, were already included in the

allocations, and the parties respectfully request they be approved.  *See, e.g., Bozak v. FedEx Ground Package Sys., Inc.,* 2014 WL 3778211, at *4–5 (D. Conn. July 31, 2014 (approving $10,000 incentive award, and identifying cases awarding similar or higher amounts); *Whittington*, 2013 WL 6022972, at *6 (approving $7,500.00 service award); *Torres v. Gristede's Op. Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000 service award); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677–78 (S.D. Iowa 2009) (approving $10,000 service payment); *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, *5 (M.D. Fla. Aug. 29, 2006) (approving $10,000 service payment); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

## V.    CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel that has resolved a *bona fide* dispute over overtime wages.  The settlement is fair and reasonable, provides Plaintiffs with significant monetary relief, and has the approval of all 37 Plaintiffs.  Accordingly, the parties request that this Court grant this motion so the April 2017 payments may be

promptly issued, and that the action be dismissed with prejudice.

Date:  3/3/17                     **NICHOLS KASTER, PLLP**

*/s/ Michele R. Fisher*
Paul J. Lukas, MN No. 22084X*
Rebekah L. Bailey, MN No. 0389599*
Michele R. Fisher, GA No. 076198
Robert L. Schug, MN No. 0387013*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
bailey@nka.com
fisher@nka.com
rschug@nka.com
*admitted pro hac vice*

**MAYS & KERR, LLC**
John L. Mays, GA Bar No. 986574
Meredith J. Carter, GA Bar No. 325422
Suite 202, North Tower
235 Peachtree Street N.E.
Atlanta, GA 30303
john@maysandkerr.com
meredith@mcarterlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

## CERTIFICATE OF SERVICE

*Henderson, et al. v. 1400 Northside Drive, Inc. d/b/a Swinging Richards, et al.,*
**Court File** No**.: 1:13-cv-3767-TWT**

I hereby certify that on March 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification to the following attorneys of record:

Herbert P. Schlanger
Ga. Bar Number 629330
hschlanger@bellsouth.net
herb@schlanger.com
Law Office of Herbert P. Schlanger
Suite 1890
230 Peachtree Street, N.W.
Atlanta, GA  30303
404-808-6659

Attorney for Defendants 1400 Northside Drive, Inc. d/b/a Swinging Richards and C.B. Jones.

Dated:  March 3, 2017                    */s/ Michele R. Fisher*
                                           Michele R. Fisher

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated:  March 3, 2017                              */s/ Michele R. Fisher*
                                                             Michele R. Fisher